# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 9:20-cv-80102-RUIZ/REINHART

TING PENG and LIN FU, on behalf of
themselves individually and all others similarly
situated, and derivatively on behalf of
HARBOURSIDE FUNDING, LP, a Florida
limited partnership,

      Plaintiffs,

v.

NICHOLAS A. MASTROIANNI II;
RICHARD L. YELLEN; FLORIDA
REGIONAL CENTER, LLC, a Delaware
limited liability company; HARBOURSIDE
FUNDING GP, LLC, a Florida limited liability
company; and HARBOURSIDE PLACE, LLC,
a Delaware limited liability company,

      Defendants,

and

HARBOURSIDE FUNDING, LP, a Florida
limited partnership,

      Nominal Defendant.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' VERIFIED CLASS-ACTION AND DERIVATIVE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND................................................................................................3

    A.    The EB-5 Program ...............................................................................3

    B.    The Harbourside Project ........................................................................3

    C.    The Documents Signed by Plaintiffs Refute Their Claims....................................4

    D.    The March 31, 2014 Report and Plaintiffs' Signed Consents ...............................4

    E.    The Documentary Evidence Refutes Both the Specific Allegations and the Essence of Plaintiffs' Claims ........................................................................5

ARGUMENT .........................................................................................................6

I.    THE COMPLAINT IS A SHOTGUN PLEADING THAT FAILS TO COMPORT WITH BASIC PLEADING REQUIREMENTS ........................................................6

    A.    Plausibility Must Be Established ..............................................................6

    B.    The Complaint Fails To Satisfy Federal Rules 8 and 10 .......................................7

    C.    Plaintiffs' Hybrid Claims Are Prohibited by Fla. Stat. § 620.2001 .......................8

    D.    The Derivative Claims Fail to Satisfy Rule 23.1 ....................................................9

    E.    The claims for declaratory relief, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion and civil theft (Counts I, II, III, VII and VIII) should be dismissed because they are not pled with the particularity required by Rule 9(b). ......................................................9

II.    CLAIMS BARRED BY THE STATUTE OF LIMITATIONS SHOULD BE DISMISSED ...................................................................................................11

    A.    Plaintiffs' Claims for Breach of Fiduciary Duty and Aiding Abetting Are Time Barred. ........................................................................................11

    B.    Plaintiffs' Derivative Claim for Breach of Contract  is Time Barred....................12

    C.    The Conversion Claim is Time Barred. ...............................................................13

    D.    The Civil Theft Claim is Time Barred..................................................................13

III.     THE COMPLAINT FAILS TO STATE ANY VALID CLAIM FOR RELIEF ...............14

         A.     There is No Justiciable Controversy. .......................................................14

         B.     Plaintiffs' Derivative Claim for Breach of the Covenant of Good Faith  and
                Fair Dealing Is Subsumed by the Plaintiffs' Contract Claim. ...............................15

         C.     Plaintiffs' Claim for Accounting Is Preempted by the  Unambiguous
                Language of the Limited Partnership Agreement..................................................16

         D.     Plaintiffs Do Not Make Any Factual Allegations to Support Their Direct
                Claims Against Mastroianni or Yellen for Conversion and Civil Theft................16

         E.     A Claim for Conversion Cannot Lie for Failure to Repay a Debt. ........................17

         F.     Plaintiffs' Claim for Civil Theft Is a Sham Attempt at Treble Damages. .............18

IV.      THE PLAINTIFFS' CLAIMS ARE BARRED BY JUDICIAL ESTOPPEL ...................19

CONCLUSION........................................................................................................................20

REQUEST FOR HEARING....................................................................................................20

LOCAL RULE 7.1(A)(3) CERTIFICATION ...........................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
    77 F. 3d 364 (11th Cir. 1996) ...................................................7

*Apotex, Inc. v. UCB, Inc.*,
    970 F. Supp. 2d 1297 (S.D. Fla. 2013), *aff'd*, 763 F.3d 1354 (Fed. Cir. 2014).......................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................6

*Commc'n, Inc. v. Ernest*,
    2010 WL 11553318 (S.D. Fla. June 2, 2010) ...................................................13

*Crossen v. USAA Casualty Ins. Co.*,
    2019 WL 1258739 (S.D. Fla. Mar. 19, 2019)...................................................14

*Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*,
    341 Fed. Appx. 487 (11th Cir. 2009) ...................................................9

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) ...................................................3

*Eisenberg v. Std. Ins. Co.*,
    2009 WL 3667086 (S.D. Fla. Oct. 26, 2009)...................................................14

*Enola Contr. Servs., Inc. v. URS Group, Inc.*,
    2008 WL 1844612 (N.D. Fla. Apr. 23, 2008)...................................................15

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) ...................................................10

*Gaskins v. Nahmad*,
    2017 WL 1335166 (S.D. Fla. Jan. 19, 2017) ...................................................8

*Gasparini v. Pordomingo*,
    972 So. 2d 1053 (Fla. 3d DCA 2008) ...................................................18

*Gersh v. Cofman*,
    769 So. 2d 407 (Fla. 4th DCA 2000) ...................................................18

*Ginsberg v. Lennar Fla. Holdings, Inc.*,
    645 So. 2d 490 (Fla. 3d DCA 1994) ...................................................17

iv

*Gokalp v. Unsal*,
  284 So. 3d 1097 ...................................................................................................18

*Inlet Beach Capital Investments, LLC v. F.D.I.C.*,
  778 F.3d 904 (11th Cir. 2014) ...........................................................................16

*Interstate Fire & Cas. Co. v. Kluger, Peretz, Kaplan & Berlin, P.L.*,
  855 F. Supp. 2d 1376 (S.D. Fla. 2012) ..............................................................14

*Matter of Izummi*,
  22 I&N Dec. 169 (Assoc. Comm. 1998) ..............................................................3

*Kammona v. Onteco Corp.*,
  962 F. Supp. 2d 1299 (S.D. Fla. 2013) ................................................................8

*Korman v. Iglesias*,
  778 F. App'x 680 (11th Cir. 2019), *cert. denied*, 2019 WL 6257430 (U.S. Nov. 25, 2019) ..19

*Laterza v. JPMorgan Chase Bank, N.A.*,
  221 F. Supp. 3d 1347 (S.D. Fla. 2016) ..............................................................13

*Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*,
  530 F.3d 1339 (11th Cir. 2008) ...........................................................................9

*Med. Jet, S.A. v Signature Flight Support-Palm Beach, Inc.*,
  941 So. 2d 576 (Fla. Dist. Ct. App. 2006) .........................................................12

*Miami Yacht Charters, LLC v. National Union Fire Ins. Co. of Pittsburgh PA*,
  2012 WL 1416428 (S.D. Fla. Apr. 24, 2012) ......................................................14

*Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*,
  2019 WL 3532024 (S.D. Fla. Aug. 2, 2019)........................................................17

*Noah Tech., Inc. v. Rice*,
  2014 WL 6473664 (M.D. Fla. Nov. 18, 2014) ......................................................8

*Pharmacare Health Serv., Inc. v. Wenrich*,
  2007 WL 9701077 (S.D. Fla. Sept. 7, 2007) ......................................................17

*Robinson v. Tyson Foods, Inc.*,
  595 F.3d 1269 (11th Cir. 2010) .........................................................................19

*Saxon Fin. Group, Inc. v. Rath*,
  2012 WL 3278662 (S.D. Fla. Aug. 9, 2012)........................................................15

*Small Bus. Admin. v. Echevarria*,
  864 F. Supp. 1254 (S.D. Fla. 1994) ...................................................................13

*Smiley v. Nationstar Mortgage LLC*,
  202 F. Supp. 3d 1322 (M.D. Fla. 2016).........................................................................10

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC*,
  278 F. Supp. 3d 1307 (S.D. Fla. 2017) ...........................................................................9

*Sullivan Props., Inc. v. City of Winter Springs*,
  899 F. Supp. 587 (M.D. Fla. 1995)........................................................................19, 20

*Tobon v. Am. Sec. Ins. Co.*,
  *2007 WL 1796250* (S.D. Fla. Jun. 20, 2017).................................................................15

*United States v. Bailey*,
  419 F.3d 1208 (11th Cir. 2005) .....................................................................................18

*Walker v. Figarola*,
  59 So. 3d 188 (Fla. 3d DCA 2011) ................................................................................17

**Statutes**

8 U.S.C. § 1153(b)(5) ..........................................................................................................3

Fla. Stat. § 620.2001 ......................................................................................................1, 8

Fla. Stat. § 620.2001(2)........................................................................................................9

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................................1, 7, 8

Fed. R. Civ. P.  9(b)...............................................................................................1, 2, 9, 11

Fed. R. Civ. P. 10....................................................................................................1, 8, 10

Fed. R. Civ. P. 12..................................................................................................................1

Fed. R. Civ. P.  23...........................................................................................................1, 9

Fed. R. Civ. 10(b) .................................................................................................................7

**Other Authorities**

8 C.F.R. § 203(b)(5)..............................................................................................................3

8 C.F.R. § 216.6(c)(1)(i)-(iii)................................................................................................3

USCIS Policy Manual, Volume 6, Part G, Chapter 1, §§ A, B.1. ........................................3

Defendants, Nicholas A. Mastroianni II, Florida, Regional Center, LLC, Harbourside Funding GP, LLC, and Harbourside Place, LLC, pursuant to Federal Rules of Civil Procedure 8, 9(b), 10, 12, 23 and 23.1, and Fla. Stat. § 620.2001, file this Motion to Dismiss Plaintiffs' Verified Class-Action and Derivative Complaint and Incorporated Memorandum of Law, and in support state as follows:

## PRELIMINARY STATEMENT

The Complaint, a haphazard amalgamation of lumped direct, derivative and class claims, should be dismissed in its entirety and with prejudice because:

(a)     Florida law does not permit direct and derivative claims alleging the same injury to be joined in a single claim for relief.  Therefore, Counts I, II and III should be dismissed.

(b)     The claims, which Plaintiffs concede date back to 2012 and 2014, were not filed until long after the expiration of the statute of limitations, so each time-barred Count should be dismissed.

(c)     The claim for conversion is at best a claim for payment of money damages, Count VII for conversion therefore fails, and because conversion plus criminal intent (which is not pleaded) are both prerequisites to a claim for civil theft, Count VIII also fails.

(d)     Southern District of Florida precedent holds that a dispute for which a breach of contract claim was asserted is not a proper subject for a declaratory judgment, so Count I fails.

(e)     The claim for accounting fails because the parties' contract, which is referenced in, but not attached to the Complaint, expressly waives any right to an accounting, so Count IX fails.

(f)     The claims for breach of the covenant of good faith and fair dealing fail because under Florida law, this is not an independent cause of action, but rather an implied term of an existing contractual obligation and, as such, Counts V and VI fail.

1

(g)    The derivative claims fail the most basic derivative pleading requirement of Rule 23.1 because Plaintiffs fail to plead that the action is not a collusive one to confer jurisdiction that the Court would otherwise lack, so Counts I, II, III, IV, V, VI and IX fail.

(h)    Each Count expressly includes numerous, non-specific assertions of undefined frauds.  This vague "fraud" fails to meet the particularity requirements of Federal Rule 9(b). That the individual Counts have different names is of no moment because where, as here, the gravamen of the Complaint, and each count therein, is grounded in fraud, it must comply with Rule 9(b), and because this Complaint does not, it must be dismissed.

(i)    The documentary evidence described and referred to in the Complaint refutes many of the claims.  Specifically, (1) the contract contains an express disclaimer of reliance on advertising, yet the Complaint asserts reliance on advertising, and (2) the resolution signed by both plaintiffs in 2014 expressly directs the partnership to enter into the transactions complained of and expressly ratifies the prior loans and transactions that form the bases of the claims.  As such, the documents referenced in the Complaint establish the failure to state a plausible claim.

(j)    The Complaint is barred by judicial estoppel.  In their successful immigration petitions, both plaintiffs swore, under oath, to the United States Citizenship and Immigration Services ("USCIS") that the evidence attached to their immigration petitions was "true and correct."  Because that evidence, which formed part of their successful immigration petitions and which gave the two plaintiffs and their families their green cards, undermines the Plaintiffs' claims, they are judicially estopped from claiming otherwise here, and the Complaint should be dismissed.  (Of course, if what Plaintiffs now say is that they filed false immigration petitions or that their sworn statements were false, then Plaintiffs would have committed immigration fraud and be subject to deportation.)

## FACTUAL BACKGROUND

A.  The EB-5 Program

The EB-5 program was created in 1990 by Congress to encourage the flow of capital into the U.S. economy and to promote employment in the United States.  Foreign investors are offered the prospect (but not the guarantee) of lawful permanent residence in the U.S. (evidenced by an issued green card) if they invest a minimum of $500,000 in a commercial enterprise in the U.S., and that investment results in the creation or maintenance of 10 full-time jobs in the U.S. for American citizens.  *See* 8 U.S.C. § 1153(b)(5); 8 C.F.R. § 203(b)(5); USCIS Policy Manual, Volume 6, Part G ("PM"), Chapter 1, §§ A, B.1.

USCIS regulations impose specific requirements on the use of the investor's capital during the pendency of their immigration application.  In particular, an investor must sustain his or her investment "at risk" at least as long as the entire two-year period of conditional I-526 residency.  *See* 8 C.F.R. § 216.6(c)(1)(i)-(iii); PM Chap. 5.[1]  Nowhere in this process does the voluntarily and willingly invested capital become anything other than "at risk."  In fact, it is a violation of the EB-5 Program law and regulations for there to be a guarantee on the return of the immigrant investor's capital investment.  PM Chap. 2 § A.2; *Matter of Izummi*, 22 I&N Dec. 169, 181 (Assoc. Comm. 1998).

B.  The Harbourside Project

In 2010, Mastroianni established the Florida Regional Center, LLC, Harbourside Funding LP (the "Limited Partnership"), Harbourside Funding GP ("Harbourside GP") and Harbourside Place, LLC ("Harbourside Place") as the appropriate business structure to properly conduct EB-5 Program business in accordance with USCIS requirements.  Harbourside GP is the manager of

---

[1]  The facts are drawn from the Complaint and documents referenced in the Complaint which are properly before the Court on a motion to dismiss.  *See, e.g.*, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

the Limited Partnership, Harbourside Place is the borrower/owner of the Harbourside Project—a mixed-use commercial real estate development in Jupiter, Florida.

C.   The Documents Signed by Plaintiffs Refute Their Claims

While Plaintiffs spend many pages in their Complaint describing events from many years ago, those assertions cannot be probative of any claim where the assertions are contradicted by their own signed documents.

*First*, Plaintiffs each executed the Subscription Agreement (*See* Exhibit "A" to Decl. of R. Haddad in Support of Defendants' Motion to Dismiss Plaintiffs' Verified Class Action and Derivative Complaint filed concurrently with this Motion), in which they expressly disclaimed reliance on any advertisements.  Therefore, the assertion they were misled by advertisements cannot support any claim.

*Second*, the assertions in paragraphs 47 through 58 of the Complaint regarding the funding and components of the partnership loan of $99,500,000, and the borrowing from other sources were disclosed to Plaintiffs in writing in 2014 and were approved, ratified and directed in writing by the two Plaintiffs themselves when they signed the Ordinary Resolution.  (*See* Haddad Decl. Ex. "B").  Therefore, the Plaintiffs' belated characterization of these events, long after the running of the statute of limitations, cannot give rise to any plausible claim.

D.   The March 31, 2014 Report and Plaintiffs' Signed Consents

By March of 2014, a substantial amount of the construction had been completed, but finishing the project to the degree required for the Harbourside Project compelled a significant increase in debt in the amount of $65 million.  This was fully disclosed in the March 31, 2014 Report to the Limited Partners (*See* Haddad Decl. Ex. "C"), which set forth the status of the Project and the need for additional senior financing in order to finish it.  The Report included a proposal to the Limited Partners to approve the raising of the debt ceiling to provide the

4

necessary capital to pay for the increased construction costs (as such additional debt would have superior rights to the Loan from Harbourside Partnership).  (*See* Haddad Decl. Ex. "C", at 4-5).

The March 31, 2014 Report also included an Ordinary Resolution of the Harbourside Partnership expressly authorizing the additional debt, ratifying all prior actions of the General Partner and the managers (necessarily including the very conduct complained of by Plaintiffs), and empowering and directing the General Partner to incur the additional debt.  Contrary to the Plaintiffs' allegations, there was only one form of resolution text distributed and agreed to.  A copy of the Ordinary Resolution, together with the list of 116 Limited Partners who approved it, including Plaintiffs Ting Peng and Lin Fu, is attached to the Haddad Declaration as Exhibit "B." This ratification, consent and direction, which was signed by the Plaintiffs themselves, establishes the lack of plausibility of the claims asserted.

E.  The Documentary Evidence Refutes Both the Specific Allegations and the Essence of Plaintiffs' Claims

The Chart below illustrates some of the demonstrably false claims in the Complaint, based on documentary evidence referred to but not attached to the Complaint:

| **SUMMARY OF KEY ALLEGATIONS IN THE COMPLAINT THAT ARE CONTRADICTED BY DOCUMENTARY EVIDENCE REFERENCED IN THE COMPLAINT** | | |
| --- | --- | --- |
| **Paragraph(s)** | **Allegation in Complaint** | **Documentary Proof Establishing Claim to Be False or Legally Without Merit** |
| ¶¶ 5, 42 | Plaintiffs relied on advertising in deciding to invest | Subscription Agreement, admittedly signed by Plaintiffs, expressly disclaims any reliance on advertisements.  (Haddad Decl. Ex. A, at § 6.13) |
| ¶ 6 | Plaintiffs were only shown signature pages | Plaintiffs submitted the entire agreements as exhibits to their successful immigration petitions, years ago.  (Haddad Decl. Ex. D) |
| ¶ 7 | There was a promise not to subordinate if Plaintiffs were "unable to sell" 200 units | The Agreement provided for potential subordination if fewer than 200 units were sold for "any reason." There was no "ability condition."  (Haddad Decl. Ex. E, at pp. 14, 17) |

| ¶¶ 10-11 | There was other borrowing in 2012 | The borrowing was disclosed to the investors and ratified and approved in writing signed by these Plaintiffs in 2014—and the statute of limitations has long expired on any claim related to this financing. (Haddad Decl Exs. B and C) |
| ¶ 13 | The Project's value was certified at $187 million | The document actually says an independent appraiser gave an "estimated future value" of $187 million. The report also says that as a forward-looking statement, investors were cautioned not to rely on the statements, so any claimed reliance is not justifiable as a matter of law. (Haddad Decl. Ex. C, at p. 2) |
| ¶ 21 | There were defaults that prevented the conversion from debt to equity | Any alleged default was cured by payment prior to the debt conversion, which each Plaintiff accepted without protest or reservation. |
| ¶¶ 61-62 | The 2014 Ordinary Resolution of the Partnership was approved by negative consent, i.e., failure to respond was counted as acceptance | The Ordinary Resolution was approved by signed written consent of a majority of the partners, specifically including the two Plaintiffs. (Haddad Decl. Ex. B) |
| ¶ 62 | There were two versions of the Ordinary Resolution | There was only one version, which 116 of the 199 partners signed and ratified, including the two Plaintiffs. (Haddad Decl. Ex. B) |

## ARGUMENT

## I.   THE COMPLAINT IS A SHOTGUN PLEADING THAT FAILS TO COMPORT WITH BASIC PLEADING REQUIREMENTS

### A.  Plausibility Must Be Established

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  Plausibility *can only be* established *if* a plaintiff pleads factual allegations that permit the court to draw reasonable inferences that the defendant is liable for the alleged misconduct.  *Id.*  Thus, plausibility requires more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.*  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

B. <u>The Complaint Fails To Satisfy Federal Rules 8 and 10</u>

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of [each] claim," and each averment of the pleading must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a), (e)(1).  Additionally, under Rule 10, the allegations in a complaint must be "limited as far as practicable to a statement of a single set of circumstances."  Fed. R. Civ. P. 10(b); *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F. 3d 364, 367 (11th Cir. 1996) ("[U]nless cases are pled clearly and precisely, [and] issues are not joined… society loses confidence in the court's ability to administer justice.").  Moreover, the Eleventh Circuit Court of Appeals has consistently and recently condemned the use of shotgun pleadings.  *Hirsch v. Ensurety Ventures, LLC*, No. 19-13527, 2020 WL 1289094, at *3 (11th Cir. Mar. 18, 2020) ("A shotgun pleading is not 'a short and plain statement of the claim,' Fed. R. Civ. P. 8(a)(2), and does not 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (citations omitted).

In complete disregard of the Federal Rules, the Complaint is conclusory, ambiguous and repetitive.  Most glaringly, Counts I (declaratory relief), II (breach of fiduciary duty) and III (aiding and abetting breach of fiduciary duty), assert hybrid direct and derivative claims, utilizing conclusory language that makes it impossible to tell what the Defendants allegedly did to harm the limited partners as distinguished from the limited partnership:

- "This claim for relief is based on the Defendants' breaches of fiduciary duties of loyalty and care to the Funding Partnership and to Plaintiffs and members of the proposed class as Limited Partners in the Funding Partnership."  (Compl. ¶¶ 103)

- "As alleged in Count II, above, Defendants... had fiduciary duties to the Plaintiffs and members of the proposed class, and those Defendants breached those duties." (Compl. ¶ 113)

- "As a proximate result of the Defendants' conduct, the Funding Partnership and the Limited Partners have been damaged in an amount to be proved at trial." (Compl. ¶¶ 109, 115)

These conclusory allegations plainly do not satisfy the requirements in Rules 8 and 10 for simple, concise averments that are limited to a single set of circumstances.

Furthermore, each count in Plaintiffs' Complaint incorporates the allegations of all previous counts, thus leaving Defendants, and the Court, with one count that "amounts to an amalgamation of all counts of the complaint." *See Hirsch*, 2020 WL 1289094, at *3 (citing *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 (11th Cir. 2010)).   This pleading practice is condemned by this Court and the Eleventh Circuit, and Plaintiffs' Complaint should be dismissed for this reason alone. *See* Hirsch, 2020 WL 1289094, at *3 ("We have instructed that a district court '*must* intervene . . . and order a replead[ing]' of a shotgun complaint, even if the defendant does not move for a more definite statement.") (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001) (emphasis added)).

C.   <u>Plaintiffs' Hybrid Claims Are Prohibited by Fla. Stat. § 620.2001</u>

Plaintiffs' hybrid claims are prohibited by Fla. Stat. § 620.2001.  The statute provides that a partner commencing a direct action against a limited partnership and/or another partner is required to plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership.   In other words, to properly assert a direct and derivative claim within the same complaint, direct and derivative claims must form separate causes of action.   *See e.g.*, *Gaskins v. Nahmad*, No. 15-24707-CIV-MORENO/O'SULLIVAN, 2017 WL 1335166, at *6 (S.D. Fla. Jan. 19, 2017) and *Noah Tech.*,

*Inc. v. Rice*, No. 2:14–cv–325–FtM–29DNF, 2014 WL 6473664, at *5 (M.D. Fla. Nov. 18, 2014); *see also Kammona v. Onteco Corp.,* 962 F. Supp. 2d 1299, 1302 (S.D. Fla. 2013) ("Under Florida law… a shareholder does not have *an individual cause of action* for damages that result from injury to the corporation.") (emphasis added and internal quotations omitted).

On this basis, Counts I, II and III fail to state a claim for relief (direct or derivative).  And because the Plaintiffs cannot allege a distinct injury to the limited partners, they should be barred from re-pleading these counts as direct claims.  Fla. Stat. § 620.2001(2).

D.  <u>The Derivative Claims Fail to Satisfy Rule 23.1</u>

The derivative claims should also be dismissed because the Plaintiffs do not satisfy the most basic pleading requirement of Rule 23.1 of the Federal Rules of Civil Procedure.  Plaintiffs do not allege that this action is not "a collusive one to confer jurisdiction that the court would otherwise lack."  Fed. R. Civ. P. 23.1(b)(1).  This fundamental pleading omission requires dismissal of derivative Counts I, II, III, IV, V, VI and IX.

E.  <u>The claims for declaratory relief, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion and civil theft (Counts I, II, III, VII and VIII) should be dismissed because they are not pled with the particularity required by Rule 9(b).</u>

Particularity is required for Counts I, II, III, VII and VIII because each of these claims, as set forth in the Complaint, is grounded in fraud.  Where a claim is grounded in fraud, the complaint must also comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327-28 (S.D. Fla. 2017); *see also Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 Fed. Appx. 487 (11th Cir. 2009).

Rule 9(b) requires that claims sounding in fraud be pled with sufficient particularity even where the claim is a non-fraud claim, so long as the same fraudulent act provides the basis for the non-fraud claim.  *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d

1339, 1356 (11th Cir. 2008) (when the same misrepresentations form the basis of fraud and non-fraud claims, even the non-fraud claims require pleading with particularity).  As such, Rule 9(b) requires the pleader to include factual allegations that set forth precisely what fraudulent conduct was made, the time and place, the persons undertaking it, the substance of the alleged fraud, and the consequence of the alleged fraud.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006); *Smiley v. Nationstar Mortgage LLC*, 202 F. Supp. 3d 1322, 1324 (M.D. Fla. 2016).

Here, the Complaint sets forth these specific claims as grounded in fraud, but without the requisite particularity.  Indeed, the very first allegation in the Complaint's *Introduction* premises the actual creation of the entire business enterprise, and the specific business entities named herein as defendants, as being carried out for the purpose of a fraudulent scheme: "Defendants Nicholas Mastroianni and Richard Yellen created a group of companies to perpetrate a fraudulent scheme by which they obtained $99,500,000 from a group of immigrant investors for the purpose of funding a construction loan that was to have been repaid when it matured more than two years ago, but had no intention of keeping their promise to repay." (Compl. ¶ 1.)  The Complaint thereafter repeats the references to Defendants' fraudulent conduct as providing the basis for these claims throughout the general allegations.  (*See* Compl. ¶ 24 ("fraudulent scheme to convert the EB-5 Loan principal into a so-called "preferred" equity interest in the Developer"); ¶ 86 (Mastroianni and Yellen played a "role in fraudulently concealing material facts from the Funding Partnership, grossly mismanaging the Funding Partnership, breaching their fiduciary duties to the Funding Partnership, and violating state and federal law to effectuate their fraudulent schemes and self-dealings in a manner that harmed the Funding Partnership and ultimately resulted in the demise of the funding Partnership and the conversion of its assets.")).

The Complaint then incorporates the gravamen of fraud from the Complaint's general allegations into each of the specific claims at issue here.

Absent from the Complaint, however, are sufficient particularized allegations setting forth the specifics of the fraudulent conduct, as to who said what or did what to whom, and when, which comprised the fraudulent scheme.  What did *each* of these Defendant companies do as part of the scheme?  What was said, by whom and when that demonstrates the intent never to repay the EB-5 Loan?  What material facts did Defendants fraudulently conceal from the Funding Partnership, which resulted in its demise and conversion of its assets, and when and how?  Where are the specifics as to the steps each Defendant took as it relates to any taking of property or any wrongdoing whatsoever?

Because the gravamen of these claims is grounded in fraud, the failure to provide Rule 9(b) particularized allegations is fatal to those claims.  As such, the claims for declaratory relief, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion and civil theft should be dismissed.

## II.    CLAIMS BARRED BY THE STATUTE OF LIMITATIONS SHOULD BE DISMISSED

While Plaintiffs' claims are improperly "lumped" as to both allegations and defendants, one thing is clear—just about everything Plaintiffs allege and complain of is barred by the statute of limitations.

### A.    Plaintiffs' Claims for Breach of Fiduciary Duty and Aiding Abetting Are Time Barred.

Plaintiffs' claims for breach of fiduciary duty and aiding and abetting breach of the fiduciary duty are time barred.  Under Florida law, the statute of limitations for a breach of fiduciary duty is four years.  § 95.11(3)(o), Fla. Stat.  Here, Plaintiffs maintain that Mastroianni and the General Partner breached their fiduciary duties to the Funding Partnership and the

Limited Partners by "exploiting their authority as Principals of the Harbourside Group… causing the Developer to … disregard [ ] the express terms of the EB-5 Loan Agreement…." (Compl. ¶ 105). The alleged breaches of contract underlying the Plaintiffs' claim for breach of fiduciary duty occurred more than four years ago:

- "In blatant disregard for their fiduciary duties … [Defendants] caus[ed] the Developer to borrow $12,700,000 from Putnam in or about July through December 2012 …" (Compl. ¶ 105)

- "In July 2012 … [Defendants] had already procured two senior loans from a third party…." (Compl. ¶¶ 51, 105)

- "On December 27, 2012, [Defendants] caused the Developer to expend $$11,350,000 of the EB-5 Loan funds to pay off the Morgan Loan … [which] was expressly prohibited by the EB-5 Loan Agreement…" (Compl. ¶¶ 53, 105)

- "It was not until April 15, 2013 … that Mastroianni even hinted at the existence of the Mortgage Loan or the Revolving loan …" (Compl. ¶¶ 54, 106)

Because the alleged wrongful conduct occurred in 2012, or at the latest 2014, Plaintiffs' claims for breach of fiduciary duty (Count II) and aiding and abetting breach of fiduciary duty (Count III), are barred by the statute of limitations and should be dismissed with prejudice.

      B.  <u>Plaintiffs' Derivative Claim for Breach of Contract<br>is Time Barred.</u>

Plaintiffs' claim for breach of contract (Count IV) is barred by the statute of limitations. Under Florida law, the statute of limitations for a breach of contract claim is five years. *Med. Jet, S.A. v Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 577 (Fla. 4th DCA 2006) (citing Fla. Stat. § 95.11(2)(b)). A claim for breach of contract accrues at the time of the breach, irrespective of when "consequential damages result or become ascertained." *Id*. Consistent with the general policy behind the statute of limitations, which is to prevent unreasonable delay in the enforcement of legal rights, the delayed discovery rule does not apply to claims for breach of contract. *Id*.

Here, the Plaintiffs' breach of contract claim is predicated on alleged breaches that occurred more than five years prior to the filing of this action.  (*See e.g.* Compl.  ¶¶ 123-125.) The alleged breach of contract took place in July 2012.  Plaintiffs did not commence this action until January 27, 2020, almost eight years after the alleged breach.  It is of no moment that the Plaintiffs' alleged damage—Harbourside Place's failure to repay the EB-5 Loan—was not ascertained until the Loan Maturity Date.  Any claim for breach of contract accrued in 2012, so Plaintiffs' claim for breach of contract is time-barred.

C.   The Conversion Claim is Time Barred.

The statute of limitations for conversion is four years.  § 95.11(3), Fla. Stat.; *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1260 (S.D. Fla. 1994).  The statute of limitations for conversion begins to run at the time of the conversion.  *Small Bus. Admin.* 864 F. Supp. at 1260. Here, the allegation is that certain Defendants engaged in wrongful acts of dominion over Plaintiffs' investments in 2011 as to Plaintiff Fu and 2013 as to Plaintiff Peng.  As such Count VII for conversion is time-barred.

D.   The Civil Theft Claim is Time Barred.

The statute of limitations for civil theft is five years.  § 772.17, Fla. Stat.; *see also Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1352 (S.D. Fla. 2016).  The statute of limitations for civil theft begins to run when the plaintiff knows, or reasonably should have known, of the wrongful conduct.  *Commc'ns, Inc. v. Ernest*, No. 10-20019-CIV-JORDAN, 2010 WL 11553318, at *2 (S.D. Fla. June 2, 2010).  For the same reasons as to the conversion claim, the claim for civil theft accrued more than seven years ago, so Count VIII is time barred.

III.     **THE COMPLAINT FAILS TO STATE ANY VALID CLAIM FOR RELIEF**

For the reasons set forth above, the Court can dismiss the Complaint without reaching the specific claims asserted in the Complaint.  Nevertheless, Defendants address the deficiencies in the specific claims below.

A.  There is No Justiciable Controversy.

In Count I (Declaratory Relief), Plaintiffs seek "a judicial declaration" that Defendants (a) improperly exercised the conversion provisions of the EB-5 Loan Agreement despite multiple Events of Default, and (b) failed to obtain the Limited Partners' approval for the conversion option.  (Compl. ¶¶ 98-99.)  The alleged "Events of Default" are (a) "the Developer taking the Mortgage Loan and the Revolving loan, which subordinated the EB-5 Loan to the Mortgage Loan" and (b) "the Developer using the EB-5 Loan funds to pay off the Mortgage Loan in contravention of the express purpose of the EB-5 Loan Agreement."  (Compl. ¶ 74.)  However, to state a claim for declaratory judgment "under the facts alleged, there must be a substantial *continuing controversy* between parties having adverse legal interests." *Interstate Fire & Cas. Co. v. Kluger, Peretz, Kaplan & Berlin, P.L.*, 855 F. Supp. 2d 1376, 1380 (S.D. Fla. 2012). There is no such continuing controversy here.  The events already occurred.

Moreover, courts in the Southern District of Florida hold that a contract dispute is not a proper subject for declaratory judgment.  *Crossen v. USAA Casualty Ins. Co.*, No. 9:18-CV-81453-ROSENBERG/REINHART, 2019 WL 1258739, at *3 (S.D. Fla. Mar. 19, 2019) ("This claim can be fully vindicated through their breach of contract claim (Count II), so their declaratory judgment claim (Count I) is indeed unnecessary… Therefore, the Court uses its discretion over declaratory judgment actions to dismiss Count I of the Amended Complaint."); *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa.*, No. 11–21163–CIV., 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012) ("The party moving for declaratory judgment

must identify some provision of the insurance contract as to which it is in doubt and therefore requires clarification."); *see also Eisenberg v. Std. Ins. Co.*, No. 09–80199–CIV., 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009) and *Tobon v. Am. Sec. Ins. Co.*, No. 06-61912-CIV., 2007 WL 1796250*, at *2 (S.D. Fla. Jun. 20, 2017)*.  To the extent that a breach of the EB-5 Loan Agreement is at issue in this action, the Court can adjudicate the issue under Count IV for breach of contract (which is also without merit), and Count I should be dismissed.

B. Plaintiffs' Derivative Claim for Breach of the Covenant of Good Faith and Fair Dealing Is Subsumed by the Plaintiffs' Contract Claim.

Under Florida law, a claim for the "breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches instead to the performance of a specific contractual obligation." *Saxon Fin. Group, Inc. v. Rath*, No. 11–80646–CIV., 2012 WL 3278662, at *7 (S.D. Fla. Aug. 9, 2012).  Additionally, a claim for "breach of the implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim." *Id*.  To state a claim for breach of the implied covenant, a plaintiff must allege more than a mere breach of contract—the plaintiff must allege that the defendant consciously and deliberately deprived the plaintiff of its contractual rights.  *See Enola Contracting Servs., Inc. v. URS Group, Inc.*, No. 5:08cv2-RS-EMT., 2008 WL 1844612, at *4-6 (N.D. Fla. Apr. 23, 2008).

Here, the claims for breach of the implied covenant of good faith and fair dealing (Counts V and VI) are indistinguishable from the claim for breach of contract.  The threadbare recital of the elements of claims for breach of the implied covenant of good faith and fair dealing, where the claims are supported by the very same allegations as the breach of contract claim, is insufficient, and should be dismissed.

15

C.  Plaintiffs' Claim for Accounting Is Preempted by the
Unambiguous Language of the Limited Partnership Agreement.

Plaintiffs' derivative claim for accounting (Count IX) is preempted by the Limited

Partnership Agreement.  Sections 17 and 19 of the Limited Partnership Agreement (*See* Haddad

Decl. Ex. F) provide, in pertinent part, as follows:

> 17.1  Books of Account.  The General Partner shall keep and maintain full,
> complete and accurate books of account and records of the Partnership with
> respect to the Partnership's activities and financial affairs at the principal address
> of the Partnership.  Such books and accounts of record shall be retained by the
> General Partner for a minimum period of seven years or longer if required by
> applicable law and shall be made available for review by Limited Partners upon
> reasonable request.
>
> ***
>
> 19.1  Waiver of Accounting.  Except as may be otherwise required by law, each
> Partner hereby irrevocably waives any and all rights that it may have to maintain
> an action for an accounting, partition or similar action in connection with the
> Partnership or any of the Partnership's property.

Under Florida law, remedies limiting provisions, such as this, are enforceable unless they

contain "'an unreasonable disparity in remedy alternatives available to' the parties."  *Inlet Beach*

*Capital Invs., LLC v. F.D.I.C.*, 778 F.3d 904, 907 (11th Cir. 2014) (*citing Terraces of Boca*

*Assocs. v. Gladstein*, 543 So. 2d 1303, 1304 (Fla. 4th DCA 1989)).  Sections 17.1 and 19.1 of the

Limited Partnership Agreement do not contain such an unreasonable disparity.  Plaintiffs

unambiguously waived "any and all rights" to maintain an action for accounting, but the General

Partner remained obligated to provide books and accounts of record for review by any Limited

Partner upon a reasonable request, so this Count should be dismissed.

D.  Plaintiffs Do Not Make Any Factual Allegations to Support Their Direct Claims
Against Mastroianni or Yellen for Conversion and Civil Theft.

Plaintiffs' claims for conversion (Count VII) and civil theft (Count VIII) should be

dismissed as to Mastroianni and Yellen because the Complaint is devoid of any factual support

sufficient to reach Mastroianni or Yellen directly.  Plaintiffs' veil-piercing allegations state in a conclusory fashion that:

> Mastroianni and Yellen … used their status to dominate and control the entities within the Harbourside Group … to such an extent that these entities' independent existence was in fact non-existent and Mastroianni and Yellen were in fact their alter egos.

(Compl. ¶ 81.) This bald assertion of alter-ego is insufficient to state any claim against Mastroianni or Yellen under a veil-piercing theory.  *See Pharmacare Health Serv., Inc. v. Wenrich*, No. 07-60113-CIV-JORDAN, 2007 WL 9701077, at *2-3 (S.D. Fla. Sept. 7, 2007) (granting motion to dismiss, reasoning that "bald, unsupported assertion[s]" of "alter ego" are insufficient to pierce the corporate veil because "[e]ven if a corporation is merely an alter ego… the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained.").  Plaintiffs do not allege that the Harbourside entities were unlawfully established, nor can they, because the Harbourside entities were established as the business entities required to properly conduct EB-5 Program business in accordance with USCIS requirements.

    E.  <u>A Claim for Conversion Cannot Lie for Failure to Repay a Debt.</u>

Plaintiffs cannot advance a claim for conversion based upon an alleged failure to repay the EB-5 Loan on the maturity date.  Florida law is clear on this point: an obligation to repay a debt cannot be enforced by a conversion action.  *See e.g., Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, No. 18-cv-81445-BLOOM/Reinhart, 2019 WL 3532024, at *8 (S.D. Fla. Aug. 2, 2019) (*citing Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)); *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011); *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 495 (Fla. 3d DCA 1994).  And that is exactly what the Plaintiffs seek to do here.  Plaintiffs seek to recover the $500,000 that each limited partner invested "for the purpose of

funding the EB-5 Loan…" (Count VII, Compl. ¶ 152).  Plaintiffs' conversion claim completely disregards Florida law.

At the same time, Plaintiffs ignore the most fundamental element of a claim for conversion.  An action for conversion under Florida law is regarded as a "possessory action." *United States v. Bailey*, 419 F.3d 1208, 1214 (11th Cir. 2005).  A plaintiff cannot bring a cause of action for conversion if it cannot establish that it had possession or an immediate right to possession of the converted property *at the time* of the alleged conversion.  *Id*.  Here, Plaintiffs do not allege or otherwise suggest that they had the immediate right to possession of the invested funds because that would violate EB-5 regulations requiring that applicants' investments be "at risk."  At no point in the EB-5 process were the Plaintiffs' funds anything other than "at risk."

Plaintiffs' lack of the immediate right to possession is echoed by the Offering Documents.  They made an "at risk" investment, in exchange for a non-transferable partnership interest, with no call, redemption or withdrawal rights.  Plaintiffs cannot, based upon the facts pleaded, set forth a claim for conversion, and any amendment would be futile.

F.  Plaintiffs' Claim for Civil Theft Is a Sham Attempt at Treble Damages.

For all the reasons set forth above, the claim for civil theft is a sham.  Under Florida law, "[a] claim for civil theft consists of conversion plus criminal intent." *Gokalp v. Unsal*, 284 So. 3d 1097, 1098-99 ((Fla. 4th DCA 2019) (citations omitted).  To state a claim for civil theft, a plaintiff must prove conversion as an element of the civil theft alleged.  *Id.*  Because there is no factual basis for the Plaintiffs' conversion claim, Plaintiffs cannot assert a claim for civil theft. *Gasparini v. Pordomingo,* 972 So. 2d at 1056; *see Gersh v. Cofman*, 769 So. 2d 407, 408 (Fla. 4th DCA 2000).  It is not surprising that the Complaint is devoid of any factual demonstration of "criminal intent," or that Count VIII merely tracks the language of the civil theft statute.  (*See*

18

Compl. Count VIII.) There is no factual or legal support for Plaintiffs' absurd claim for civil theft.  Accordingly, Count VIII should be dismissed as a sham attempt at treble damages.

## IV.  <u>THE PLAINTIFFS' CLAIMS ARE BARRED BY JUDICIAL ESTOPPEL</u>

"Judicial estoppel is an equitable doctrine intended to protect the integrity of the courts from parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment... Judicial estoppel may be applied when the plaintiff took a position under oath in the [prior] proceeding that was inconsistent with the plaintiff's pursuit of the [present] lawsuit and she thus intended to make a mockery of the judicial system." *Korman v. Iglesias*, 778 F. App'x 680, 682 (11th Cir. 2019), *cert. denied*, 2019 WL 6257430 (U.S. Nov. 25, 2019) (holding that the application of judicial estoppel was clear on the face of the pleadings because plaintiff's "affirmative change of position plainly reflect[ed] a 'cold manipulation and not an unthinking or confused blunder.'")

As the Eleventh Circuit has explained, "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002)).  "The doctrine of [judicial estoppel] 'is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'" *Sullivan Props., Inc. v. City of Winter Springs*, 899 F. Supp. 587, 591 (M.D. Fla. 1995).  "[C]ourts in this Circuit have applied the doctrine [of judicial estoppel] when the party made the prior inconsistent statements in an administrative forum … provided that the statements were made under oath." *Apotex, Inc. v. UCB, Inc.*, 970 F. Supp. 2d 1297, 1329 (S.D. Fla. 2013),

*aff'd*, 763 F.3d 1354 (Fed. Cir. 2014) (holding that the action was "inconsistent with [plaintiff's] sworn position under oath" at a prior patent prosecution).

"The doctrine of [judicial estoppel] 'is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'" *Sullivan Props., Inc.*, 899 F. Supp. at 591 (emphasis added) (finding that judicial estoppel was not applicable in this case). Here, the estoppel arises because each Plaintiff swore in their immigration petition that the evidence attached was "true and correct." The immigration petition and determination is an administrative proceeding with sworn evidence, resulting in a benefit to Plaintiff. As such, all elements of judicial estoppel are present, and Plaintiffs cannot be heard to argue that they: relied on advertisements; did not know about the convertible loan component of the loan agreement; or justifiably believed that their funds were not at risk or that payment was guaranteed.

The very purpose of judicial estoppel is to prevent Plaintiffs like these from playing fast and loose with the facts—taking one position when it suits their purposes to get their green cards, then having obtained their green cards, asserting contradictory facts.

## CONCLUSION

For the reasons set forth above and in the documentary evidence, Defendants request that the Court (1) dismiss Plaintiff's Complaint in its entirety, with prejudice, and (2) deny any request to re-plead as futile.

## REQUEST FOR HEARING

Defendants respectfully requests this Court set a hearing for their Motion to Dismiss pursuant to Southern District of Florida Local Rule 7.1(b)(2). Although the Court is no stranger to these issues, Defendants believes that the parties and the Court would benefit from oral

argument given the number of causes of action and the intricacies of the factual allegations. Defendants estimate a thirty (30) minute hearing for argument on this Motion.

**LOCAL RULE 7.1(A)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3), Defendants' counsel certifies that they have conferred with Plaintiffs' counsel in a good faith effort to resolve the issues raised in this motion and have been unable to do so.

Dated: March 25, 2020.

Respectfully submitted,

AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL  33401
Tel.: (561) 653-5000 / Fax: (561) 659-6313

*By: s/Eleni Kastrenakes Howard*
David P. Ackerman (FBN 374350)
Primary Email: david.ackerman@akerman.com
claudia.rodriguez@akerman.com
Eleni Kastrenakes Howard (FBN 0073073)
eleni.howard@akerman.com
dolores.block@akerman.com

and

Richard G. Haddad (*Admitted Pro Hac Vice*)
rhaddad@otterbourg.com
William M. Moran (*Admitted Pro Hac Vice*)
wmoran@otterbourg.com
OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Tel: (212) 661-9100/ Fax: (212) 682-6104

*Counsel for Defendants*

52488820;3