## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 9:20-cv-80102-SINGHAL/VALLE

TING PENG and LIN FU, on behalf of
themselves individually and all others similarly
situated, and derivatively on behalf of
HARBOURSIDE FUNDING, LP, a Florida
limited partnership,

Plaintiffs,

v.

NICHOLAS A. MASTROIANNI II;
RICHARD L. YELLEN; FLORIDA
REGIONAL CENTER, LLC, a Delaware
limited liability company; HARBOURSIDE
FUNDING GP, LLC, a Florida limited liability
company; and HARBOURSIDE PLACE, LLC,
a Delaware limited liability company,

       Defendants,

and

HARBOURSIDE FUNDING, LP, a Florida
limited partnership,

       Nominal Defendant.

_____/

### DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED VERIFIED CLASS-ACTION AND DERIVATIVE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND.................................................................................................... 3

    A.   The EB-5 Program ................................................................................... 3

    B.   The Harbourside Project .......................................................................... 4

    C.   Documentary Evidence Refutes the Claims in the FAC................................. 4

    D.   The March 31, 2014 Report and Plaintiffs' Signed Consents........................ 6

    E.   Completion of the Project ......................................................................... 7

ARGUMENT ........................................................................................................................ 9

   I.    CLAIMS BARRED BY THE STATUTE OF LIMITATIONS SHOULD BE
        DISMISSED ............................................................................................. 9

    A.   Plaintiffs' Declaratory Claims and the Breach of Contract Claim Are Time-
         Barred..................................................................................................... 9

    B.   The Conversion Claim is Time-Barred........................................................ 10

    C.   The Civil Theft Claim is Time-Barred......................................................... 10

   II.   THE FAC FAILS TO STATE ANY DIRECT CLAIM FOR RELIEF............... 11

    A.   Counts II, IV and VI Are Barred by Fla. Stat. § 620.2001. .......................... 11

    B.   Plaintiffs Do Not Make Any Factual Allegations to Support Their Direct
         Claims Against Mastroianni. ..................................................................... 12

    C.   A Claim for Conversion Cannot Lie for Failure to Repay a Debt .............. 13

    D.   Plaintiffs' Claim for Civil Theft Is a Sham Attempt at Treble Damages ..... 14

   III.   THE FAC FAILS TO STATE ANY DERIVATIVE CLAIM FOR RELIEF...... 14

    A.   There Is No Justiciable Controversy So As to Permit A Declaratory
         Judgment Claim ...................................................................................... 14

    B.   The FAC Does Not State a Claim for Breach of Fiduciary Duty ................. 15

    C.   The FAC Does Not State a Claim for Aiding and Abetting Breach of
         Fiduciary Duty. ....................................................................................... 17

    D.   Plaintiffs' Claim for Accounting Is Preempted by the Unambiguous
         Language of the Limited Partnership Agreement ......................................... 18

   IV.   THE FAC IS BARRED BY JUDICIAL ESTOPPEL ......................................... 19

CONCLUSION...................................................................................................................... 20

REQUEST FOR HEARING.................................................................................................. 20

LOCAL RULE 7.1(A)(3) CERTIFICATION ........................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                                                    **Pages**

*Apotex, Inc. v. UCB, Inc.*,
  970 F. Supp. 2d 1297 (S.D. Fla. 2013), aff'd, 763 F.3d 1354 (Fed. Cir. 2014) ....................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................9

*Commc'ns, Inc. v. Ernest*,
  No. 10-20019-CIV-JORDAN, 2010 WL 11553318 (S.D. Fla. June 2, 2010)........................11

*Crossen v. USAA Cas. Ins. Co.*,
  No. 9:18-CV-81453-ROSENBERG/REINHART, 2019 WL 1258739 (S.D. Fla. Mar. 19,
  2019) ......................................................................................................................................15

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ................................................................................................4

*Eisenberg v. Standard Ins. Co.*,
  No. 09–80199–CIV., 2009 WL 3667086 (S.D. Fla. Oct. 26, 2009).......................................15

*Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*,
  208 F. Supp. 2d 1310 (S.D. Fla. 2002) ....................................................................................9

*Gasparini v. Pordomingo*,
  972 So. 2d 1053 (Fla. 3d DCA 2008) .....................................................................................14

*Gersh v. Cofman*,
  769 So. 2d 407 (Fla. 4th DCA 2000) ......................................................................................14

*Ginsberg v. Lennar Fla. Holdings, Inc.*,
  645 So. 2d 490 (Fla. 3d DCA 1994) .......................................................................................13

*Gokalp v. Unsal*,
  284 So. 3d 1097 (Fla. 4th DCA 2019) ....................................................................................14

*Gracey v. Eaker*,
  837 So. 2d 348 (Fla. 2002).....................................................................................................16

*Inlet Beach Capital Invs., LLC v. F.D.I.C.*,
  778 F.3d 904 (11th Cir. 2014) ................................................................................................18

*Interstate Fire & Cas. Co. v. Kluger, Peretz, Kaplan & Berlin, P.L.*,
  855 F. Supp. 2d 1376 (S.D. Fla. 2012) ...................................................................................15

*In re Izummi*,
   22 I&N Dec. 169 (BIA 1998) ................................................................................4

*Korman v. Iglesias*,
   778 F. App'x 680 (11th Cir. 2019), *cert. denied*, 2019 WL 6257430 (U.S. Nov. 25, 2019) ..19

*Lamm v. State St. Bank & Tr. Co*.,
   889 F. Supp. 2d 1321 (S.D. Fla. 2012) ..............................................................17

*Laterza v. JPMorgan Chase Bank, N.A.*,
   221 F. Supp. 3d 1347 (S.D. Fla. 2016) ..............................................................11

*Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*,
   992 F.2d 1171 (11th Cir. 1993) ...........................................................................9

*Med. Jet, S.A. v Signature Flight Support-Palm Beach, Inc*.,
   941 So. 2d 576 (Fla. 4th DCA 2006) .................................................................10

*Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa*.,
   No. 11–21163–CIV., 2012 WL 1416428 (S.D. Fla. Apr. 24, 2012) ......................15

*Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*,
   No. 18-cv-81445-BLOOM/Reinhart, 2019 WL 3532024 (S.D. Fla. Aug. 2, 2019)...............13

*Pharmacare Health Serv., Inc. v. Wenrich*,
   No. 07-60113-CIV-JORDAN, 2007 WL 9701077 (S.D. Fla. Sept. 7, 2007)........................12

*Robinson v. Tyson Foods, Inc*.,
   595 F.3d 1269 (11th Cir. 2010) .........................................................................19

*Small Bus. Admin. v. Echevarria*,
   864 F. Supp. 1254 (S.D. Fla. 1994) ...................................................................10

*Smith v. Williams*,
   819 F. Supp. 2d 1264 (M.D. Fla. 2011)...............................................................16

*Sullivan Props., Inc. v. City of Winter Springs*,
   899 F. Supp. 587 (M.D. Fla. 1995)......................................................................19

*Terraces of Boca Assocs. v. Gladstein*,
   543 So. 2d 1303, 1304 (Fla. 4th DCA 1989).......................................................18

*Tobon v. Am. Sec. Ins. Co.*,
   No. 06-61912-CIV., 2007 WL 1796250, at *2 (S.D. Fla. Jun. 20, 2017)...............15

*United States v. Bailey*,
   419 F.3d 1208, 1214 (11th Cir. 2005) .................................................................13

*Walker v. Figarola*,
    59 So. 3d 188, 190 (Fla. 3d DCA 2011) ....................................................................13

**Statutes**

8 U.S.C. § 1153(b)(5) ......................................................................................................3

Fla. Stat. § 95.11(3)(h), (i) ............................................................................................10

Fla. Stat. § 620.2001 ...................................................................................................1, 11

Fla. Stat. § 620.2001(2)..............................................................................................11, 12

Fla. Stat. § 772.17 .........................................................................................................11

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................1

S.D. Fla. L.R. 7.1(A)(3) ...........................................................................................20, 21

S.D. Fla. L.R. 7.1(b)(2) .................................................................................................20

**Other Authorities**

8 C.F.R. § 203(b)(5) .......................................................................................................3

8 C.F.R. § 216.6(c)(1)(i)-(iii)..........................................................................................4

USCIS Policy Manual, Volume 6, Part G ("PM"), Chapter 1, §§ A, B.1. .....................3

USCIS Policy Manual, Volume 6, Part G ("PM"), Chapter 2 § A.2 ..............................4

USCIS Policy Manual, Volume 6, Part G ("PM"), Chapter 5 .......................................4

Defendants, Nicholas A. Mastroianni II, Florida Regional Center, LLC, Harbourside Funding GP, LLC, and Harbourside Place, LLC (all together, "Defendants"), pursuant to Federal Rule of Civil Procedure 12 and Fla. Stat. § 620.2001, file this Motion to Dismiss Plaintiffs' First Amended Verified Class-Action and Derivative Complaint and Incorporated Memorandum of Law, and state as follows:

## PRELIMINARY STATEMENT

The First Amended Complaint ("FAC") should be dismissed because the Plaintiffs continue to assert implausible claims that are barred by the statute of limitations, Florida law and the documentary evidence attached to and referenced in the FAC.  In their motion to dismiss the original complaint, Defendants exposed the numerous deficiencies in the Plaintiffs' claims.  (*See* ECF No. 19.)  Unable to defend the original complaint, the Plaintiffs filed the FAC but still fail to assert viable, plausible claims, and instead have doubled down on allegations that if true, would expose them to the risk of losing their green cards because Plaintiffs' allegations here are directly contrary to their sworn immigration petitions.   Plaintiffs ignore the fundamental deficiencies addressed in Defendants' first motion to dismiss and continue to assert claims that are (i) unsupported by Florida law, (ii) refuted by the documents described and referred to in the FAC, and (iii) barred by judicial estoppel.  Specifically:

(a)      Counts I, VII, VIII and IX are time-barred.

(b)      Florida law does not permit direct claims asserted by limited partners for an injury that is solely the result of an injury to the partnership.  As such, Counts II, IV and VI fail.

(c)      Southern District of Florida precedent holds that a dispute for which a breach of contract claim was asserted is not a proper subject for a declaratory judgment.  Therefore, Counts I and II fail.

(d)     Count III for breach of fiduciary duties depends on undefined "conflicts of interest."  Without more, this vague reference to "conflicts of interest" is not a sufficient predicate for relief and Count III should be dismissed.  Notably, any supposed "conflicts of interest" were not only disclosed in advance and accepted by the Plaintiffs as a condition of their investment, but the exhibit attached to the FAC contains this very disclosure and proves this assertion to be a sham.  (ECF No. 24, FAC Ex. 1, Offering Memorandum, "Risk Factors" at 34-36, 4-5).

(e)     Counts V and VI for aiding and abetting breach of fiduciary duty fail to plead "knowledge" and "substantial assistance," which are essential elements of any aiding and abetting claim, and should be dismissed.

(f)     Count VII for breach of contract, which the Plaintiffs concede dates back to 2012 and 2014, was not filed until long after the expiration of the statute of limitations and is time-barred on the face of the FAC.

(g)     Count VIII for conversion is at best a claim for payment of money damages. Count VII therefore fails.  Similarly, because conversion and criminal intent (which is not pleaded) are elements of a claim for civil theft, Count IX also fails.

(h)     Count X for accounting fails because the parties' contract, attached to the Complaint, expressly waives any right to an accounting.

(i)     The documentary evidence described and referred to in the FAC refutes the allegations at the heart of each of the claims: (1) the contract contains an express disclaimer of reliance on advertising, yet the FAC maintains reliance on advertising, (2) the resolution *signed by both Plaintiffs* in 2014 expressly directs the partnership to enter into the transactions complained of and ratifies the prior loans and transactions that form the bases of the claims, (3)

the August 25, 2017 letter from the limited partnership to the limited partners states that the debt owed to limited partnership as of that date exceeds the fair market value of the Harbourside Project, yet the FAC maintains that the Defendants engaged in criminal conduct by failing to repay the debt, and (4) the documentary evidence establishes that the Plaintiffs received notice of the November 2017 Harbourside conversion, of which they claim to have had no notice.

(j)     The FAC is barred by judicial estoppel.  In their successful immigration petitions, both Plaintiffs swore, under oath, to the United States Citizenship and Immigration Services ("USCIS") that the evidence attached to their immigration petitions was "true and correct." Because that evidence, which formed part of their successful immigration petitions and which gave the two Plaintiffs and their families their green cards, contradicts the Plaintiffs' claims, they are judicially estopped from claiming otherwise here, and the FAC should be dismissed.  (Of course, if what Plaintiffs now say is that they filed false immigration petitions or that their sworn statements were false, then Plaintiffs would have committed immigration fraud and be subject to deportation.)

## FACTUAL BACKGROUND

### A.  The EB-5 Program

The EB-5 program was created in 1990 by Congress to encourage the flow of capital into the U.S. economy and to promote employment in the United States.  Foreign investors are offered the prospect (but not the guarantee) of lawful permanent residence in the U.S. (evidenced by an issued green card) if they invest a minimum of $500,000 in a new commercial enterprise in the U.S., and that investment results in the creation or maintenance of 10 full-time jobs in the U.S. for American citizens.  *See* 8 U.S.C. § 1153(b)(5); 8 C.F.R. § 203(b)(5); USCIS Policy Manual, Volume 6, Part G ("PM"), Chapter 1, §§ A, B.1.

3

USCIS regulations impose specific requirements on the use of the investor's capital during the pendency of their immigration application.  In particular, an investor must sustain his or her investment "at risk" at least as long as the entire two-year period of conditional I-526 residency.  *See* 8 C.F.R. § 216.6(c)(1)(i)-(iii); PM Chap. 5. [1] Nowhere in this process does the voluntarily and willingly invested capital become anything other than "at risk."  In fact, it is a violation of the EB-5 Program law and regulations for there to be a guarantee on the return of the immigrant investor's capital investment.  PM Chap. 2 § A.2; *In re Izummi*, 22 I&N Dec. 169, 181 (BIA 1998).

### B.  The Harbourside Project

In 2010, Defendant, Nicholas A. Mastroianni, II ("Mastroianni"), established the Florida Regional Center, LLC, Harbourside Funding LP (the "Limited Partnership"), Harbourside Funding GP ("Harbourside GP") and Harbourside Place, LLC ("Harbourside Place") as the appropriate business structure to properly conduct EB-5 Program business in accordance with USCIS requirements.  Harbourside GP is the manager of the Limited Partnership, Harbourside Place is the borrower/owner of the Harbourside Project, a mixed-use commercial real estate development in Jupiter, Florida.

### C.  Documentary Evidence Refutes the Claims in the FAC

While Plaintiffs spend many pages in the FAC describing events from many years ago, those assertions cannot be probative of any claim where the assertions are contradicted by documentary evidence, as illustrated by the following Chart:

---

[1]  The facts are drawn from the FAC and documents referenced in the FAC which are properly before the Court on a motion to dismiss.  *See, e.g.*, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  The exhibits are attached to the Declaration of Richard G. Haddad, dated April 21, 2020 (the "Haddad Decl.").

| SUMMARY OF KEY ALLEGATIONS IN THE FAC THAT ARE CONTRADICTED BY DOCUMENTARY EVIDENCE REFERENCED IN THE FAC | | |
|---|---|---|
| **Paragraph(s)** | **Allegation in the FAC** | **Documentary Proof Establishing Claim to Be False or Legally Without Merit** |
| ¶ 5 | Notice of the Developer's intent to invoke the conversion provision of the loan agreement was not provided | Notice was provided. (Haddad Decl. Exs. "A" through "C") |
| ¶ 24 | Plaintiffs relied on advertising in deciding to invest in the Harbourside Project | The Subscription Agreement, admittedly signed by Plaintiffs, expressly disclaims any reliance on advertisements. (Haddad Decl. Ex. "D" at § 6.13) |
| ¶ 25 | Plaintiffs were only shown signature pages | Plaintiffs submitted the entire agreements as exhibits to their successful immigration petitions, years ago. (Haddad Decl. Ex. "E") |
| ¶ 25 | There was a promise not to subordinate if Plaintiffs were unable to sell 200 units | The agreement provided for potential subordination if fewer than 200 units were sold for "any reason." There was no "ability condition." (Haddad Decl. Ex. "F" at 14, 17) |
| ¶¶ 33-35 | There was other borrowing in 2012 | The borrowing was disclosed to the investors and ratified and approved in writing signed by these Plaintiffs in 2014—and the statute of limitations has long expired on any claim related to this financing. (Haddad Decl. Exs. "G" and "H") |
| ¶ 57 | There were defaults that prevented the conversion from debt to equity | Any alleged default was cured by consent to the transactions and payment prior to the debt conversion, which each Plaintiff accepted without protest or reservation. (Haddad Decl. Exs. "B" and "G") |
| ¶ 57 | There were no efforts to repay the EB-5 Loan by taking a loan | Efforts were made to obtain refinancing (and Plaintiffs were notified of the details of those refinancing negotiations, including the financial institutions involved), but could not succeed because the liabilities exceeded the assets and the project was not economically viable. (Haddad Decl. Exs. "A" and "B") |
| ¶¶ 43-44 | The 2014 Ordinary Resolution of the Partnership was approved by negative consent, i.e., | The Ordinary Resolution was approved by signed written consent of a majority of the partners, specifically including the two Plaintiffs. (Haddad Decl. Ex. "G") |

|  | | |
|---|---|---|
|  | failure to respond was counted as acceptance | |
| ¶¶ 43-44 | There were two versions of the Ordinary Resolution | There was only one version, which 116 of the 199 partners signed and ratified, including the two Plaintiffs. (Haddad Decl. Ex. "G") |
| ¶ 53 | "Preferred" equity interests deprived the Limited Partners of the voting rights offered by common equity | Conversion to common equity did not offer voting rights.  The Offering Documents specifically disclose that "following any conversion of the Loan into an ownership interest in the Developer, the Limited Partners of the Partnership will not have any right to participate in the management of the Developer or its business..."  (ECF No. 24, FAC Ex. 1, Offering Memorandum, "Risk Factors" at 31) |
| ¶ 59 | The plan of conversion was exercised without the consent of the Limited Partners | The Offering Documents disclosed the potential conversion of Plaintiffs' debt to equity interests in the Developer, and by signing the Subscription Agreement, the Limited Partners consented to conversion. (ECF No. 24, FAC Ex. 1, Offering Memorandum, "Risk Factors" at 31) |
| ¶ 62 | Conversion to a Delaware LLC constituted an "Other Investment" under the Limited Partnership Agreement | The Limited Partnership Agreement excludes from the definition of "other investment," the investment in Harbourside Place.  (ECF No. 24, FAC Ex. 1, Limited Partnership Agreement at § 1.1.33) |
| ¶ 90, 97 | There were conflicts between Mastroianni and other defendants | The relationship between Mastroianni and the other entities was disclosed in the Offering Documents— before the Plaintiffs' invested.  (ECF No. 24, FAC Ex. 1, Offering Memorandum, "Risk Factors" at 34-36, 4-5) |

### D.  The March 31, 2014 Report and Plaintiffs' Signed Consents

By March of 2014, a substantial amount of the construction had been completed, but finishing the project to the degree required for the Harbourside Project compelled a significant increase in debt in the amount of $65 million.  This was fully disclosed in the March 31, 2014 Report to the Limited Partners (*See* Haddad Decl. Ex. "H"), which set forth the status of the Project and the need for additional senior financing in order to finish it.  The Report included a

proposal to the Limited Partners to approve the raising of the debt ceiling to provide the necessary capital to pay for the increased construction costs (as such additional debt would have superior rights to the Loan from Harbourside Partnership).  (*See* Haddad Decl. Ex. "H" at 4-5).

The March 31, 2014 Report also included an Ordinary Resolution of the Harbourside Partnership expressly authorizing the additional debt, ratifying all prior actions of the General Partner and the managers (necessarily including the very conduct complained of by Plaintiffs), and empowering and directing the General Partner to incur the additional debt.  Contrary to the Plaintiffs' allegations, there was only one form of resolution text distributed and agreed to.  A copy of the Ordinary Resolution, together with the list of 116 Limited Partners who approved it, specifically including Plaintiffs Ting Peng and Lin Fu, is attached to the Haddad Declaration as Exhibit "G."   This ratification, consent and direction, which was signed by the Plaintiffs themselves, establishes the lack of plausibility of the claims asserted.

### E.  Completion of the Project

By December of 2016, the construction of the Harbourside Project was complete, but economic stabilization at Harbourside had not yet occurred, meaning that the operating income had not yet reached a level to sustain a successful refinancing of the outstanding debt on commercially acceptable terms.  Thus, rather than proceed directly to conversion of the debt to equity at the upcoming maturity date, a Project Update Report dated December 14, 2016 was provided to Limited Partners setting forth the status of the Harbourside Project and requesting an extension of the Partnership Loan's maturity date from December 31, 2017 to December 31, 2020.  (*See* Haddad Decl. Ex. "A" at 6).  The Limited Partners, however, did not approve this request.

Then, as Plaintiffs acknowledge, an August 25, 2017 letter was sent to the Limited Partners providing notice that given the cash flow shortfalls and the fact that the amount of the

debt far exceeded the value of the project, no refinancing was viable.  (*See* Haddad Decl. Ex. "B").  The letter further advised of the likelihood that the conversion option would be exercised, absent approval by the Limited Partners of a proposal to allow a successful refinance of the senior loan in return for various enhanced rights to the Limited Partners, including a preferred equity position.  (*See* Haddad Decl. Ex. "B").  The proposal also offered the Limited Partners the individual option to convert their partnership interest into common equity of the Developer—the very remedy the Plaintiffs seek here—but the Plaintiffs refused.  Rejecting the very remedy they now seek shows that this case is not about contractual remedies, but some other agenda.

Notice of conversion was timely provided to the Limited Partnership in accordance with the notice provision of the Convertible Loan Agreement.  (*See* Haddad Decl. Ex. "C").  By November 30, 2017, all the outstanding interest due on the Partnership Loan was paid  and the Partnership Loan debt was converted to preferred equity.  Notably, the terms of the conversion were far more advantageous to the Limited Partners than Harbourside Place was contractually required to provide.  Rather than providing the Harbourside Partnership (and, therefore, the Limited Partners) with units of non-voting and non-management common membership interest in the insolvent Developer (which the Plaintiffs obviously did not want), the terms were voluntarily enhanced by, among other things, the following:

- While not required, the Limited Partners were given a preferred equity interest, with priority in distributions over its common equity member, Mastroianni.

- While not required, the preferred equity interest provided to the Limited Partners carries an entitlement to a 2% annual preferred return.

- Unlike common equity (Mastroianni), the Limited Partners as preferred equity have a date by which the balance of the capital payable to the Partnership is to be paid: the $99.5 million of invested capital is due to be returned to the Partnership at the end of a three (3) year period (with an option to extend for two (2) additional periods of one (1) year each).

8

- Mastroianni agreed to forego permitted management fees and income from operations and, instead, agreed to have Harbourside Place pay 100% of all net operating income to the Partnership until all the $99.5 million is returned.

- Mastroianni personally funded $8.8 million of accrued interest and has since paid all returns owed to the Harbourside Partnership on a current basis.  Each of the Plaintiffs has received his or her pro rata share and each Plaintiff has accepted these payments.

- Mastroianni personally paid over $30 million to sustain the insolvent Harbourside Project, which the Limited Partners would have otherwise had to advance if they had received common equity.

### ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility is established only by factual allegations that permit the court to draw reasonable inferences that the defendant is liable for the alleged misconduct, and requires more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* Moreover, where, on a dispositive issue of law no construction of the complaint's factual allegations will support the stated cause of action, dismissal is appropriate.  *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co*., 208 F. Supp. 2d 1310, 1313 (S.D. Fla. 2002).

I. **CLAIMS BARRED BY THE STATUTE OF LIMITATIONS SHOULD BE DISMISSED**

Just about everything Plaintiffs allege and complain of is barred by the statute of limitations.

   A. **Plaintiffs' Declaratory Claims and the Breach of Contract Claim Are Time-Barred**

Plaintiffs' claim for breach of contract (Count VII) and contract-based claims for declaratory judgment (Counts I and II) are barred by the statute of limitations.  Under Florida

9

law, the statute of limitations for a breach of contract claim is five years. *Med. Jet, S.A. v Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 577 (Fla. 4th DCA 2006) (citing § 95.11(2)(b), Fla. Stat.). A cause of action for breach of contract accrues at the time of the breach, irrespective of when "consequential damages result or become ascertained." *Med. Jet, S.A.*, 941 So. 2d at 578. Consistent with the general policy behind the statute of limitations, which is to prevent unreasonable delay in the enforcement of legal rights, the delayed discovery rule does not apply to claims for breach of contract. *Id.*

Here, the Plaintiffs' breach of contract claim and declaratory claims are predicated on alleged breaches that occurred in 2012. (*See e.g.*, FAC ¶¶ 33-46, 80-82, 84, 118-19.) Plaintiffs did not commence this action until January 27, 2020, almost eight years after the alleged breaches. It is of no moment that the Plaintiffs' alleged damage—Harbourside Place's failure to repay the EB-5 Loan—was not ascertained until the loan maturity date. The alleged breaches occurred in 2012, so Plaintiffs' claims are time-barred.

### B. The Conversion Claim is Time-Barred

The statute of limitations for conversion is four years. § 95.11(3)(h), (i), Fla. Stat.; *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1260 (S.D. Fla. 1994). The statute of limitations for conversion begins to run at the time of the conversion. *Small Bus. Admin.* 864 F. Supp. at 1260. Here, the allegation is that certain Defendants engaged in wrongful acts of dominion over Plaintiffs' investments in 2011 as to Plaintiff Fu and in 2013 as to Plaintiff Peng. As such, Count VIII for conversion is time-barred.

### C. The Civil Theft Claim is Time-Barred

The statute of limitations for civil theft is five years. § 772.17, Fla. Stat.; *see also Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1352 (S.D. Fla. 2016). The statute of limitations for civil theft begins to run when the plaintiff knows, or reasonably should have

10

known, of the wrongful conduct.  *Commc'ns, Inc. v. Ernest*, No. 10-20019-CIV-JORDAN, 2010 WL 11553318, at *2 (S.D. Fla. June 2, 2010).  The FAC shows that the Plaintiffs knew of the financing problems with the Project in 2014 and that significantly more money was needed to finish the Project, so that more jobs could be created and they would get their green cards.  For the same reasons the conversion claim fails, the claim for civil theft accrued more than seven years ago, so Count IX is time barred.

## II.   THE FAC FAILS TO STATE ANY DIRECT CLAIM FOR RELIEF

In the FAC, Plaintiffs assert five direct claims: Count II (declaratory relief), Count IV (breach of fiduciary duty), Count VI (aiding and abetting breach of fiduciary duty), Count VIII (conversion), and Count IX (civil theft).  Each fails to state a valid claim for relief.

### A.  Counts II, IV and VI Are Barred by Fla. Stat. § 620.2001.

As an initial matter, Counts II, IV and VI are barred by Florida Statute § 620.2001.  The statute requires that a partner commencing a direct action against a partnership or another partner plead and prove an actual or threatened injury that "is not solely *the result of* an injury suffered or threatened to be suffered by the limited partnership." § 620.2001(2), Fla. Stat. (emphasis added).  However, Counts II, IV and VI are duplicative of derivative claims asserted in the FAC for the same relief: Count I (declaratory judgment), Count II (breach of fiduciary duty) and Count V (aiding and abetting breach of fiduciary duty).

The allegations underlying Counts III and IV are indistinguishable, as are the allegations underlying Counts V and VI.  And, in both Counts I and II, Plaintiffs seek a declaratory judgment against "Mastroianni, the General Partner, and the Developer" for the improper exercise of the plan of conversion.  (*Compare* FAC Counts I and II.)  Thus, any injury to the Limited Partners alleged in Counts II, IV and VI stems from, and is solely the result of, an

alleged injury to the Limited Partnership.  The Counts are subsumed by Counts I, III and V, and should be dismissed as barred by Florida Statute § 620.2001(2).

### B.  Plaintiffs Do Not Make Any Factual Allegations to Support Their Direct Claims Against Mastroianni.

Before addressing the deficiencies in Plaintiffs' claims against Mastroianni, the complete lack of factual support to reach Mastroianni directly bears specific mention.  The veil-piercing allegations in the FAC merely state in a conclusory fashion that:

> Mastroianni and, until his withdrawal, [Richard] Yellen, used his status to dominate and control the entities within the Harbourside Group to such an extent that these entities' independent existence was in fact non-existent and Mastroianni and Yellen were in fact their alter egos. Mastroianni commingled these entities' assets and used their limited liability status as mere instrumentalities for personal benefit and other improper and misleading purposes, such as frustrating creditors (i.e., the Limited Partners), to the detriment of and injury to the Funding Partnership and the Limited Partners.

(FAC ¶ 63.)   This bald assertion of alter-ego is insufficient to state any claims against Mastroianni under a veil-piercing theory.  *See Pharmacare Health Serv., Inc. v. Wenrich*, No. 07-60113-CIV-JORDAN, 2007 WL 9701077, at *2-3 (S.D. Fla. Sept. 7, 2007) (granting motion to dismiss, reasoning that "bald, unsupported assertion[s]" of "alter ego" are insufficient to pierce the corporate veil because "[e]ven if a corporation is merely an alter ego… the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained."). On their second attempt, Plaintiffs still do not allege that the Harbourside entities were unlawfully established, nor can they.  The Harbourside entities were established as the business entities required to properly conduct EB-5 Program business in accordance with USCIS requirements.  This fact is belied by Plaintiffs' own admission in the FAC that "Defendant Nicholas Mastroianni and attorney Richard Yellen became the principals of the Harbourside Group… which they created *for the purpose* of building a mixed-use commercial development in Jupiter, Florida… via the EB-5 Immigrant Investor Visa Program." (FAC ¶ 1.) (emphasis added.)

12

Moreover, Mastroianni's role was disclosed in the Offering Documents and accepted by Plaintiffs as a condition of their investment, which they presented as part of their immigration applications.

### C.  A Claim for Conversion Cannot Lie for Failure to Repay a Debt

Plaintiffs cannot advance a claim for conversion against Mastroianni and the Developer for the alleged failure to repay the EB-5 Loan on the maturity date.  Florida law is clear on this point: an obligation to repay a debt cannot be enforced by a conversion action.  *See*, *e.g.*, *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, No. 18-cv-81445-BLOOM/Reinhart, 2019 WL 3532024, at *8 (S.D. Fla. Aug. 2, 2019) (citing *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)); *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. 3d DCA 2011); *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 495-96 (Fla. 3d DCA 1994).  But that is exactly what the Plaintiffs seek to do here—they seek to recover the $500,000 that each limited partner invested for the purpose of funding the EB-5 Loan.  (FAC ¶ 123, Count VIII.)

However, to bring a cause of action for conversion, a plaintiff must first establish that he had possession or an immediate right to possession of the converted property at the time of the alleged conversion.  *United States v. Bailey*, 419 F.3d 1208, 1214 (11th Cir. 2005).  Here, the right to repayment of the EB-5 Loan on the maturity date did not provide the Plaintiffs with an immediate right to possession.  That the "EB-5 investors [were] free to withdraw from the EB-5 Program" is also irrelevant.  The contract did not obligate the Defendants to keep the Plaintiffs' funds "intact."  *See Walker v. Figarola*, 59 So. 3d at 190.  Plaintiffs made an "at risk" investment, in exchange for a non-transferable partnership interest, with no call, redemption or withdrawal rights, which was consistent with EB-5 regulations requiring that applicants' investments be "at risk." Because the investment in the Harbourside Project was never anything

other than "at risk," Plaintiffs cannot set forth a claim for conversion for the failure to repay the EB-5 Loan on the maturity date.

### D.  Plaintiffs' Claim for Civil Theft Is a Sham Attempt at Treble Damages

For the same reasons set forth in II.C. above, the claim for civil theft fails.  Under Florida law, "[a] claim for civil theft consists of conversion plus criminal intent." *Gokalp v. Unsal*, 284 So. 3d 1097, 1098-99 (Fla. 4th DCA 2019) (citations omitted).  Because there is no factual or legal basis for the Plaintiffs' conversion claim against Mastroianni and the Developer, Plaintiffs cannot assert a claim for civil theft.  *Gasparini v. Pordomingo*, 972 So. 2d at 1056; *see Gersh v. Cofman*, 769 So. 2d 407, 408-09 (Fla. 4th DCA 2000).  It is therefore not surprising that the FAC is devoid of any factual demonstration of "criminal intent," or that Count IX merely tracks the language of the civil theft statute.  (*See* FAC Count IX.)  There is no factual or legal support for Plaintiffs' absurd claim for civil theft.  Accordingly, Count IX should be dismissed.

### III.   THE FAC FAILS TO STATE ANY DERIVATIVE CLAIM FOR RELIEF

Plaintiffs assert five derivative claims: Count I (declaratory relief), Count III (breach of fiduciary duty), Count V (aiding and abetting breach of fiduciary duty), Count VII (breach of contract), and Count X (accounting).  Like the Plaintiffs' direct claims, each of these Counts fails to state any valid claim for relief.

#### A.  There Is No Justiciable Controversy So As to Permit A Declaratory Judgment Claim

In Count I, Plaintiffs maintain that the Defendants improperly exercised the conversion provisions of the EB-5 Loan Agreement despite multiple "Events of Default."  (FAC ¶¶ 79-83.) The alleged "Events of Default" are (a) the Developer taking the Mortgage Loan and the Revolving Loan, which subordinated the EB-5 Loan to the Mortgage Loan and (b) the Developer using the EB-5 Loan funds to pay off the Mortgage Loan in contravention of the express purpose

of the EB-5 Loan Agreement.  (FAC ¶¶ 33-39.)  However, to state a claim for declaratory judgment "under the facts alleged, there must be a substantial *continuing controversy* between parties having adverse legal interests." *Interstate Fire & Cas. Co. v. Kluger, Peretz, Kaplan & Berlin, P.L.*, 855 F. Supp. 2d 1376, 1380 (S.D. Fla. 2012) (emphasis added) (citation omitted). Although the FAC now frames the request for declaratory judgment as "seeking a declaration of the parties' rights and duties," there is no continuing controversy here.  The Plaintiffs do not allege an issue with contract interpretation.  The "issues in controversy" are alleged breaches of contract, or in other words, past events.

Moreover, the Southern District of Florida has consistently held that a contract dispute is not a proper subject for declaratory judgment.  *See Crossen v. USAA Cas. Ins. Co.*, No. 9:18-CV-81453-ROSENBERG/REINHART, 2019 WL 1258739, at *3 (S.D. Fla. Mar. 19, 2019) ("This claim can be fully vindicated through their breach of contract claim (Count II), so their declaratory judgment claim (Count I) is indeed unnecessary… the Court uses its discretion over declaratory judgment actions to dismiss Count I of the Amended Complaint."); *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa.*, No. 11–21163–CIV., 2012 WL 1416428, at *2 (S.D. Fla. Apr. 24, 2012); *see also Eisenberg v. Standard Ins. Co.*, No. 09–80199–CIV., 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009) and *Tobon v. Am. Sec. Ins. Co.*, No. 06-61912-CIV., 2007 WL 1796250, at *2 (S.D. Fla. Jun. 20, 2017).  To the extent that a breach of the EB-5 Loan Agreement is at issue in this action, the Court can adjudicate the issue under Count VII for breach of contract (which is also without merit).  For these reasons, Count I should be dismissed.

### B.  The FAC Does Not State a Claim for Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.

15

*Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).  Here, Plaintiffs maintain that Mastroianni disregarded "conflicts of interests" and breached his fiduciary duties to the Limited Partnership by, *inter alia*, (a) failing to make any effort to obtain a loan to repay the loan principal to the Funding Partnership, (b) improperly invoking the conversion plan despite the existence of events of default, (c) exercising the conversion to preferred equity rather than common equity interests without the approval of the Limited Partners, and (d) creating the New Senior Lender with funds from a different EB-5 Project.  (FAC ¶ 90).  Indeed, the very "conflict" complained of here was expressly disclosed in writing and accepted as a condition of investment in the documents Plaintiffs attach to their FAC.  (ECF No. 24, FAC Ex. 1, Offering Memorandum, "Risk Factors" at 34-36).

*First*, Plaintiffs cannot foreclose the exercise of good-faith business judgment through non-specific assertions of Mastroianni's undefined "conflicts of interest." Without more, merely alleging that Mastroianni had "conflicts of interests resulting from roles as a Principal of the Harbourside Group, as manager of the General Partner, and as manager of the Developer" is insufficient.  (FAC ¶ 90).

*Second*, Defendants were unable to refinance the loan on favorable terms because the debt owed as of August 25, 2017, far exceeded the fair market value of the Harbourside Project (which was disclosed to the Limited Partners)—and, absent a specifically acknowledged duty, ordinary loan losses cannot form the basis for a breach of fiduciary duty; the claim should therefore be dismissed at the pleading stage.  *See Smith v. Williams*, 819 F. Supp. 2d 1264, 1278 (M.D. Fla. 2011).

*Third*, any alleged defaults were cured prior to the conversion, and the terms of the conversion were far more advantageous to the Limited Partners than was contractually required

as the face of the documents themselves confirms—so there can be no cognizable damages as a matter of law.  Rather than breach his fiduciary duties, Mastroianni protected the interests of the partnership (and therefore, the Limited Partners).

*Fourth*, Plaintiffs were not harmed by the conversion to preferred equity because the common membership interests did not provide "guaranteed voting rights."  (FAC ¶ 53.)   The Offering Documents attached to the FAC specifically disclose that "following any conversion of the Loan into an ownership interest in the Developer, the Limited Partners of the Partnership will not have any right to participate in the management of the Developer or its business..." (ECF No. 24, FAC Ex. 1 at 31.)  These indisputable facts demonstrate the fundamental flaw of this belated challenge to long-ago events.  The last thing in the world that these Plaintiffs would want is common equity of the Developer that is a worthless and powerless asset, which the Plaintiffs themselves knew years ago when they rejected that very option.

*Finally*, Plaintiffs explicitly ratified the conversion to preferred equity by accepting payment of accrued interest and returns owed to the Harbourside Partnership following the conversion to preferred equity.

### C.  The FAC Does Not State a Claim for Aiding and Abetting Breach of Fiduciary Duty.

To sustain a claim for aiding and abetting breach of fiduciary duty under Florida law, the plaintiff must allege: (1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance.  *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012).  Here, for the reasons set forth above, the FAC does not allege an underlying breach of fiduciary duty.

But even assuming the FAC states an underlying claim for breach of fiduciary duty (and it does not), the FAC fails to offer anything other than conclusory allegations of "knowledge" or "substantial assistance." (*See* FAC ¶¶ 107-11, Count VI.) These bare conclusions that the Regional Center and the Developer substantially assisted in and had actual knowledge of Mastroianni's and the General Partner's alleged breaches of fiduciary duty are insufficient to sustain such a claim, particularly in light of the illogic of the underlying claim for breach of fiduciary duty.

### D. Plaintiffs' Claim for Accounting Is Preempted by the Unambiguous Language of the Limited Partnership Agreement

Plaintiffs' derivative claim for accounting (Count IX) is preempted by the Limited Partnership Agreement. Sections 17 and 19 of the Limited Partnership Agreement (*See* Haddad Decl. Ex. "I") provide, in pertinent part, as follows:

> 17.1  Books of Account.  The General Partner shall keep and maintain full, complete and accurate books of account and records of the Partnership with respect to the Partnership's activities and financial affairs at the principal address of the Partnership.  Such books and accounts of record shall be retained by the General Partner for a minimum period of seven years or longer if required by applicable law and shall be made available for review by Limited Partners upon reasonable request.
>
> ***
>
> 19.1  Waiver of Accounting.  Except as may be otherwise required by law, each Partner hereby irrevocably waives any and all rights that it may have to maintain an action for an accounting, partition or similar action in connection with the Partnership or any of the Partnership's property.

Under Florida law, remedies limiting provisions, such as this, are enforceable unless they contain "'an unreasonable disparity in remedy alternatives available to' the parties." *Inlet Beach Capital Invs., LLC v. F.D.I.C.*, 778 F.3d 904, 907 (11th Cir. 2014) (citing *Terraces of Boca Assocs. v. Gladstein*, 543 So. 2d 1303, 1304 (Fla. 4th DCA 1989)).  Sections 17.1 and 19.1 of the Limited Partnership Agreement do not contain such an unreasonable disparity.  Plaintiffs unambiguously waived "any and all rights" to maintain an action for accounting, but the General

Partner remained obligated to provide books and accounts of record for review by any Limited Partner upon a reasonable request, so this Count should be dismissed.

## IV.   THE FAC IS BARRED BY JUDICIAL ESTOPPEL

"Judicial estoppel is an equitable doctrine intended to protect the integrity of the courts from parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment... Judicial estoppel may be applied when the plaintiff took a position under oath in the [prior] proceeding that was inconsistent with the plaintiff's pursuit of the [present] lawsuit and she thus intended to make a mockery of the judicial system." *Korman v. Iglesias*, 778 F. App'x 680, 682 (11th Cir. 2019), *cert. denied*, 2019 WL 6257430 (U.S. Nov. 25, 2019) (holding that the application of judicial estoppel was clear on the face of the pleadings because plaintiff's "affirmative change of position plainly reflect[ed] a 'cold manipulation and not an unthinking or confused blunder.'").

As the Eleventh Circuit has explained, "[f]irst, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002)).  "The doctrine of [judicial estoppel] 'is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'"  *Sullivan Props., Inc. v. City of Winter Springs*, 899 F. Supp. 587, 591 (M.D. Fla. 1995).  (internal citation omitted).  "[C]ourts in this Circuit have applied the doctrine [of judicial estoppel] when the party made the prior inconsistent statements in an administrative forum … provided that the statements were made under oath."  *Apotex, Inc. v. UCB, Inc.*, 970 F. Supp. 2d 1297, 1329 (S.D. Fla. 2013), *aff'd*, 763 F.3d 1354 (Fed. Cir. 2014) (holding that the action was "inconsistent with [plaintiff's] sworn position under oath" at a prior patent prosecution).

19

Here, the estoppel arises because each Plaintiff swore in their immigration petition that the evidence attached to their application was "true and correct." The immigration petition and determination is an administrative proceeding with sworn evidence, resulting in a benefit to Plaintiff. As such, all elements of judicial estoppel are present, and Plaintiffs cannot be heard to argue that they: relied on advertisements; did not know about the convertible loan component of the loan agreement; or justifiably believed that their funds were not at risk or that payment was guaranteed. The very purpose of judicial estoppel is to prevent Plaintiffs like these from playing fast and loose with the facts—taking one position when it suits their purposes to get their green cards, then after having obtained their green cards, asserting contradictory facts.

## CONCLUSION

For the reasons set forth above and in the documentary evidence, Defendants respectfully request that the Court (1) dismiss Plaintiff's FAC in its entirety, with prejudice, and (2) deny any request to re-plead as futile.

## REQUEST FOR HEARING

Defendants respectfully requests this Court set a hearing for their Motion to Dismiss pursuant to Southern District of Florida Local Rule 7.1(b)(2). Although the Court is no stranger to these issues, Defendants believes that the parties and the Court would benefit from oral argument given the number of causes of action and the intricacies of the factual allegations. Defendants estimate a thirty (30) minute hearing for argument on this Motion.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), Defendants' counsel certifies that they have conferred with Plaintiffs' counsel in a good faith effort to resolve the issues raised in this motion and have been unable to do so.

20

Dated: April 21, 2020

Respectfully submitted,

AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL  33401
Tel.: (561) 653-5000 / Fax: (561) 659-6313

*By: s/Eleni Kastrenakes Howard*
David P. Ackerman (FBN 374350)
david.ackerman@akerman.com
claudia.rodriguez@akerman.com
Eleni Kastrenakes Howard (FBN 0073073)
eleni.howard@akerman.com
dolores.block@akerman.com

and

Richard G. Haddad (*Admitted Pro Hac Vice*)
*rhaddad@otterbourg.com*
William M. Moran (*Admitted Pro Hac Vice*)
*wmoran@otterbourg.com*
OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Tel: (212) 661-9100/ Fax: (212) 682-6104

*Counsel for Defendants*

21