

# EXHIBIT I

**THIS AGREEMENT HAS BEEN INITIALLY WRITTEN IN THE ENGLISH LANGUAGE; IN THE EVENT OF ANY CONFLICT BETWEEN THE ORIGINAL ENGLISH VERSION AND ANY TRANSLATIONS INTO OTHER LANGUAGES, THE ORIGINAL ENGLISH VERSION SHALL CONTROL**

HARBOURSIDE FUNDING, LP

LIMITED PARTNERSHIP AGREEMENT

NOVEMBER 1, 2010

**TABLE OF CONTENTS**

1   DEFINITIONS & INTERPRETATION ....................................................................... 1
2   NAME, REGISTERED OFFICE & DURATION OF THE PARTNERSHIP ........................ 5
3   PURPOSE OF THE PARTNERSHIP .......................................................................... 6
4   POWERS OF THE PARTIES & MANAGEMENT OF THE PARTNERSHIP ................... 6
5   CAPITAL OF THE PARTNERSHIP ........................................................................... 9
6   UNITS OF THE PARTNERSHIP ............................................................................... 9
7   FEES AND EXPENSES ......................................................................................... 12
8   DETERMINATION AND ALLOCATION OF NET INCOME OR LOSS ........................ 13
9   DISTRIBUTIONS .................................................................................................. 14
10   TRANSFER AND ASSIGNMENT OF UNITS ........................................................... 15
11   REPRESENTATIONS, WARRANTIES AND COVENANTS ......................................... 15
12   LIABILITIES AND INDEMNIFICATION ................................................................. 16
13   WITHDRAWAL OF GENERAL PARTNER ............................................................... 18
14   POWER OF ATTORNEY ........................................................................................ 19
15   DISSOLUTION ..................................................................................................... 20
16   MEETINGS .......................................................................................................... 21
17   ACCOUNTING AND REPORTING ......................................................................... 22
18   NOTICES ............................................................................................................. 23
19   GENERAL ............................................................................................................ 23

### HARBOURSIDE FUNDING, LP

### LIMITED PARTNERSHIP AGREEMENT

THIS LIMITED PARTNERSHIP AGREEMENT (this "Agreement") of Harbourside Funding, LP (the "Partnership") is made as of the 1st day of November, 2010 among Harbourside Funding GP, LLC, a Florida limited liability company (the **"General Partner"**) and Donald M. Allison (the **"Original Limited Partner"**) and each party who from time to time becomes a limited partner in accordance with the terms of this Agreement (hereinafter individually referred to as a **"Limited Partner"** and collectively with the Original Limited Partner referred to as the **"Limited Partners"**). See Section 1 for definition of terms used in this Agreement.

### RECITALS:

(A) The Partnership intends to sell Units to investors and to admit as Limited Partners those investors whose subscriptions are accepted by the General Partner. Upon the admittance of the first Limited Partner, the Unit of the Original Limited Partner will be cancelled.

(B) This Agreement is being entered into to set forth the terms applicable to the relationship between the Partners and the conduct of the activities of the Partnership.

NOW THEREFORE in consideration of the respective covenants and agreements of the parties herein contained and for other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), the parties agree with each other as follows:

**1  DEFINITIONS & INTERPRETATION**

1.1  <u>Definitions</u>. For the purposes of this Agreement (including the Recitals hereto), the following terms shall have the respective meanings set out below and grammatical variations of such terms shall have corresponding meanings:

1.1.1  **"Accountants"** means such firm of certified public accountants as the General Partner shall retain on behalf of the Partnership.

1.1.2  **"Act"** means the Florida Revised Uniform Limited Partnership Act.

1.1.3  **"Administrative Fee"** means a fee of $40,000 paid by each Limited Partner for expenses incurred in connection with the offering of the Units under the Offering Memorandum, including for example printing, accounting, escrow and overseas marketing expenses.

1.1.4  **"Affiliate"** of a person means, with respect to a person or entity, any other person or entity that, directly or indirectly, controls, is controlled by or has common control with the first person or entity.

1.1.5  **"Agreement"** means this limited partnership agreement (together with all Schedules hereto), as it may from time to time hereafter be amended, supplemented or otherwise modified in accordance

herewith, and "hereto", "herein", "hereof", "herewith" and similar terms refer to such Agreement in its entirety unless a specific provision is stipulated.

1.1.6 **"Business Day"** means a day other than a Saturday, a Sunday or a statutory holiday in the State of Florida.

1.1.7 **"Capital Commitment"** means the amount of capital agreed to be invested in the Partnership by a Limited Partner pursuant to Section 5.2.

1.1.8 **"Capital Contribution"** means, in respect of each Partner at any time, the amount of money that the Partner has actually contributed to the Partnership.

1.1.9 **"Certificate"** means the Certificate of Limited Partnership filed under the Act forming the Partnership as a limited partnership thereunder, as such certificate may be amended from time to time.

1.1.10 **"Conversion Notice"** means a written notice from Harbourside Place, LLC to the Partnership exercising the right to convert the outstanding principal amount of the Qualifying Investment from a loan into units of common membership interest in Harbourside Place, LLC, as described in the Offering Memorandum or any supplements or amendments thereto

1.1.11 **"Escrow Agent"** means such escrow agent as the General Partner may retain on behalf of the Partnership pursuant to the Escrow Agreement.

1.1.12 **"Escrow Agreement"** means the agreement entered into between the Partnership and the Escrow Agent dealing with deposits and the balances of Subscription Amounts with respect to the subscriptions for Units.

1.1.13 **"Fiscal Year"** has the meaning set out in Section 2.3.

1.1.14 **"Florida Regional Center"** means the high unemployment area in Palm Beach County, Florida, for which Florida Regional Center LLC has obtained designation from USCIS as a "Regional Center," pursuant to Section 610 of the U.S. Appropriations Act and the Immigration Act. The Florida Regional Center is centered around census tract 4.04 and includes the area for Harbourside Place.

1.1.15 **"GAAP"** means accounting principles generally accepted in the United States, as recommended in the handbook of the governing professional organization.

1.1.16 **"General Partner"** means Harbourside Funding GP, LLC and any successor general partner of the Partnership.

1.1.17 **"Immigration Act"** means 8 U.S.C. §1101, *et seq.*, together with regulations published at 8 C.F.R. § 1.1, *et seq.*, as the same may be amended from time to time.

1.1.18 **"includes"** and **"including"** means "includes without limitation" and "including without limitation" respectively.

1.1.19 **"Indemnified Party"** has the meaning set out in Section 12.1.

1.1.20 **"Initial Closing"** has the meaning set out in Section 6.7.1.

1.1.21  **"Initial Closing Date"** means the date of the Initial Closing.

1.1.22  **"Initial Limited Partners"** means those Limited Partners who acquired their Interests in connection with the Initial Closing.

1.1.23  **"Interest"** means the entire limited partnership interest in the Partnership owned by a Limited Partner at any particular time, including the right of such Limited Partner to any and all benefits to which a Limited Partner may be entitled as provided in this Agreement, together with the obligations of such Limited Partner to comply with all of the terms and provisions of this Agreement. For purposes hereof, any reference to an Interest includes the interest of the General Partner in the Partnership as the general partner thereof, except to the extent expressly provided in such reference.

1.1.24  **"Investment"** means the Qualifying Investment and any Other Investment made by the Partnership but excluding Temporary Investments.

1.1.25  **"Limited Partner"** means each of the persons shown as limited partners on the record of Limited Partners which the General Partner is required to maintain under the Act, including any person who has been admitted to the Partnership as a substituted or additional Limited Partner in accordance with this Agreement.

1.1.26  **"Liquidating Trustee"** has the meaning set out in Section 15.3.

1.1.27  **"Losses"** mean, in respect of any matter, all claims, demands, proceedings, losses, damages, liabilities, deficiencies, costs and expenses arising directly or indirectly as a consequence of such matter, including all legal and other professional fees and disbursements, interest, penalties and amounts paid in settlement, but excluding loss of profit.

1.1.28  **"Meeting Notice"** has the meaning set out in Section 16.3.

1.1.29  **"Meeting Request"** has the meaning set out in Section 16.1.

1.1.30  **"Offering Memorandum"** means the Confidential Offering Memorandum of the Partnership dated November 1, 2010, relating to the private placement of Units, as the same may be revised, amended or supplemented from time to time.

1.1.31  **"Ordinary Resolution"** means, (i) a resolution of Limited Partners approved by more than 50% of the votes cast by Limited Partners, in person or by proxy, at a meeting of the Partners (or any adjournment thereof) called in accordance with this Agreement; or (ii) a written resolution signed by Limited Partners holding more than 50% of the votes attached to all of the Units that would have been entitled to vote on such resolution at a meeting of the Partners called in accordance with this Agreement.

1.1.32  **"Organizational Expenses"** has the meaning set out in Section 7.1.

1.1.33  **"Other Investment"** means any real estate-related investment of the Partnership in or with an entity with operations within the geographic area of the Florida Regional Center and Temporary Investments, but excluding the proposed investment in Harbourside Place.

1.1.34  **"Partners"** means the General Partner and each of the Limited Partners.

1.1.35 **"Partnership"** means the limited partnership formed under the name **"Harbourside Funding, LP"** and registered as a limited partnership pursuant to the Act.

1.1.36 **"Partnership Expenses"** means all the expenses of the Partnership including expenses set out in Section 7.2.

1.1.37 **"Partnership Interest"** means the respective percentage interests that the Partners hold in the Partnership as set forth on Exhibit A (as Exhibit A may be amended from time to time).

1.1.38 **"person"** shall be broadly construed and means, without limitation, any individual, partnership, limited partnership, corporation, limited liability company, unincorporated organization or association, trust (including the trustees thereof, in their capacity as such), government (or agency or political subdivision thereof) or other legal or business entity or enterprise.

1.1.39 **"Pilot Program"** means the EB-5 immigrant investment program established pursuant to the Immigration Act.

1.1.40 **"Preferred Return"** means, with respect to each Limited Partner, a sum equal to two percent (2%) per annum applied to the average daily balance of such Limited Partner's Unrecovered Capital Contribution, cumulative but not compounded, in each case determined on the basis of a 365/366 day year, as the case may be, for the actual number of days in the period for which the Preferred Return is being determined, commencing on the date the last potential Limited Partner submits his or her I-526 Immigrant Petition by Alien Entrepreneur to USCIS, as determined by the General Partner acting in good faith.

1.1.41 **"Qualifying Investment"** means the convertible loan to Harbourside Place, LLC to partially fund the purchase, development, construction and operation of Harbourside Place as described in the Offering Memorandum or any supplements or amendments thereto.

1.1.42 **"Register"** has the meaning set out in Section 6.8.

1.1.43 **"Securities Act"** means the Securities Act of 1933, as amended, and the regulations promulgated thereunder.

1.1.44 **"Subscription Agreement"** means a subscription agreement between the Partnership and a Limited Partner pursuant to which the Limited Partner subscribes for Units in a form acceptable to the General Partner.

1.1.45 **"Subscription Amount"** means $500,000.00.

1.1.46 **"Subsequent Closing"** has the meaning set out in Section 6.7.2.

1.1.47 **"Subsequent Closing Date"** means the date of a Subsequent Closing.

1.1.48 **"Targeted Employment Area"** means the high unemployment area within the Florida Regional Center, as designated pursuant to the Immigration Act.

1.1.49 **"Tax Act"** means the U.S. Internal Revenue Code and the regulations promulgated thereunder.

-4-

1.1.50 **"Temporary Investments"** means short-term investments in (i) short-term debt obligations or accounts denominated in U.S. dollars issued or guaranteed by the United States or a state thereof, or (ii) short term investments issued by a bank operating in the United States.

1.1.51 **"Termination Date"** has the meaning set out in Section 15.1.

1.1.52 **"Harbourside Place"** means the approximately 300,000 square foot mixed-use real estate development more fully described in the Offering Memorandum.

1.1.53 **"Unanimous Resolution"** means: (i) a resolution of Limited Partners approved by 100% of the votes cast by Limited Partners, in person or by proxy, at a meeting of the Partners (or any adjournment thereof) called in accordance with this Agreement, or (ii) a written resolution signed by Limited Partners holding 100% of the votes attached to all of the Units that would have been entitled to vote on such resolution at a meeting of the Partners called in accordance with this Agreement.

1.1.54 **"Unit"** means a unit of Interest in the Partnership.

1.1.55 **"Unreturned Capital Contributions"** means, with respect to any Partner the excess of (i) the amount of all Capital Contributions made by such Partner over (ii) the aggregate amount of distributions made to such Partner under Section 9.1.

1.1.56 **"USCIS"** means United States Citizenship and Immigration Services, an agency of the Department of Homeland Security of the United States of America.

1.2 Interpretation Not Affected by Headings, etc. The division of this Agreement into Sections and the insertion of headings are for reference purposes only and shall not affect the interpretation of this Agreement. Unless otherwise indicated, any reference in this Agreement to a Section refers to the specified Section of this Agreement

1.3 Number and Gender. In this Agreement, words importing the singular number include the plural and vice versa and words importing any gender include all genders and the neutral gender.

1.4 Date for Any Action. If any date on which any action is required to be taken under this Agreement is not a Business Day, that action shall be required to be taken on the next immediately following Business Day.

1.5 Accounting Terms. In this Agreement, accounting terms that are not defined herein shall be construed in accordance with GAAP.

1.6 Currency. In this Agreement, all dollar amounts are expressed in United States dollars.

## 2    NAME, REGISTERED OFFICE & DURATION OF THE PARTNERSHIP

2.1 Name. The Partnership shall carry on its activities under the name "Harbourside Funding, LP" or such other name, in accordance with applicable law, as the General Partner may determine from time to time. The General Partner shall notify each Limited Partner of any change in the name under which the Partnership carries on its activities within 10 Business Days of such change.

2.2 Registered Office and Principal Address. The registered office and principal address of the Partnership shall be located at 11770 US Highway One, Suite 301, Palm Beach Gardens, Florida

33408 or at such other location, in accordance with applicable law, as the General Partner may determine from time to time. The General Partner shall notify each Limited Partner of any change in the principal address of the Partnership within 10 Business Days of such change.

2.3    <u>Fiscal Year</u>. The fiscal year (the **"Fiscal Year"**) of the Partnership shall begin on the 1st day of January and end on the 31st day of December of each calendar year.

2.4    <u>Term</u>. Subject to <u>Section 15</u>, the Partnership shall continue until the Termination Date.

2.5    <u>Organizational Declarations and Other Filings</u>. If requested by the General Partner, the Limited Partners shall promptly execute all declarations, certificates and other documents consistent with the terms of this Agreement necessary for the General Partner, acting reasonably, to accomplish all filing, recording, publishing and other acts as may be appropriate to comply with all requirements for: (i) the formation and operation of a limited partnership under the laws of the State of Florida; (ii) if the General Partner deems it advisable, the operation of the Partnership as an entity or partnership in which the Limited Partners have limited liability, in all jurisdictions where the Partnership proposes to operate or in which Limited Partners have addresses of record in the Partnership records; and (iii) all other filings which the General Partner determines are required or advisable to be made by the Partnership.

## 3    PURPOSE OF THE PARTNERSHIP

3.1    <u>Partnership Purpose</u>. The Partnership has been formed as a commercial for-profit entity for the purpose of making the Qualifying Investment in the Targeted Employment Area, Other Investments, Temporary Investments, and all activities ancillary thereto.

3.2    <u>Powers</u>. The Partnership shall have the power to do and to perform any and all things necessary for, incidental to or connected with carrying on the activities of the Partnership.

3.3    <u>Investment Guidelines</u>.

3.3.1    <u>Investment Approval</u>. The Qualifying Investment set forth in the Offering Memorandum shall be deemed approved by a Limited Partner by the execution of the Subscription Agreement by such Limited Partner. All Other Investments other than Temporary Investments shall be made only upon the approval of Limited Partners by Unanimous Resolution. Temporary Investments may be made by the General Partner at its sole discretion, and each Temporary Investment shall be deemed approved by each Limited Partner upon the making of such Temporary Investment.

3.3.2    <u>Idle Capital</u>. Any funds of the Partnership that are not within 30 days to be invested in an Investment, distributed to the Partners or applied towards the satisfaction of Partnership Expenses shall be invested in Temporary Investments.

3.3.3    <u>General Partner Interpretations</u>. The foregoing investment guidelines and restrictions shall be subject to the good faith interpretation by the General Partner, which interpretation shall be conclusive, final and binding on the Partnership.

## 4    POWERS OF THE PARTIES & MANAGEMENT OF THE PARTNERSHIP

4.1    <u>Powers</u> of the General Partner. Subject to the terms of this Agreement and the mandatory provisions of the Act, the General Partner shall have the full unrestricted power and exclusive authority, without any consent or joinder of the Limited Partners except as specifically set forth in

this Agreement, (i) to carry on the activities of the Partnership and to do and to perform any and all things necessary for, incidental to or connected with carrying on the activities of the Partnership; and (ii) to represent and bind the Partnership. Any action taken by the General Partner on behalf of the Partnership shall be deemed to be the act of the Partnership and shall bind the Partnership. No person dealing with the Partnership shall be required to inquire into the authority of the General Partner to do any act, take any proceeding, make any decision or execute or deliver any instrument, deed, agreement or document for or on behalf of or in the name of the Partnership.

4.2     Specific Powers of the General Partner. Without limiting the foregoing general powers set out in Section 4.1, the General Partner is hereby authorized and empowered on behalf and in the name of the Partnership, or on its own behalf and in its own name, or through agents, as it may determine appropriate, subject to the approval of Limited Partners where required under this Agreement and to any applicable limitations set forth in the Act, to take any and all of the following actions:

4.2.1   Investing. Subject to Section 16.11.2, recommend Investments to the Limited Partners and, make all decisions concerning the investigation, solicitation, origination, selection, development, negotiation, acquisition, management, structuring, restructuring, commitment to or monitoring of and disposition of Investments, including in connection with compliance with the job creation requirements of the Pilot Program.

4.2.2   Managing Investments. Exercising Rights as Security Holder. Acquire, hold, sell, transfer, exchange, pledge and dispose of Investments, and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to Investments, including the voting of securities, the approval of a restructuring of an Investment, participation in arrangements with creditors of the entity with or to whom an Investment has been made, the commencement and settlement or compromise of actions and administrative proceedings with respect to an Investment or the Partnership and other similar matters with respect to Investments.

4.2.3   Banking. Open, maintain and close bank accounts and draw checks or other orders for the payment of money and open, maintain and close custodian, brokerage and similar accounts.

4.2.4   Staffing. Hire for usual and customary payment and expenses, consultants, attorneys, accountants and such other agents and employees for the Partnership as it may deem necessary or desirable, acting reasonably.

4.2.5   Maintain Regulatory Filings. File such declarations, returns or other documents and comply with all applicable regulatory requirements, and do such other acts required or advisable to maintain the status of the Partnership as a limited partnership where deemed appropriate, including without limitation the obligation to renew the Certificate every five years or such other period as may be required under the Act.

4.2.6   Incur Liabilities of the Partnership. Incur liabilities in the name of the Partnership from time to time as the General Partner may determine, acting reasonably, without limitation with regard to amount, cost or conditions of reimbursement of such liabilities.

4.2.7   Commence and Defend Litigation. Commence or defend any action or proceeding in connection with the Partnership and handle and settle any claims of the Partnership.

4.2.8   Attend to Tax Matters. Make, in its sole discretion, any and all elections for federal, state, local, municipal and foreign tax matters and make for and on behalf of each Limited Partner in respect of such Limited Partner's Interest any and all elections, determinations, designations or filings of

-7-

any kind under the Tax Act or the taxation or other legislation or similar laws of the United States, any state, municipality or foreign jurisdiction.

4.2.9   Engage Professionals. Negotiate contracts with third party providers of services including the Advisors, accountants and other professionals.

4.2.10  Bind the Partnership and Manage Its Activities Generally. Enter into, execute, maintain, and/or terminate contracts, undertakings, agreements and any and all other documents and instruments in the name of the Partnership, and do or perform all such things as may be necessary or advisable in furtherance of the Partnership's powers, objects, or purposes or to the conduct of the Partnership's activities, including obtaining any insurance coverage, preparing financial statements, income tax returns, information returns and financial and accounting information and providing Limited Partners with financial statements and other reports, as required by the Partnership or by applicable law, and entering into acquisition agreements to make or dispose of Investments which may include such representations, warranties, covenants, indemnities, guarantees and security as the General Partner deems necessary or advisable.

4.2.11  Admit Limited Partners. Admit new Limited Partners to the Partnership in accordance with Section 6.6.

4.3    No Commingling. Notwithstanding any other provision hereof, the funds and other assets of the Partnership shall not be commingled with the funds or other assets of the General Partner or any other person.

4.4    Indebtedness and Guarantees. Unless the Limited Partners approve otherwise by Ordinary Resolution, the Partnership shall not borrow any funds or act as a guarantor of the obligations of any person.

4.5    Standard of Care. The General Partner shall exercise its powers and discharge its duties under this Agreement honestly, in good faith and in the best interests of the Partnership. The General Partner shall exercise the same degree of care, diligence and skill that a reasonable person would exercise in similar circumstances.

4.6    Delegation. The General Partner may delegate to any other person, any or all of its power and authority under this Agreement, including its power and authority to carry on the business of, and to represent, the Partnership. Any such delegation shall not relieve the General Partner of its obligations under this Agreement.

4.7    General Partner. Each Limited Partner acknowledges that neither the General Partner, nor any affiliated person or entity of the General Partner, is registered as an advisor or otherwise under the securities laws of any jurisdiction.

4.8    No Restrictions on Other Business. This Agreement shall not be construed in any manner to preclude any Partner (including in particular the General Partner), their respective Affiliates or Associates, or any of their respective directors, officers, employees, shareholders, members, partners or agents from engaging in any activity whatsoever permitted by applicable law.

4.9    Powers of Limited Partners. No Limited Partner, in his or her capacity as a Limited Partner, shall: (i) execute any document that binds, or purports to bind, the Partnership or any Partner; (ii) hold itself out as having the power or authority to bind the Partnership or any Partner; (iii) undertake any obligation or responsibility on behalf of the Partnership; or (iv) bring any action for partition or

sale in respect of any or all of the assets or property of the Partnership or record or permit any encumbrance in respect of any such property. Subject to the foregoing, Limited Partners shall have all the rights and powers set out under the Act.

4.10   General Partner Affiliations. The General Partner, at its sole discretion may engage the services of its affiliates to provide services to Partnership. Further, The General Partner and its affiliates will not be engaged full time with the Partnership's venture and may provide services to other business ventures in the same industry as the Partnership.

## 5   CAPITAL OF THE PARTNERSHIP

5.1   Capital. The capital of the Partnership shall consist of the aggregate Capital Contributions to the Partnership by the Partners at the relevant time.

5.2   Commitments. The Capital Commitment of each Limited Partner shall be equal to the Subscription Amount for each Unit held by such Limited Partner at the relevant time. Future requirements, if any, for Capital Commitments in connection with Other Investments shall be determined in accordance with Section 6.3.

5.3   Capital Account. A separate capital account (each, a "**Capital Account**") shall be established for each Partner and shall be maintained in accordance with applicable regulations ("**Treasury Regulations**") under the Tax Act. The liability of a Partner for the losses, debts and obligations of the Partnership shall be limited to the Capital Contributions theretofore made to the Partnership by such Partner (or its predecessor in interest) which have not been previously repaid to or withdrawn by such Partner (or its predecessor in interest) in accordance with the terms of this Agreement. No Partner shall have any liability to restore any negative balance in its Capital Account.

5.4   No Right to Withdraw Amounts. No Partner shall have the right to withdraw any amount or receive any distribution from the Partnership, except as expressly provided in this Agreement. Without limiting the generality of the foregoing, except as expressly provided herein, no Limited Partner may receive distributions from the Partnership until the latter of (i) five years from the date of such Limited Partner's payment of the Subscription Amount and (ii) the date such Limited Partner's conditions to permanent resident status have been removed.

5.5   No Interest Payable on Accounts. No interest shall be paid to any Partner on any amount in such Partner's Capital Account.

## 6   UNITS OF THE PARTNERSHIP

6.1   Partnership Units. The Interests of the Limited Partners in the Partnership shall be divided into and represented by Units issued in accordance with this Agreement, each representing a share of the aggregate Interests of the Limited Partners in the Partnership as determined pursuant to this Agreement.

6.2   Unit Certificates.

6.2.1   Certificates. The Partnership may issue certificates to evidence ownership of Units which shall be in such form as shall be approved from time to time by the General Partner and shall be signed manually or by facsimile by or on behalf of the General Partner. The certificates evidencing ownership of Units shall be endorsed with the following legend:

"THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN
REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"),
AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE
REGISTRATION STATEMENT UNDER THE ACT OR AN OPINION OF COUNSEL
SATISFACTORY TO THE PARTNERSHIP THAT SUCH REGISTRATION IS NOT
REQUIRED PURSUANT TO REGULATION S, REGULATION D OR UNDER ANOTHER
EXCEPTION FROM REGISTRATION UNDER THE ACT; AND THAT HEDGING
TRANSACTIONS INVOLVING THOSE SECURITIES MAY NOT BE CONDUCTED
UNLESS IN COMPLIANCE WITH THE ACT. THE SECURITIES REPRESENTED BY THIS
CERTIFICATE ARE ALSO SUBJECT TO ADDITIONAL RESTRICTIONS ON TRANSFERS,
REPURCHASE OPTIONS AND OTHER AGREEMENTS SET FORTH IN THAT CERTAIN
LIMITED PARTNERSHIP AGREEMENT DATED EFFECTIVE AS OF NOVEMBER 1, 2010
AMONG HARBOURSIDE FUNDING GP, LLC, AS GENERAL PARTNER, AND CERTAIN
PERSONS, AS LIMITED PARTNERS, A COPY OF WHICH IS ON FILE AND MAY BE
OBTAINED FROM THE PRINCIPAL PLACE OF BUSINESS OF THE PARTNERSHIP."

6.2.2   Lost Certificates. Where a Limited Partner claims that a certificate evidencing its Units has been
defaced, lost, apparently destroyed or wrongly taken, the General Partner shall cause a new Unit
certificate to be issued in substitution for the original certificate if the Limited Partner: (i) files
with the General Partner an indemnity bond (or other form of indemnity or guarantee) in form
and amount satisfactory to the General Partner to protect the Partners and the Partnership from
any loss, cost or damage that they may incur or suffer by complying with the request to issue a
new Unit certificate, and (ii) satisfies such other reasonable requirements imposed by the General
Partner including a requirement to deliver the defaced Unit certificate or a form of proof of loss.

6.2.3   Certificates on Dissolution. Upon the dissolution of the Partnership and distribution to a Limited
Partner of the assets to which such Limited Partner is entitled hereunder or upon the withdrawal
of a Limited Partner pursuant to Section 16.11.2, any certificate evidencing a Unit issued to such
Limited Partner shall become null and void.

6.3     Offering Units. The General Partner may raise capital for the Partnership by offering for sale and
selling Units pursuant to the Offering Memorandum from time to time at a price equal to the
Subscription Amount. Concurrently with the presentation to the Limited Partners pursuant to
Section 16.11 of any Other Investment opportunity, the General Partner shall also describe the
terms of any additional Partnership capital that the General Partner intends to raise. All Limited
Partners shall be granted a first opportunity to subscribe, pro rata, for such additional Partnership
capital. The General Partner may determine the other terms and conditions of such sale and may do
all things in that regard for, in the name of and on behalf of the Partnership including preparing and
filing such offering or other documents as the General Partner determines to be necessary or
desirable provided always that all such actions are completed in a manner that is not inconsistent
with the provisions of the Offering Memorandum or any other offering document and all things
done by the General Partner in that regard are hereby ratified and confirmed.

6.4     Subscription.

6.4.1   Each subscriber may subscribe for Units by delivering:

6.4.1.1   to the General Partner a completed and executed Subscription Agreement;

6.4.1.2   to the Escrow Agent a wire transfer of funds in an amount equal to the sum of the Subscription
Amount plus the Administrative Fee for each Unit subscribed; and

6.4.1.3   such other documents and instruments as the General Partner may request.

6.4.2   The General Partner shall have the right to accept or reject subscriptions in whole or in part, including without limitation based upon a belief that the funds forming all or part of the subscription proceeds are from illegal or suspicious origins or activities. No subscriber shall be admitted to the Partnership at the Initial Closing or any Subsequent Closing unless such subscriber has executed and delivered a Subscription Agreement and authorized a counterpart of this Agreement to be executed by the General Partner on its behalf, all in form and substance satisfactory to the General Partner.

6.5   Use of Proceeds. Each Subscription Amount shall, upon fulfillment of the conditions for the release thereof to the Partnership pursuant to the Escrow Agreement (as described in the Offering Memorandum, including the approval of a Limited Partner's I-526 Petition), be utilized by the Partnership to make the Qualifying Investment. No issuance expenses may be paid with the Subscription Amount.

6.6   Admittance as Limited Partner. Upon acceptance by the General Partner of any subscription, in whole or in part, all Partners shall be deemed to consent to the admission of the subscriber as a Limited Partner and the Partnership may issue the subscribed Units to such subscriber. Each person becoming a party to this Agreement by the General Partner executing this Agreement on its behalf pursuant to the power of attorney granted to the General Partner in the Subscription Agreement of such person, shall be bound by the terms hereof and such person shall become a Limited Partner upon the entering of such person's name in the Register. The General Partner shall cause the Register to be amended and shall file with appropriate authorities all such other documents as may be required by the Act or under any other applicable legislation in other relevant provinces or territories and shall cause the admission of the new Limited Partner to be reflected in all other relevant Partnership books and records.

6.7   Closings.

6.7.1   Initial Closing. The first closing to take place at which the General Partner has received and accepted subscriptions representing Capital Contributions which aggregate not less than $500,000, shall be referred to as the "**Initial Closing.**"

6.7.2   Subsequent Closings. One or more closings (each a "**Subsequent Closing**") may take place following the Initial Closing Date, at which the General Partner may receive and accept subscriptions representing Capital Contributions in accordance with this Agreement.

6.7.3   Closing Condition. It shall be a condition to the Initial Closing and to each Subsequent Closing that the General Partner shall anticipate that the Qualifying Investment shall create the requisite number of jobs proscribed under the Pilot Program for each Limited Partner

6.8   Register. The General Partner shall act as the registrar of the Units and shall maintain a record (the "**Register**") and such other books and records as are necessary or advisable to record the following information:

6.8.1   the Partner's surname, the given name by which the Partner is commonly known, the first letters of the Partner's other given names and the Partner's residential address or address for service, including municipality, street and number, if any, and postal code;

6.8.2   the amount of money contributed by the Partner to the Partnership;

6.8.3   the number of Units held by each Partner; and

6.8.4   particulars of any and all transfers, assignments and redemptions of Units.

6.9   Inspection of Records. The Register and any other such books or records shall be kept by the General Partner at the principal address of the Partnership. The General Partner shall make the Register and any other books or records relating to the Partnership or the Partners available for inspection by any Limited Partner during normal business hours following five Business Days advance written notice to the General Partner.

6.10   Cancellation of Original Limited Partner's Unit. Upon the admittance of the first Limited Partner, the Unit of the Original Limited Partner shall be cancelled in consideration of US$100.00.

## 7   FEES AND EXPENSES

7.1   Offering and Organizational Expenses. The General Partner shall be responsible for all third party offering expenses, including legal, accounting, printing, escrow and overseas marketing expenses, incurred in connection with the offering of Units, to be paid from the Administrative Fees.

7.2   Partnership Expenses. Examples of the Partnership Expenses that the Partnership shall pay directly, include the following:

7.2.1   all expenses of lawyers, accountants, custodians, professional advisors and service providers retained by the Partnership in connection with the operation of the business, tax compliance, reporting to the Limited Partners, and other similar operational expenses;

7.2.2   insurance of the Partnership;

7.2.3   expenses relating to litigation or to the enforcement and protection of rights of the Partnership;

7.2.4   all taxes, fees or other similar charges levied against the Partnership; and

7.2.5   all expenses incurred in connection with the fulfillment of statutory or other compliance requirements and in connection with reporting to or communicating with Limited Partners and convening any meeting of Limited Partners.

7.3   Expenses of the General Partner. The General Partner on behalf of the Partnership will be responsible for all of the General Partner's day-to-day operating and administrative expenses, including overhead and compensation of its employees and, except as expressly contemplated by this Agreement, shall not be entitled to reimbursement therefore.

7.4   Allocation and Payment of Partnership Expenses. Partnership Expenses may be allocated against all revenue derived by the Partnership in a manner reasonably determined by the General Partner. The General Partner, acting reasonably, may on a *pro rata* basis withhold from any distributions any amounts necessary to create appropriate reserves for expenses and liabilities, contingent or otherwise (including any reserve or hold back with respect to liability for representations, warranties and indemnities under a purchase agreement relating to a disposition) of the Partnership as well as for any tax withholdings.

7.5     Affiliate Services. The General may engage the services of the principals of the General Partner or their affiliated companies to provide certain services to the Partnership. Any such services will be provided at market rates charged by unaffiliated third parties.

# 8    DETERMINATION AND ALLOCATION OF NET INCOME OR LOSS

8.1     Determination of Net Income or Loss. The net income or loss of the Partnership for each Fiscal Year shall be determined by the General Partner in accordance with the method selected by the General Partner.

8.2     Allocations of Net Income and Loss. All items of income, gain, deduction and loss of the Partnership as determined for federal income tax purposes shall be allocated among the Partners, and shall be credited or debited to their respective Capital Accounts in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv), so as to ensure to the maximum extent possible that such allocations satisfy the economic effect equivalence test of Treasury Regulation Section 1.704-1(b)(2)(ii)(i). In accordance therewith, all items that can have economic effect shall be allocated in such a manner that the balance of each Partner's Capital Account at the end of any taxable year of the Partnership (increased by the *sum* of (i) such Partner's "share of partnership minimum gain" as defined in Treasury Regulation Section 1.704-2(g)(1) *plus* (ii) such Partner's "share of partner nonrecourse debt minimum gain" as defined in Treasury Regulation Section 1.704-2(i)(5)) would be positive in the amount of cash that such Partner would receive if the Partnership sold all of its assets for an amount of cash equal to the book value (as determined pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(g)) of such assets (reduced, but not below zero, by the amount of nonrecourse debt to which property is subject) and all of the cash of the Partnership remaining after payment of all liabilities (other than nonrecourse liabilities) of the Partnership were distributed in liquidation of the Partnership immediately following the end of such taxable year pursuant to Section 15.3 hereof. All items of income, gain, deduction and loss that cannot have economic effect (including nonrecourse deductions) shall be allocated in accordance with each Partner's interest in the Partnership (*i.e.*, the "partner's interest in the partnership" within the meaning of Tax Act Section 704(b) and the Treasury Regulations thereunder) which, unless otherwise required by Tax Act Section 704(b) and the Treasury Regulations thereunder, shall be in proportion to the Partners' respective Partnership Interests.

8.3     Computation of Income or Loss for Tax Purposes. The General Partner shall have the right, in computing the income or loss of the Partnership for tax purposes, to: (i) adopt any permitted method of accounting; (ii) to the extent permitted or required by the Tax Act, adopt a different method of allocation than required in Section 8.2; and (iii) adopt different treatments of particular items and to make and revoke elections on behalf of the Partnership and the Partners as the General Partner deems appropriate.

8.4     Allocation of Income or Loss for Tax Purposes. Items of income, gain, deduction and or loss the Partnership for tax purposes for a Fiscal Year shall be allocated to the Partners in the same manner as set out in Section 8.2.

8.5     Tax Returns. Each Partner shall prepare and file such documents as may be required to be prepared and filed under the Tax Act and other similar legislation to which the Partner may be subject and shall include in its computation of income the income or loss of the Partnership for tax purposes as may be determined and allocated to it pursuant to this Section 8.

8.6   No Allocation or Distribution to Original Limited Partner. Notwithstanding any other provision of this Agreement, the Original Limited Partner shall not be entitled to receive any allocation or distributions pursuant to Section 8 or Section 9, except as specifically set forth therein.

# 9   DISTRIBUTIONS

9.1   Distributions.

9.1.1   Distributions in General. From time to time, on a quarterly basis (subject to Section 9.1.2), the General Partner may in the exercise of its sole discretion determine the amount, if any, of cash available for distribution after the payment of all Partnership Expenses and net of any required tax withholdings and any amounts which, in the opinion of the General Partner, are required to meet the ongoing obligations (whether certain or contingent) of the Partnership. The General Partner may in the exercise of its sole discretion cause the Partnership to distribute any cash available for distribution determined in accordance with this Section 9.1.1 as follows:

9.1.1.1   To the Limited Partners pro rata in accordance with their respective Partnership Interests, to the extent of their unpaid Preferred Return accrued as of the last day of the calendar quarter immediately preceding the date of such distribution; and

9.1.1.2   To the Partners pro rata in accordance with their respective Unreturned Capital Contributions until the Unreturned Capital Contributions of each Partner is reduced to zero; and then

9.1.1.3   To the Partners pro rata in accordance with their respective Partnership Interests.

Notwithstanding the foregoing, no distributions may be made to a Limited Partner pursuant to Sections 9.1.1.2 or 9.1.1.3 until the date a Limited Partner has been approved for Removal of Conditional Status through an approved I-829 Petition, or as determined by the General Partner in its sole discretion.

9.1.2   Distributions Following Disposition. Following the disposition by the Partnership of all or any portion of an Investment, the General Partner shall distribute to the Partners in accordance with Section 9.1.1, as soon as practicable, cash available for distribution net of any required tax withholding and any amounts, which, in the opinion of the General Partner, are required to meet the ongoing obligations (whether certain or contingent) of the Partnership, including, without limitation reserves to fund Partnership Expenses. Notwithstanding the foregoing, the Limited Partners who approve an Other Investment pursuant to Section 16.11.2 may elect to have all or any portion of such realization proceeds reinvested by the Partnership in such Other Investment.

9.1.3   Other Distributions. Subject to the provisions of this Section 9, the General Partner may make such other distributions out of the surplus funds of the Partnership, if any, as it determines, in its sole discretion, to be necessary or desirable.

9.1.4   Amounts Withheld. All amounts withheld or required to be withheld pursuant to the Tax Act (including, without limitation, pursuant to Section 1446 thereof) or any provision of any state, local or foreign tax law with respect to any payment, distribution, or allocation to the Partners and treated by the Tax Act (whether or not withheld pursuant to the Tax Act) or any such tax law as amounts payable by or in respect of any Partner or any Person owning an interest, directly or indirectly, in such Partner shall be treated as amounts distributed to the Partner with respect to which such amount was withheld pursuant to this Section 9 or allocated pursuant to Section 8 above for all purposes under this Agreement. The Partnership is authorized to withhold from

distributions or with respect to allocations to the Partners, and to pay over to any federal, state, local or foreign government any amounts required to be so withheld from distributions or with respect to allocations pursuant to the Tax Act (including, without limitation, pursuant to Section 1446 thereof) or any provisions of any other federal, state, local or foreign law. The Partnership is authorized to offset against any distribution to a Partner who is a "foreign person," as that term is defined in Section 1445(f)(3) of the Tax Act, an amount equal to any withholding to be paid by the Partnership on behalf of such Partner pursuant to the Tax Act (including, without limitation, Section 1446 thereof) to reimburse the Partnership for the amount of withholding paid by the Partnership on behalf of such Partner, and such amount shall be treated as having been distributed to such Partner for all purposes under this Agreement.

9.2   Form of Distributions. Except with respect to any distribution to be made in connection with the termination and dissolution of the Partnership, any and all distributions made pursuant to this Section 9 shall be in the form of cash. Upon termination and dissolution of the Partnership pursuant to Section 15, distributions may also include other assets of the Partnership, in respect of which the General Partner will obtain an independent appraisal prior to any such distribution. Distributions upon the liquidation of the Partnership will be made in accordance with the distribution priorities set out in Section 15.3.

9.3   Reinvestment. Proceeds from the disposition of Investments will not be reinvested by the Partnership unless the Limited Partners determine otherwise by Unanimous Resolution.

9.4   No Distributions in Certain Cases. Notwithstanding the foregoing and any other provisions of this Agreement, the Partnership may not, pursuant to the Act, make distributions where such distribution would reduce its assets to an amount insufficient to discharge the liabilities of the Partnership to persons other than the Partners.

## 10   TRANSFER AND ASSIGNMENT OF UNITS

10.1   Transfer and Assignment. Subject to Section 10.2, a Limited Partner may not assign or otherwise transfer its Interest in whole or in part to any person or withdraw any Capital Contribution from the Partnership. In no event will the Partnership register the sale or transfer of any Units except in compliance with the U.S. securities laws as set forth in Section 6.2.1 (reflecting the legend for Unit certificates) including Regulation D and Regulation S promulgated under the Securities Act.

10.2   Transfer by Operation of Law. When a person becomes entitled to a Unit by operation of law, such entitlement will not be recognized or entered in the Register evidencing ownership of the Units until that person (i) has produced evidence satisfactory to the General Partner of such entitlement; and (ii) has acknowledged in writing that such person is bound by the terms of this Agreement.

## 11   REPRESENTATIONS, WARRANTIES AND COVENANTS

11.1   The General Partner represents, warrants and covenants to each Limited Partner that, so long as it is the General Partner, it:

11.1.1   is and will continue to be a limited liability company under the laws of the State of Florida;

11.1.2   is and will continue to be duly registered and qualified to carry on business in each jurisdiction where it is necessary or advisable to be so registered or qualified;

11.1.3   has and will continue to have the capacity and authority to act as the General Partner;

11.1.4   can fulfill its obligations as General Partner without violating the terms of its any agreement to which it is or will be a party or by which it is or will be bound or any law or regulation applicable to it;

11.1.5   will devote as much time as is reasonably required to manage the activities and affairs of the Partnership; and

11.1.6   will not dissolve, wind-up or liquidate its business and affairs as long as it is the General Partner of the Partnership.

11.2   The General Partner further represents and warrants to each Limited Partner that the Partnership was formed, that the Partnership has filed the Certificate of Limited Partnership as a limited partnership under the Act, that such Certificate has not been withdrawn as of the date hereof and that the Partnership continues as a limited partnership under the Act as of the date hereof.

11.3   <u>Survival of Representations and Warranties</u>. The representations and warranties contained in this <u>Section 11</u> shall survive the execution of this Agreement, the Initial Closing and each Subsequent Closing.

## 12   LIABILITIES AND INDEMNIFICATION

12.1   Limitation <u>on Liability</u>.

12.1.1   The General Partner shall be subject to all of the liabilities applicable under the Act; provided, however, that to the fullest extent permitted by law, the General Partner and any of its members, directors, officers, employees, affiliates and agents (each, an "**Indemnified Party**"), shall not be liable to the Partnership or to any Partner for liabilities arising in connection with the Partnership. Notwithstanding the foregoing, such limitation of liability shall not apply where the Indemnified Party is guilty of gross negligence, fraud, bad faith, willful misconduct or a willful material breach of this Agreement. For the purposes of this Agreement, all benefits accruing to an Indemnified Party that is not a party hereto shall be held in trust by the General Partner for such Indemnified Party.

12.1.2   To the extent that, at law or in equity, the General Partner has duties to the Partnership or to another Partner and liabilities relating thereto, the General Partner acting under this Agreement shall not, to the full extent permitted by law, be liable to the Partnership or to any such other Partner for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they expand or restrict the duties and liabilities of the General Partner otherwise existing at law or in equity, are agreed by the Partners to modify to that extent such other duties and liabilities of the General Partner.

12.1.3   The General Partner may consult with legal counsel and accountants selected by it and any act or omission suffered or taken by it on behalf of the Partnership or in furtherance of the interests of the Partnership in good faith in reliance upon and in accordance with the advice of such counsel or accountants shall be full justification for any such act or omission, and the General Partner shall be fully protected and held harmless in so acting or omitting to act provided that such counsel or accountants were selected with reasonable care. The fees and costs associated with any such consultation shall be a Partnership expense.

12.1.4   The General Partner shall be liable for the debts and obligations of the Partnership to the full extent of its assets, but shall, as among the Partners, be entitled to require the prior exhaustion of the Partnership's assets and shall be entitled to the benefits of the indemnities provided herein.

12.2   Indemnification by Partnership.

12.2.1   To the fullest extent permitted by law, the Partnership shall indemnify and hold harmless each of the Indemnified Parties, from and against any and all claims, liabilities, damages, Losses, costs and expenses (including amounts paid by satisfaction of judgments, in compromises and settlements, as fines and penalties and legal or other costs and reasonable expenses of investigating or defending against any claim or alleged claim) of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any Indemnified Party and arise out of or in connection with the affairs of the Partnership, including any mistake in judgment, any act performed or omission made by it, Losses incurred due to mistake, action, inaction or gross negligence of brokers or other agents (assuming that such agents and brokers were selected with due care and such Indemnified Party was responsible for the selection of such agents and brokers), the performance by such Indemnified Party of any of the General Partner's responsibilities hereunder or otherwise in connection with the matters contemplated herein; provided that an Indemnified Party shall be entitled to indemnification hereunder only to the extent that such Indemnified Party acted in good faith and such Indemnified Party's conduct did not constitute fraud, willful misconduct, a material breach of this Agreement or of such Indemnified Party's fiduciary duties to the Partnership, a breach of applicable laws which causes the Partnership to suffer a material adverse economic effect, or gross negligence. The satisfaction of any indemnification and holding harmless pursuant to this <u>Section 12.2.1</u> shall be from and limited to Partnership assets, and no Partner shall have any personal liability on account thereof beyond the amount of its Capital Commitment. The General Partner shall on a regular basis keep the Limited Partners informed of the status of any claims.

12.2.2   The General Partner may, in its sole discretion, have the Partnership purchase insurance as a Partnership expense to insure the Indemnified Parties for any breach or alleged breach of their fiduciary responsibilities; provided that any person entitled to indemnification from the Partnership hereunder shall obtain the written consent of the General Partner (which consent shall not be unreasonably withheld) prior to entering into any compromise or settlement which would result in an obligation of the Partnership to indemnify such person.

12.2.3   Expenses incurred by an Indemnified Party in defense or settlement of any claim that shall be subject to a right of indemnification hereunder shall be advanced by the Partnership prior to the final disposition thereof upon receipt of an undertaking by or on behalf of the Indemnified Party to repay such amount to the extent that it shall be determined ultimately that such Indemnified Party is not entitled to be indemnified hereunder. No advances shall be made by the Partnership under this <u>Section 12.2.3</u> without the prior written approval of the General Partner (which may include the requirement that reasonable security be posted for the repayment).

12.2.4   The right of any Indemnified Party to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which such Indemnified Party may otherwise be entitled by contract or as a matter of law or equity and shall extend to such Indemnified Party's successors, assigns and legal representatives.

12.2.5   Any person entitled to indemnification from the Partnership hereunder shall first seek recovery under any other indemnity or any insurance policies by which such person is indemnified or covered, as the case may be, but only to the extent that the indemnifier with respect to such

-17-

indemnity or the insurer with respect to such insurance policy provides (or acknowledges its obligation to provide) such indemnity or coverage on a timely basis, as the case may be, and, if such person is other than the General Partner, such person shall obtain the written consent of the General Partner prior to entering into any compromise or settlement which would result in an obligation of the Partnership to indemnify such person.

12.2.6   If limited liability of the Limited Partners is lost by reason of an act or omission of the General Partner, the General Partner shall indemnify the Limited Partners against all claims arising from assertions that their respective liabilities are not limited as intended by the agreement as a result of such act or omission. This indemnification will not be available where the loss of liability is caused by an act or omission of the Limited Partner subject to such claims.

12.3   Indemnification by General Partner. Notwithstanding any other provision of this Agreement, the General Partner agrees that it shall indemnify, hold harmless and reimburse out of its assets each Limited Partner from all Losses sustained or incurred in connection with or arising out of the incorrectness of any representation or the breach of any warranty of the General Partner in Section 11.1.

## 13   WITHDRAWAL OF GENERAL PARTNER

13.1   Withdrawal of General Partner; Assignment of Interest. The General Partner may not sell, assign, transfer or otherwise dispose of its Interest, and the General Partner shall not have the right to withdraw from the Partnership, except upon written notice from the General Partner to the Partnership given at least 120 days prior to the proposed effective date of withdrawal. In the event of an assignment or other transfer of all of its Interest as a General Partner of the Partnership in accordance with this Section 13.1, its assignee or transferee shall be substituted in its place as General Partner of the Partnership and immediately thereafter the General Partner shall withdraw as General Partner of the Partnership.

13.2   Transfer to New General Partner. On or before the effective date of the General Partner's withdrawal, the new General Partner will execute a counterpart of this Agreement and will forthwith assume the obligations of the General Partner as of and from the date of its appointment and shall thereafter have the sole right to exercise all rights of the General Partner of the Partnership. The resigning General Partner shall be entitled to all amounts, including allocations of net income or loss and any distributions, to which it is entitled pursuant to this Agreement prior to the effective date of its withdrawal and the new General Partner shall be entitled thereto after such date and to receive the General Partner's share of net income or net loss of the Partnership. The withdrawing General Partner shall do all things and take all steps necessary to effectively transfer the management of the Partnership and all rights to which such new General Partner is entitled hereunder to the new General Partner and shall execute and deliver all deeds, certificates, declarations and other documents necessary or desirable to effect such transfer.

13.3   Indemnification of Former General Partner. In the event of a change of the General Partner, the Partnership and the Limited Partners shall release and hold harmless the former General Partner from all actions, claims, costs, demands, losses, damages and expenses with respect to events which occur in relation to the Partnership after the effective date of withdrawal of the former General Partner, unless such events arise from the fraud, gross negligence or willful misconduct of the General Partner, any of its Affiliates or any of their respective directors, officers, agents or employees or from any act or omission not believed by it in good faith to be within the scope of this Agreement occurring before such change of General Partner or the General Partner has committed a material breach of the terms of this Agreement, breached its fiduciary duty to the

Partnership or an applicable law which causes the Partnership to suffer a material adverse economic effect.

## 14  POWER OF ATTORNEY

14.1  Power of Attorney of General Partner. Each Limited Partner hereby irrevocably makes, constitutes and appoints the General Partner, and any successor to the General Partner under the terms of this Agreement, as its true and lawful attorney and agent, with full power of substitution and authority in the name, place and stead of such Limited Partner to:

14.1.1  execute, swear to, acknowledge, deliver, file and record in the appropriate public offices in any jurisdiction where the General Partner considers it appropriate any and all of:

14.1.1.1  this Agreement and any amendment hereto made in accordance with the terms hereof;

14.1.1.2  any amendment to the Certificate of Limited Partnership and all certificates and other instruments necessary or appropriate to qualify or to continue the qualification of the Partnership as a limited partnership in the State of Florida and in each other jurisdiction where the Partnership may conduct its activities or where such qualification is necessary or desirable to maintain limited liability of Limited Partners in that jurisdiction;

14.1.1.3  all instruments and certificates and any amendment to the Certificate necessary or appropriate to reflect any amendment, change or modification of this Agreement, subject to the terms and restrictions of this Agreement;

14.1.1.4  all conveyances and other instruments and documents necessary to reflect the dissolution and liquidation of the Partnership, subject to the terms and restrictions of this Agreement, including cancellation of any certificate evidencing Units;

14.1.1.5  all instruments relating to the admission of additional or substituted Limited Partners, subject to the terms and restrictions of this Agreement; and

14.1.1.6  all elections, determinations or designations under the Tax Act;

14.1.2  execute and file with any government body any documents necessary and appropriate to be filed in connection with the activities of the Partnership or in connection with this Agreement; and

14.1.3  accept service for process for and on behalf of such Limited Partner at the principal office of the General Partner.

14.2  Binding of Limited Partners. Each Limited Partner will be bound by any deed or action made or taken by the General Partner pursuant to the power of attorney in this Section 14 and waives any and all defenses which may be available to contest, negate or disaffirm any action of the General Partner taken in good faith under such power of attorney.

14.3  Power of Attorney Irrevocable. The power of attorney in this Section 14 shall be irrevocable and is power coupled with an interest and shall bind the Limited Partner, and all heirs, executors, administrators and other legal representatives and the successors and assigns of the Limited Partner, notwithstanding the death or bankruptcy of the Limited Partner. The granting of these powers of attorney shall not terminate any continuing power of attorney previously granted by the Limited Partner and shall not be terminated by the Limited Partner on the execution of a continuing

power of attorney in the future, and the Limited Partner hereby agrees not to take any action in the future which results in the termination of any of these powers of attorney. These powers of attorney shall survive any dissolution or termination of the Partnership.

14.4    Execution of Documents on Behalf of Limited Partner. The General Partner shall have the power to execute documents in the name of all the Limited Partners pursuant to this power of attorney by affixing its signature thereto with the indication that it is acting on behalf of the Limited Partners.

14.5    Compliance by Limited Partners. Each Limited Partner will, on request by the General Partner, immediately execute every certificate or other instrument necessary to comply with any law or regulation of any jurisdiction in the United States for the continuation and good standing of the Partnership or to otherwise carry out the provisions of this Agreement.

## 15    DISSOLUTION

15.1    Termination. The Partnership, shall be terminated and dissolved on the first to occur of the following (the "**Termination Date**"):

15.1.1    The first Business Day of the calendar year following the date on which (i) all Limited Partners have either had the conditional status of their permanent residency removed or their permanent residency revoked and (ii) substantially all of the Partnership's Investments have been returned or written off in accordance with GAAP; or

15.1.2    If the conditions set forth in Section 15.1.1 have not been fulfilled, on December 31, 2025.

15.2    No Dissolution in Certain Events. The Partnership will not be dissolved or terminated by the withdrawal, death, incompetence, bankruptcy, insolvency, dissolution, liquidation, winding-up or receivership of, or the admission or withdrawal of, the General Partner or any Limited Partner.

15.3    Liquidation. Upon termination or dissolution of the Partnership, the Partnership shall be liquidated in an orderly manner in accordance with the provisions of this Agreement and the Act. The General Partner shall act as, or appoint a, liquidating trustee (the "**Liquidating Trustee**") of the Partnership. The Liquidating Trustee shall proceed diligently and expeditiously to liquidate the Partnership and to wind up its affairs and, in doing so, shall dispose of the property of the Partnership on commercially reasonable terms (to the extent the Liquidating Trustee determines such sale or other disposition is commercially desirable), as determined by the Liquidating Trustee in its sole discretion, in kind or by way of cash received on the disposition of property, as follows:

15.3.1    first, to pay and discharge all of the Partnership's debts, obligations and liabilities, including the expenses of its liquidation;

15.3.2    second, to establish any reserves that the Liquidating Trustee may deem necessary or advisable for any contingent or unforeseen debts, obligations or liabilities of the Partnership; and

15.3.3    third, to distribute the balance to the Partners in accordance with the order and priority set forth in Section 9.1.

15.4    No Returns of Capital. No Limited Partner is entitled to any reimbursement of his contribution to the capital of the Partnership except as funds or other property become available for distribution pursuant to Section 15.3 and Section 9.

15.5   No Request for Dissolution by Limited Partners. Except as provided for in this Agreement, no Limited Partner shall have the right to ask for the dissolution of the Partnership, for the winding-up of its affairs or for the distribution of its assets.

15.6   No Termination of Agreement on Dissolution. Notwithstanding the dissolution of the Partnership, this Agreement shall not terminate until the provisions of Section 15.3 hereof shall have been fully performed.

## 16   MEETINGS

16.1   Meetings of Partners. The General Partner may at any time and from time to time call a meeting of the Partners for the purpose of considering any business set out in a Meeting Notice. Upon receipt of a request (a "**Meeting Request**") for a meeting of the Partners, the General Partner shall call such a meeting, provided that the Meeting Request: (i) is made either by the General Partner or by Limited Partners holding in the aggregate not less than 20% of the issued and outstanding Units; and (ii) contains sufficient detail of the business to be considered at the meeting to permit the General Partner to distribute a Meeting Notice in accordance with Section 16.3 and Section 16.4.

16.2   Requisitioned Meetings. If the General Partner fails to call a meeting of Partners within 20 Business Days of receipt of a properly presented Meeting Request, any Limited Partners holding in the aggregate not less than 20% of the issued and outstanding Units may issue a Meeting Notice to call such a meeting to consider any matter of business set out in such Meeting Request.

16.3   Delivery of Notice. For each meeting of the Partners, a notice (a "**Meeting Notice**") of such meeting shall be sent to each of the Partners and the Accountants not less than 21 and not more than 50 days prior to the date of the meeting.

16.4   Contents of Notice. A Meeting Notice shall include the date and time of the meeting, the place of the meeting, and sufficient information to enable each Partner to make a reasoned judgment on each matter of business to be considered at the meeting.

16.5   Place of Meetings. A meeting of the Partners shall be held at a location in Palm Beach Gardens, Florida that is selected by the person that called the meeting.

16.6   Quorum. Limited Partners holding more than 50% of the votes able to be cast at the meeting of the Partners, present in person or by proxy (which must include at least three Limited Partners present in person) shall constitute a quorum for the transaction of any business at a meeting of the Partners. If no quorum is formed within 60 minutes of the date and time the meeting was to commence it shall be adjourned for no less than five and no more than 21 days and whoever attends the next scheduled meeting shall constitute a quorum.

16.7   Chairman. The General Partner shall appoint the chairman of the meeting who shall not carry a casting vote on any matters.

16.8   Voting Rights. On each question submitted to a meeting of Partners, except as expressly provided herein to the contrary, each Limited Partner shall be entitled to one vote for each Unit such Limited Partner holds and the General Partner shall be entitled to one vote. Except as provided in Section 16.11.2, all questions shall be decided by Ordinary Resolution

16.9   Proxies. Each person entitled to vote at a meeting of the Partners may vote by way of proxy, provided that the proxy is received by the General Partner prior to the commencement of the

applicable meeting for the purpose of verification. Any individual may be appointed as a proxy holder, whether or not such individual is a Partner. Each proxy, whether for a specified meeting of the Partners or otherwise, shall be in a form reasonably acceptable to the chairman of the meeting.

16.10 <u>Conduct of Meetings</u>. To the extent that the rules and procedures for the conduct of a meeting of the Partners are not prescribed in this Agreement, such rules and procedures shall be determined by the chairman of the meeting, acting reasonably.

16.11 <u>Resolutions</u>.

16.11.1 Limited Partners may by Ordinary Resolution authorize a material change to the terms of an Investment recommended by the General Partner and take any other action provided for by Ordinary Resolution in this Agreement.

16.11.2 Limited Partners may by Unanimous Resolution approve an Other Investment recommended by the General Partner.

16.12 <u>Effect of Resolutions</u>. A resolution approved or consented to in accordance with this Agreement shall be binding upon each of the Partners and their respective heirs, executors, administrators, successors and permitted assigns.

16.13 <u>Minute Book</u>. All proceedings at a meeting of the Partners shall be recorded by the General Partner in a minute book, which shall be made available for inspection by each Partner during normal business hours.

16.14 <u>Resolution in Lieu of Meeting</u>. A resolution signed by Partners holding the requisite number of Units required to pass a written resolution is as valid and as effective as if it had been passed at a meeting of the Partners called in accordance with this Agreement.

## 17   ACCOUNTING AND REPORTING

17.1 <u>Books of Account</u>. The General Partner shall keep and maintain full, complete and accurate books of account and records of the Partnership with respect to the Partnership's activities and financial affairs at the principal address of the Partnership. Such books of account and records shall be retained by the General Partner for a minimum period of seven years or longer if required by applicable law and shall be made available for review by Limited Partners upon reasonable request.

17.2 <u>Annual Reports</u>. After the end of each Fiscal Year, the General Partner shall send to each person who is a Limited Partner at any time during such Fiscal Year a report summarizing the status of the activities of the Partnership as at the end of the Fiscal Year. The General Partner shall also send therewith a balance sheet, as of the end of such Fiscal Year as well as unaudited statements of income, each Limited Partner's capital account balance, gains and losses and cash flow statement for such Fiscal Year, all of which shall be prepared by the Accountants in accordance with GAAP. On or before the due date (including extensions) of the federal income tax return of the Partnership for each Fiscal Year of the Company, each Partner shall be furnished with such Partner's federal Schedule K-1 for such Fiscal Year and any other tax information reasonably required for state or local tax purposes.

17.3 <u>Other Reports</u>. The General Partner shall send to each Limited Partner such other reports as it shall deem advisable to describe the progress of the Partnership. Notwithstanding the foregoing, the

General Partner shall send to each Limited Partner a copy of any Conversion Notice within fifteen days following its receipt thereof.

## 18  NOTICES

18.1  Notices. Any notice, request or other communication required or permitted to be given hereunder shall be in writing and shall be delivered in person (including by courier) or transmitted by telecopy, shall be deemed to have been given and received on the day on which it was delivered (or, if such day is not a Business Day, on the next following Business Day), and shall be addressed as follows:

18.1.1  if to the General Partner of the Partnership: Harbourside Funding GP, LLC, 11770 US Highway One, Suite 301, Palm Beach Gardens, Florida 33408, Attention: Managing Member, facsimile 561-799-0061.

18.1.2  if to a Limited Partner, to the address or facsimile number of the Limited Partner appearing in the Register.

18.2  Change of Address. A Limited Partner may change its address by giving written notice of such change to the General Partner, and the General Partner may change its address by giving written notice thereof to each Limited Partner.

## 19  GENERAL

19.1  Waiver of Accounting. Except as may be otherwise required by law, each Partner hereby irrevocably waives any and all rights that it may have to maintain an action for an accounting, partition or similar action in connection with the Partnership or any of the Partnership's property.

19.2  Severability. If any provision of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of this Agreement shall not in any way be affected or impaired thereby and this Agreement shall be carried out as nearly as possible in accordance with its original terms and conditions.

19.3  Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, administrators, successors and assigns.

19.4  Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and, all of which when taken together, shall be deemed to constitute one and the same instrument. Counterparts delivered by facsimile shall in all cases be deemed originals. It shall not be necessary in making proof of this Agreement to produce more than one counterpart.

19.5  Entire Agreement. This Agreement and the instruments and documents referred to herein constitute the entire obligation of the parties with respect to the subject matter hereof.

19.6  Amendment.

19.6.1  This Agreement may be amended in writing by the General Partner with the consent of the Limited Partners given by Ordinary Resolution.

-23-

19.6.2   This Agreement may also be amended in writing by the General Partner without prior notice to or consent from any Limited Partner:

19.6.2.1   for the purpose of adding to the Agreement (or amending existing provisions) any provisions which, in the written opinion of counsel to the Partnership, are for the protection of the Limited Partners, and

19.6.2.2   to cure any ambiguity or to correct or supplement any provisions which, in the written opinion of counsel to the Partnership, are defective or inconsistent with any other provision of the Agreement, provided that, in the written opinion of such counsel, the cure, correction or supplemental provision does not and will not adversely affect the interests of any Limited Partner. Notwithstanding any provision of this Agreement, no amendment to this Agreement shall be effective without the prior written approval of the General Partner and, in the event that the proposed amendment will, or is likely to, cause a Limited Partner to suffer an adverse economic effect, the written consent of such Limited Partner.

19.6.3   The General Partner shall notify the Limited Partners of the full details of any amendment to this Agreement within 20 Business Days of the effective date of the amendment.

19.7   <u>Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida and the federal laws of the United States applicable therein (excluding any conflict of laws rule or principle that might refer such construction to the laws of another jurisdiction).

19.8   <u>Confidentiality</u>. Each Limited Partner will maintain the confidentiality of information which is, to the knowledge of such Limited Partner, non-public information furnished by the General Partner regarding the General Partner and the Partnership (including (i) information regarding any person in which the Partnership holds, or contemplates acquiring, any Investment and (ii) the identity of any Limited Partner) received by such Limited Partner pursuant to this Agreement in accordance with such procedures as it applies generally to information of this kind (including procedures relating to information sharing with Affiliates), except (1) to the extent that such information is or becomes generally available to the public other than as a result of disclosure of a Partner, (2) to the extent such information was made or becomes available to a Partner on a non-confidential basis from a source which is not known to the Partner to be subject to any confidentiality obligation with respect to such information, (3) as otherwise required by governmental regulatory agencies, self-regulating bodies, law, legal process (including oral examination), or litigation in which such Limited Partner is a defendant, plaintiff or other named party and (4) as such Limited Partner furnishes to its Affiliates or advisors; provided that such Limited Partner shall be liable to the Partnership and the General Partner for any such Affiliate's or advisor's failure to comply with the terms of this <u>Section 19.8</u>.

19.9   <u>Third Party Beneficiaries</u>. Except as otherwise provided in this Agreement, the parties hereto intend that this Agreement shall not benefit or create any right or cause of action in, or on behalf of, any person, other than the parties to this Agreement and no person, other than the parties to this Agreement, shall be entitled to rely on the provisions of this Agreement in any action, suit, proceeding, hearing or other forum.

19.10   <u>Attornment</u>. Each of the parties agrees that any action or proceeding arising out of or relating to this Agreement may be instituted in any state or federal court seated in Palm Beach County, Florida, waives any objection which it may have now or hereafter to the venue of any such action or proceeding, irrevocably submits to the non-exclusive jurisdiction of such courts in any such

action or proceeding, agrees to be bound by any judgment of such courts and agrees not to seek, and hereby waives, any review of the merits of any such judgment by the courts of any other jurisdiction.

19.11  <u>Time</u>. Time shall be of the essence hereof and no extension or variation of this Agreement shall operate as a waiver of this provision.

19.12  <u>Independent Business of a Partner</u>. Any Partner may engage in and possess any interest in any other business and real estate ventures of every nature and description whatsoever, independently or with other, and neither the Partners nor any Partner hereof shall have any rights in or to any independent venture or income or profits derived therefrom. Except as provided herein, nothing contained in this Agreement shall be construed to constitute any Partner hereof the agent of any other Partner hereof or to limit in any manner the Partners in the carrying on of their own respective business or activities.

19.13  <u>Investment Representations</u> In addition to the representations made by the Limited Partner in the Subscription Agreement with the Partnership, each Limited Partner hereby acknowledges that the Units have not been registered under the Securities Act or any other jurisdiction's securities statute or regulation; and represents, warrants, and agrees such Limited Partner is acquiring each Unit for such Limited Partner's own account for investment only and not for the purpose of, or with a view to, the resale or distribution of all any part thereof, nor with a view to selling or otherwise distributing such Unit or any part thereof at any particular time or under any pre-determined circumstances. Each Limited Partner further represents and warrants that such Limited Partner is a sophisticated investor, able and accustomed to evaluating and accessing financial matters, and that such Limited Partner has a sufficient net worth so that such Limited Partner does not anticipate a need for the funds to be invested, and that such Limited Partner understands investment in Units to be a speculative and illiquid investment. Each Limited Partner further warrants and represents that such Limited Partner is a bona-fide resident of the jurisdiction so referenced in the signature page to this Agreement. Each Limited Partner further warrants and represents that such Limited Partner has been given access to all necessary and relevant information regarding the Partnership.

19.14  <u>Representation of Each Limited Partner</u>. Acknowledging the reliance of the Partnership and General Partner hereon, each Limited Partner represents and warrants that such Limited Partner is an "accredited investor" within the meaning of the Securities Act. Such Limited Partner further represents that such Limited Partner has reviewed the subject investment with such financial, business and tax advisors as such Limited Partner has deemed necessary, and has determined that the investment in Units is suitable in light of the Limited Partner's financial condition and risk preferences; and the Limited Partner has all requisite power and authority to execute this Agreement.

19.15  <u>Additional Documents and Acts</u>. In connection with this Agreement, each Limited Partner agrees to execute and deliver such additional documents and instruments, and to perform such additional acts as may be necessary or appropriate to effectuate, carry out and perform all of the terms, provisions and conditions of this Agreement, and all such transactions.

19.16  <u>English Language Version Controls</u>. This Agreement has been initially written in the English language. In the event of any conflict between the original English version and any translations into other languages, the original English version shall control.

*[Remainder of page intentionally left blank]*

-25-

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first-mentioned above.

HARBOURSIDE FUNDING GP, LLC

By Florida 300 Investments, LLC, its
Managing Member

By
Name: R. Bowen Gillespie
Title: Partner

Name: Donald M. Allison
Original Limited Partner

**Signature Page for Individual (Non-Entity) Limited Partners**

**(For Harbourside Funding, LP Limited Partnership Agreement)**

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first written above.

**LIMITED PARTNER:**

_Fu Lin 傅琳_
[Signature]

_Fu Lin 傅琳_
[Print or Type Name]

_Room1002, NO.35, Lane1203, Yuyuan Road, Changning District_
[Street Address]

_Shanghai, P.R.China.      200050_
[City, Country, Mailing Code]

_86  13922834322_
[Telephone No.]

_86  020  38016036_
[Facsimile No.]

_b13922289@126.com_
[Private E-mail Address]

UNITS PURCHASED: 1

CAPITAL CONTRIBUTION: US$500,000

Date: _March 6, 2012_

-28-