UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 20-80102-CIV-CANNON/Brannon

TINA PENG and LIN FU, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.

NICHOLAS A. MASTROINNI II;
FLORIDA REGIONAL CENTER, LLC, a Delaware
Limited Liability Company; HARBOURSIDE FUNDING
GP, LLC, a Florida Limited Liability Company; and
HARBOURSIDE PLACE, LLC, a Delaware Limited
Liability Company,

      Defendants,

and

HARBOURSIDE FUNDING, LP, a Florida Limited Partnership,

      Nominal Defendant.

_____/

## ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

**THIS CAUSE** comes before the Court upon Defendants' Partial Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("Motion") [ECF No. 84]. The Court has reviewed the Second Amended Complaint [ECF No. 77], Defendants' Motion [ECF No. 84], the Response in Opposition filed by Plaintiffs [ECF No. 88], Defendants' Reply [ECF No. 89], and the full record in this case. The Court also held a hearing on the Motion on April 29, 2021 [ECF No. 95]. For the reasons set forth below, Defendants' Partial Motion to Dismiss [ECF No. 84] is **GRANTED**.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs, Ting Peng ("Peng") and Lin Fu ("Fu") (collectively "Plaintiffs"), initiated this derivative and putative class action in January 2020, on behalf of themselves, other investors ("Putative Class"), and Harbourside Funding, LP ("Funding Partnership") [ECF No. 1].  Plaintiffs then filed a First Amended Complaint ("FAC"), in which they asserted ten counts against Defendants [ECF No. 24].

In October 2020, following Defendants' motion to dismiss the FAC in its entirety [ECF No. 30], Judge Singhal entered an initial Order dismissing with prejudice the following four claims in Plaintiffs' FAC:  (1) Count I (Declaratory Relief by Funding Partnership), (2) Count V (Aiding and Abetting Breach of Fiduciary Duty to Funding Partnership), (3) Count VIII (Conversion), and (4) Count IX (Civil Theft) [ECF No. 54].   As to the aiding and abetting breach of fiduciary duty claim in Count V, Judge Singhal explained that Plaintiffs had not set forth any facts from which a claim of aiding and abetting could be supported:

> The Court agrees with Defendants' assessment that the Amended Complaint alleges no facts that would support a claim of aiding and abetting against the Regional Center and the Developer.  The conclusory statement "[t]he Regional Center and the Developer, with knowledge of Mastroianni and the General Partner's breaches of fiduciary duty, aided and abetted, provided substantial assistance, and encouraged those breaches of duty" (DE [24], ¶¶104) does not present any facts from which a claim for aiding and abetting can be plausibly supported.  Conclusory statements are entitled to little weight and will not prevent dismissal.

[ECF No. 54 p. 13].  Judge Singhal also determined that Plaintiffs' conversion and civil theft claims failed as a matter of law because the allegations did not contain any facts showing that Defendants had engaged in unlawful conduct beyond the underlying breach of contract, such as, for example, embezzling funds for personal uses unrelated to the parties' contract [ECF No. 54 p. 11].

Following Judge Singhal's Order of dismissal, the parties filed cross motions for reconsideration [ECF Nos. 56, 60]. Defendants argued that Judge Singhal should have dismissed Count VI—the other aiding and abetting breach of fiduciary count—for the same reasons Judge Singhal dismissed the other aiding and abetting claim in Count V [ECF No. 56 p. 3]. Plaintiffs, for their part, disagreed with Judge Singhal's dismissal of the conversion and civil theft counts, requesting an opportunity at least to replead those allegations [ECF No. 60 p. 9]. Judge Singhal ultimately granted the competing requests for reconsideration, modifying the initial Order of dismissal as follows: Count VI (aiding and abetting breach of fiduciary duty against Defendants Regional Center and the Developer) was added to the list of counts to be dismissed, but rather than dismiss the subject counts with prejudice, Judge Singhal permitted Plaintiffs an opportunity to amend their claims of aiding and abetting breach of fiduciary duty, conversion, and civil theft [ECF No. 73 p. 2].

In January 2021, Plaintiffs filed the current operative pleading—the Second Amended Complaint ("SAC") [ECF No. 77]. The SAC asserts claims against Defendants Florida Regional Center, LLC ("Regional Center"), Harbourside Place, LLC ("Developer"), Harbourside Funding GP, LLC ("General Partner"), and Nicholas A. Mastroianni, II ("Mastroianni") (collectively "Defendants") [ECF No. 77]. In brief, the SAC alleges that, under the control and direction of Defendant Mastroianni, Defendants engaged in numerous unlawful commercial practices that harmed Plaintiffs, the Funding Partnership, and the Putative Class Members, including by breaching fiduciary duties owed to the Funding Partnership, Plaintiffs, and the Putative Class Members; breaching the parties' EB-5 Loan Agreement; and committing the common law torts of conversion and civil theft [ECF No. 77 ¶¶85, 92, 93, 116, 119].

According to the SAC, the Regional Center was created by Mastroianni in September 2010, and it was approved by the Federal Government to administer the EB-5 Immigrant Investor Visa Program[1] ("EB-5 Program") for Palm Beach County, Florida [ECF No. 77 ¶22].  The SAC alleges that, after obtaining the Federal Government's approval, Mastroianni created the Funding Partnership for the purpose of raising $100 million dollars to fund the construction and development of Harbourside Place, a commercial development in Jupiter, Florida [ECF No. 77 ¶23].  To attract prospective EB-5 investors for the construction of Harbourside Place, the Regional Center circulated advertising materials that indicated the project was guaranteed by a substantial insurance policy [ECF No. 77 ¶24].  Plaintiffs and the 197 Putative Class members each invested $500,000 toward the Harbourside Place project by purchasing membership units in the Funding Partnership through the EB-5 Program, which entitled them to limited partnership rights in the Funding Partnership [ECF No. 77 ¶¶1-2].  These investment funds were then loaned by the Funding Partnership to the Developer pursuant to their EB-5 Loan Agreement to fund the construction and development of Harbourside Place [ECF No. 77 ¶¶1-2].  Defendant Mastroianni owns and controls each of the corporate Defendants in this action, which were the entities involved in managing all aspects of the construction and development of Harbourside Place, including the fiscal administration of the project [ECF No. 77 ¶¶12-15].

Pursuant to the EB-5 Loan Agreement, the Developer was obligated to make monthly interest payments to the Funding Partnership until the loan matured on November 30, 2017, at which point the principal amount on the loan would become due to the Funding Partnership

---

[1] The EB-5 Program provides an avenue for immigrants to become permanent residents of the United States by investing at least $500,000 in a domestic business that uses the funds in an enterprise that creates or maintains at least ten full-time jobs in the United States.  *See* 8 U.S.C. § 1153(b)(5).

[ECF No. 77 ¶¶26-27]. The EB-5 Loan Agreement provides that, if certain conditions are met and Defendants are not in default, the Developer may convert the EB-5 Loan principal to units of common membership interest in the Developer in lieu of repaying the outstanding loan principal to the Funding Partnership [ECF No. 77 ¶28]. As the maturity date approached, Defendants unsuccessfully sought the Putative Class members' consent to extend the loan term and to exercise the conversion clause [ECF No. 77 ¶¶47-48]. Plaintiffs allege that, following their rejection of Defendants' proposal, Defendants unilaterally and without prior approval from the Funding Partnership or the Putative Class members converted the Developer from a Florida Limited Liability Company to a Delaware Limited Liability Company [ECF No. 77 ¶59]. Moreover, in further violation of the EB-5 Loan Agreement, Defendants are alleged to have impermissibly converted the EB-5 loan principal into a single unit of "preferred" membership in the Developer rather than into multiple, individual units of common membership for the Putative Class members [ECF No. 77 ¶62]. Plaintiffs' causes of action contest Defendants' purported refusal to repay the loan principal, Defendants' unilateral decision to convert the Developer to a Delaware LLC, and the conversion of the loan principal into a single unit of preferred membership for all Putative Class Members.

Based on these allegations, Plaintiffs assert the following causes of action against Defendants in the SAC: (1) Declaratory Relief on behalf of Plaintiffs and the Putative Class and against all Defendants (Count I); (2) Breach of Fiduciary Duties owed to the Funding Partnership on behalf of Plaintiffs and the Putative Class and against Mastroianni and the General Partner (Count II); (3) Breach of Fiduciary Duties on behalf of Plaintiffs and the Putative Class and against Mastroianni and the General Partner (Count III); (4) Aiding and Abetting Breaches of Fiduciary Duty on behalf of the Funding Partnership and against the Regional Center and the Developer

(Count IV); (5) Aiding and Abetting Breaches of Fiduciary Duty on behalf of Plaintiffs and the Proposed Class and against the Regional Center and the Developer (Count V); (6) Breach of Contract on behalf of the Funding Partnership and against the Developer (Count VI); (7) Conversion on behalf of Plaintiffs and the Putative Class and against Mastroianni and the Developer (Count VII); (8) Civil Theft on behalf of Plaintiffs and the Putative Class and against Mastroianni and the Developer (Count VIII); and (9) a claim for Accounting on behalf of the Funding Partnership against all Defendants (Count IX) [ECF No. 77 ¶¶79, 85, 92, 99, 104, 116, 119, 124, 129, 132, 140].

## II.   PARTIES' ARGUMENTS ON DEFENDANTS' MOTION TO DISMISS

Defendants move for dismissal only as to Counts IV, V, VII, and VIII in Plaintiffs' SAC under Federal Rule of Civil Procedure 12(b)(6) [ECF No. 84].  Defendants do not seek to dismiss Counts I, II, III, VI and IX.  The Court describes the parties' arguments below.

### A.  Defendants' Arguments on Count IV and Count V (Aiding and Abetting Claims)

Defendants contend that Plaintiffs' claims for aiding and abetting a breach of fiduciary should be dismissed for failing to state the requisite allegations under Florida law in support of those claims [ECF No. 84 p. 10].  Specifically, Defendants contend that the claims for aiding and abetting a breach of fiduciary cannot survive dismissal because they do not contain any allegations demonstrating that the Regional Center and the Developer had knowledge of the underlying breaches of fiduciary duty or that they provided substantial assistance in the commission of those alleged breaches [ECF No. 84 p. 10].  According to Defendants, Plaintiffs merely provide a mechanical recitation of the elements in support of their aiding and abetting claims without providing any kind of factual support as to how the Regional Center and the Developer knew of or assisted in the underlying breaches of fiduciary duty [ECF No. 84 p. 11].  Defendants also argue

that Plaintiffs cannot rely on their veil-piercing theory to assert aiding and abetting claims against the Developer and the Regional Center without first asserting the requisite allegations for these claims [ECF No. 84 p. 13].

**B. Defendants' Argument on Counts VII and VIII (Conversion and Civil Theft Claims)**

Defendants also argue that Plaintiffs' claims for conversion and civil theft both fail as a matter of law because: (1) Plaintiffs did not have an immediate right of possession in the purportedly converted investments funds; (2) a conversion claim cannot be asserted based on a purported failure to honor a contractual obligation; (3) there is no allegation in the SAC that Defendants misappropriated Plaintiffs' and the Putative Class members' funds for personal or fraudulent activities beyond the parties' EB-5 Loan Agreement; and (4) the SAC fails to plead any facts supporting Plaintiffs' criminal intent allegation, which is an essential element of a civil theft claim [ECF No. 84 pp. 14-19].

**C. Plaintiffs' Response in Opposition**

Plaintiffs contend that they have pled sufficient facts in support of their aiding and abetting claims because Defendant Mastroianni is effectively one and the same with the entity Defendants, and because the SAC contains allegations addressing each of the essential elements of an aiding and abetting claim under Florida law [ECF No. 88 pp. 9-10]. As to Plaintiffs' claims for conversion and civil theft, Plaintiffs assert that: (1) they had an immediate right of possession to the funds at issue; (2) the SAC specifies that the EB-5 Loan funds were unlawfully converted for Mastroianni's personal use; (3) the SAC alleges that Mastroianni employed a deceptive scheme to permanently deprive the Putative Class Members and Plaintiffs of the principal loan funds to which they are entitled; and (4) the existence of an underlying contract between the parties does not foreclose conversion and civil theft claims where it is alleged, as here, that a defendant intended

to permanently deprive a plaintiff of his property and acted consciously to evade reimbursing funds owed to a party to the contract at issue [ECF No. 88 pp. 12-13].

## DISCUSSION

### A. Rule 12(b)(6) Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that, "[t]o survive a motion to dismiss[,] a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court generally must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See, e.g.*, *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). A court is ordinarily limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See, e.g.*, *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

1. **Plaintiffs' Aiding and Abetting Breaches of Fiduciary Duty Claims (Count IV and Count V)**

The Court finds that Counts IV and V of the SAC must be dismissed because they are inadequately pled under Florida law, and because Plaintiffs failed to cure the pleading deficiencies that Judge Singhal identified in the initial order of dismissal [ECF No. 54]. "In order to establish a claim for aiding and abetting, the plaintiff must establish that the aider and abettor had knowledge of the underlying breach of fiduciary duty or fraud, and that the aider and abettor substantially assisted or encouraged commission of the breach or fraud." *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012), *aff'd sub nom. Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014) (citing *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 919 (S.D. Fla. 2002), and *Hines v. FiServ, Inc.*, No. 808–CV–2569–T–30AEP, 2010 WL 1249838, at *4 (M.D. Fla. Mar. 25, 2010)). Conclusory statements that a defendant acted with the requisite knowledge are insufficient. *See Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11–60670–CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012) (quoting *Groom v. Bank of Am.*, No. 8:08-CV-2S67-JDW-EAJ, 2012 WL 50250, at *4 (M.D. Fla. Jan. 9, 2012)).

In support of Count IV, Plaintiffs allege that "[t]he Regional Center and the Developer with knowledge of Mastroianni and the General Partner's breaches of fiduciary duty, aided and abetted, provided substantial assistance, and encouraged those breaches of duty" [ECF No. 77 ¶99]. In a similarly conclusory manner, Count V indicates that the Regional Center and the Developer "caused" the Developer to engage in unlawful conduct that harmed Plaintiffs, and that this was done "with knowledge of Mastroianni and the General Partner's breaches of fiduciary duty…." [ECF No. 77 ¶104]. Plaintiffs, however, do not allege how the Regional Center and the Developer provided substantial assistance towards the commission of the underlying breaches of fiduciary duties or how they were purportedly aware of these breaches. Instead, Plaintiffs repeat a recitation

of the elements and argue generally that Defendant Mastroianni's breaches "could not have happened" without knowledge and substantial assistance from the Regional Center and the Developer.  These conclusory allegations are insufficient to state a plausible claim for aiding and abetting under Florida law and therefore must be dismissed for the same reasons they were dismissed in Judge Singhal's initial Order [ECF No. 54 p. 13].  *See Platinum Estates, Inc.*, Case No. 11–60670–CIV, 2012 WL 760791, at *3.

## 2.  Plaintiffs' Conversion and Civil Theft Claims (Count VII and Count VIII)

Plaintiffs' conversion and civil theft claims in Counts VII and VIII also are due to be dismissed for the reason stated by Judge Singhal in the earlier Order [ECF No. 54].  Accepting all of Plaintiffs' allegations as true, the purported conversion asserted in the SAC does not go beyond, or operate independently, from Defendants' alleged breach of the terms of the parties' EB-5 Loan Agreement [*see* ECF No. 54 p. 10].

To assert a claim for conversion under Florida law, a Plaintiff must allege the following elements: "(1) [an] act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Del Monte Fresh Produce Co. v. Dole Food Co*., 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001) (citing *Warshall v. Price*, 629 So.2d 903, 904 (Fla. 4th DCA 1993)). To set forth a viable civil theft claim, a plaintiff must plead the three elements in support of a conversion claim with an additional allegation of criminal intent.  *See Gokalp v. Unsal*, 284 So. 3d 1097, 1098-99 (Fla. 4th DCA 2019).  "[A] mere obligation to pay money may not be enforced by an action for conversion." *Capital Bank v. G & J Investments Corp*., 468 So. 2d 534, 535 (Fla. 3d DCA 1985); *see Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft."); *Neelu*

*Aviation, LLC v. Boca Aircraft Maint., LLC*, No. 18-CV-81445, 2019 WL 3532024, at *8 (S.D. Fla. Aug. 2, 2019) ("[T]he law in Florida is clear—a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft.").  The existence of a contract will not foreclose a conversion or civil theft claim where it is alleged that a defendant has misappropriated funds or property for fraudulent or personal activity that goes beyond just a breach of the underlying contract.  *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1573–74 (S.D. Fla. 1993) ("Where the contract between the parties is entirely irrelevant to the facts surrounding the alleged conversion, or where the contract is merely incidental to the conversion, the contractual relationship between the parties will not except the defendant  from potential liability . . . .") (citing *Nova Flight Ctr., Inc. v. Viega*, 554 So. 2d 626, 627 (Fla. 5th DCA 1989), and *Russo v. Heil Const., Inc.*, 549 So. 2d 676, 677 (Fla. 5th DCA 1989)).

In this case, Plaintiffs' conversion and civil theft claims as pled in Counts VII and VIII do not state a claim for relief under either theory of tort liability.  This is because, as Judge Singhal determined in the initial Order of dismissal [ECF No. 54 pp. 9-10], the allegations in support of those claims arise directly from, and are inherently tied to, the contracts and agreements that form the basis of Plaintiffs' breach of contract claim, and every action complained of by Plaintiffs arises from and is based upon the documents that govern the transaction [ECF No. 54 pp. 10-11].  For example, Count VII alleges that each investor in the Funding Partnership had an immediate possessory right over the principal amount invested following expiration of the loan maturity date, and that Defendant Mastroianni disobeyed direct reimbursement requests by Plaintiffs after this key date [ECF No. 77 ¶¶119, 121-122, 124].  Likewise, Count VII alleges that Mastroianni, in violation of the express terms of the EB-5 Loan Agreement, used his complete control over the Developer and the General Partner "to simply convert the $99,500,000 into a single unit of

'Preferred' membership in the Developer and gave that membership unit to the   Funding Partnership . . . ." [ECF No. 77 ¶123].  These allegations are materially indistinguishable from the allegations of contractual breach lodged against the Developer in Count VI (Breach of Contract on behalf of the Funding Partnership and against the Developer).  Indeed, when the Court asked Plaintiffs' counsel during the hearing to identify which allegations in the SAC establish wrongdoing beyond the breach of the parties' EB-5 Loan Agreement, Plaintiffs' counsel directed the Court to Defendants' failure to honor specific provisions in the parties' contract.  Accordingly, Counts VII and VIII do not go beyond Defendants' failure to comply with the terms of a contract and therefore do not state a claim for conversion or civil theft under Florida law.  *See Gasparini*, 972 So. 2d at 1055 ("[T]he civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract.").[2]

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Partial Motion to Dismiss [ECF No. 84] is **GRANTED**.

2. Counts IV, V, VII and VIII in the Second Amended Complaint are **DISMISSED WITH PREJUDICE**.  Plaintiffs have had three opportunities to plead these claims [ECF Nos. 1, 24, 77].  No additional opportunity to amend is warranted, and in any event, Plaintiffs make no mention of a desire to further amend their allegations.

---

[2] Plaintiffs also allege that Defendants "lawfully obtained possession of the Plaintiff's [sic] funds and thereafter converted the funds for their own use" [ECF No. 77 ¶119].  But the SAC contains no further allegation describing this purported "own use," and Plaintiffs offer no allegations describing how Defendants purportedly used the funds at issue for personal or fraudulent purposes unrelated to the underlying contract.

CASE NO. 20-80102-CIV-CANNON/Brannon

3.  In light of the Court's dismissal with prejudice of the only claims pending against it in Count IV and Count V, the Clerk is directed to **DISMISS FROM THIS ACTION** Defendant Florida Regional Center, LLC.

4.  Plaintiffs shall proceed in this case solely on Counts I, II, III, VI and IX of the Second Amended Complaint.

5.  Defendants shall have fourteen (**14**) days from the date of this Order to file a responsive pleading to the Second Amended Complaint in accordance with this Order.  Fed. R. Civ. P. 15(a)(3).

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 3rd day of May 2021.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**