UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 20-80102-CIV-CANNON/Reinhart

**TINA PENG and LIN FU, on behalf of themselves
and all others similarly situated**,

    Plaintiffs,

v.

**NICHOLAS A. MASTROINNI II;
FLORIDA REGIONAL CENTER, LLC, a Delaware
Limited Liability Company; HARBOURSIDE FUNDING
GP, LLC, a Florida Limited Liability Company; and
HARBOURSIDE PLACE, LLC, a Delaware Limited
Liability Company,**

    Defendants,

and

**HARBOURSIDE FUNDING, LP, a Florida Limited Partnership**,

    Nominal Defendant.

_____/

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

**THIS CAUSE** comes before the Court upon Plaintiffs' Motion for Class Certification ("Motion") [ECF No. 70]. The Court has reviewed the parties' submissions and the relevant portions of the record [ECF Nos. 70, 72, 80, 90, 91, 92, 94, 105, 108]. The Court also held a hearing on the Motion on June 11, 2021 [ECF No. 106]. For the reasons set forth below, Plaintiffs' Motion for Class Certification [ECF Nos. 70] is **GRANTED** with a modification to the class definition proposed by Plaintiffs.

       **I.**       **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiffs, Ting Peng ("Peng") and Lin Fu ("Fu") (collectively "Plaintiffs"), initiated this derivative and putative class action in January 2020, on behalf of themselves, other investors

("Putative Class"), and Harbourside Funding, LP ("Funding Partnership") [ECF No. 1]. In January 2021, Plaintiffs filed the current operative pleading—the Second Amended Complaint ("SAC") [ECF No. 77]. The SAC asserts claims against Defendants Florida Regional Center, LLC ("Regional Center"), Harbourside Place, LLC ("Developer"), Harbourside Funding GP, LLC ("General Partner"), and Nicholas A. Mastroianni, II ("Mastroianni") (collectively "Defendants") [ECF No. 77]. In brief, the SAC alleges that, under the control and direction of Defendant Mastroianni, Defendants engaged in numerous unlawful commercial practices that harmed Plaintiffs, the Funding Partnership, and the Putative Class Members, including by breaching fiduciary duties owed to the Funding Partnership, Plaintiffs, and the Putative Class Members, and breaching the parties' EB-5 Loan Agreement [ECF No. 77 ¶¶85, 92-93, 116].

More specifically, it is alleged that Plaintiffs and the 197 Putative Class members each invested $500,000 toward the Harbourside Place construction project, a commercial development in Jupiter, Florida, by purchasing membership units in the Funding Partnership through the EB-5 Program, which entitled them to limited partnership rights in the Funding Partnership [ECF No. 77 ¶¶1-2]. These investment funds were then loaned by the Funding Partnership to the Developer pursuant to their EB-5 Loan Agreement to fund the construction and development of Harbourside Place [ECF No. 77 ¶¶1-2]. Defendants provided identical EB-5 Loan Agreements and Offering Documents to Plaintiffs and all the Putative Class members [ECF No. 77 ¶25; ECF No. 70 p. 15]. As such, Plaintiff and the Putative Class Members entered into essentially identical agreements with Defendant and were entitled to the same obligations and privileges pursuant to those agreements [ECF No. 70 p. 15]. Defendant Mastroianni owns and controls each of the corporate Defendants in this action, which were the entities involved in managing all aspects of the

construction and development of Harbourside Place, including the fiscal administration of the project [ECF No. 77 ¶¶12-15].

Pursuant to the EB-5 Loan Agreement, the Developer was obligated, among other things, to (1) make monthly interest payments to the Funding Partnership until the loan matured on November 30, 2017 [ECF No. 77 ¶¶26-27]; (2) reimburse the principal amount invested by Plaintiffs and the Putative Class upon the November 30, 2017, maturity date; (3) seek permission from Plaintiffs and the Putative Class prior to exercising a conversion clause in the EB-5 Loan Agreement [ECF No. 77 ¶28]; and (4) retain the same ownership rights for each individual investor in the Limited Partnership [ECF No. 77 ¶62]. Plaintiffs base their causes of action upon Defendants' purported refusal to repay the loan principal, Defendants' unilateral decision to convert the Developer to a Delaware LLC, and the conversion of the loan principal into a single unit of preferred membership for all Putative Class Members—an act which Plaintiffs allege deprived them and the Putative Class members of key ownership rights in the Limited Partnership [ECF No. 77 ¶¶85(a-h), 92(a-f), 93(i-l)].

On May 5, 2021, the Court entered an Order granting Defendants' Partial Motion to Dismiss [ECF No. 96]. The Court's Order dismissed with prejudice Counts IV, V, VII and VIII and instructed Plaintiffs to proceed on the remaining Counts in the SAC [ECF No. 77]. The following counts remain in Plaintiffs' SAC: (1) Declaratory Relief on behalf of Plaintiffs and the Putative Class and against all Defendants (Count I); (2) Breach of Fiduciary Duties owed to the Funding Partnership on behalf of Plaintiffs and the Putative Class and against Mastroianni and the General Partner (Count II); (3) Breach of Fiduciary Duties on behalf of Plaintiffs and the Putative Class and against Mastroianni and the General Partner (Count III); (4) Breach of Contract on behalf of the Funding Partnership and against the Developer (Count VI); and (5) a Claim for Accounting

on behalf of the Funding Partnership against all Defendants (Count IX) [ECF No. 77 ¶¶79-96, 108-117, 139-142].

Plaintiffs purport to bring these various state law claims on behalf of the Limited Partners to recover the funds that were invested in the Harborside Project. Plaintiffs define the Putative Class as follows:

> All persons who invested in the Funding Partnership (i.e., all Limited Partners). Excluded from this Class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees; the Court and its staff; and any Limited Partner who has entered into an enforceable agreement to settle, waive, or otherwise resolve their claims against Defendants.

[ECF No. 77 ¶70]. Plaintiffs have now moved to certify the above class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b), or, alternatively, Rule 23(c)(4) [ECF No. 70 p. 1].

## II. LEGAL STANDARD

A case may proceed as a class action only where all four prerequisites of Rule 23(a) are met and where the requirements of one of Rule 23(b)'s three subsections is satisfied. *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Federal Rule of Civil Procedure 23(a) sets forth the following requirements to certify a class: "'(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality], and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (quoting Fed. R. Civ. P. 23(a)(1-4))). Furthermore, Federal Rule of Civil Procedure 23(b)(3) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When evaluating whether the predomination and superiority elements have been met, a court considers the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D).

District courts possess wide latitude when determining whether to certify a class. *Coon v. Georgia Pac. Corp.*, 829 F.2d 1563, 1566 (11th Cir. 1987). However, a class action may be certified only where a court determines, following a rigorous assessment, that a plaintiff has met Rule 23's requirements. *See Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). A plaintiff seeking class certification bears the burden of establishing Rule 23's requirements. *Heaven*, 118 F.3d at 737. And "a court may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722 (11th Cir. 1987).

### III. DISCUSSION

#### a. Rule 23(a) Requirements

##### 1. Numerosity

Plaintiffs argue that the numerosity component is satisfied because they can identify with certainty the 107 Limited Partners who comprise the Putative Class, and because the proposed Class Members are geographically dispersed throughout the Country, rendering their individual joinder impracticable [ECF No. 70 p. 9].

In opposition, Defendants assert that Plaintiffs' proposed class description is overbroad because it includes Limited Partners who have either (1) entered binding settlement agreements with Defendants to resolve disputes arising from the same form EB-5 Loan Agreement and Offering Documents; (2) currently are involved in state court controversies that arose from the same form EB-5 Loan Agreement and Offering Documents against Defendants; or (3) who have no desire to bring an action against Defendants [ECF No. 90 pp. 12-13]. In addition, Defendants argue that Plaintiffs have failed to satisfy the numerosity requirement because, at most, the Putative Class can consist of 58 members, which is insufficient to show that individual joinder is impracticable [ECF No. 90 p. 13].

Relying on *Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659 (S.D. Fla. 2010), Plaintiffs argue that, even if Defendants' estimation regarding the maximum number of potential class members in this case is accurate, the numerosity requirement still comfortably satisfies Eleventh Circuit case law governing the analysis of the numerosity component. *Id.* at 667 ("As a general rule, a class of less than twenty-one members is inadequate, and a class of more than forty members is adequate.").

Federal Rule of Civil Procedure 23 requires a proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). Moreover, although there is no fixed numerosity rule, generally less than twenty-one proposed class members is inadequate, while more than forty is sufficient. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Plaintiffs' proposed class consists of 107 Limited Partners who purchased units of membership in the Funding Partnership for $500,000 [ECF No. 70 p. 9]. As represented by Plaintiffs, and as largely undisputed by Defendants, these 107 Limited Partners are comprised of immigrant investors who have obtained permanent residence in the United States and are dispersed geographically throughout the United States. Furthermore, a significant number of these proposed class members are either involved in a State Court Action against Defendants based on the same claims at issue in the SAC, *see Chiqian Fu, et al., v. Mastroianni, et al.*, Case No. 50-2018-CA-012883 (the "State Court Action"), or have entered settlement agreements to resolve their dispute with Defendants [ECF No. 92 ¶14 (Sworn Declaration of Nicholas Mastroianni)]. According to Defendants, after considering the Limited Partners who are involved in the State Court Action and those who have settled their claims, Plaintiffs' proposed class can consist of no more than 58 limited partners [ECF No. 92 ¶20].

The fact that numerous Putative Class Members are geographically dispersed throughout the United States militates in favor of a finding that individual jointer is both impractical and uneconomical. Moreover, even accepting Defendants' estimate of 58 maximum potential class members as true, Plaintiffs' proposed class still is presumptively large enough to satisfy the numerosity requirement. *See Priceline.com, Inc.*, 265 F.R.D. at 667; *see also Cox*, 784 F.2d at 1553 (noting that more than forty proposed class members is generally adequate to satisfy numerosity). As such, Plaintiffs have made a sufficient showing of numerosity.

2. **Commonality**

As to commonality, Plaintiffs contend that the Limited Partners share common factual and legal issues that are sufficient to meet the commonality requirement. Among other things, Plaintiffs assert that commonality is satisfied because every class member received a copy of the

offering documents, contributed to the Construction Loan by purchasing a unit of membership in the Funding Partnership for $500,000, and received no notice that the Developer would exercise the conversion clause in the EB-5 loan agreement without their consent [ECF No. 70 p. 10]. In Defendants' view, Plaintiffs have failed to meet the commonality requirement because there are multiple issues and defenses present in this case that are unique to Plaintiffs, including potential liability for attorneys' fees and issues arising from Defendants' Counterclaim [ECF No. 90 p. 19].

To establish commonality, a plaintiff must show that the complaint contains "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement "'does not require that all the questions of law and fact raised by the dispute be common,' or that the common questions of law or fact 'predominate' over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986)). Instead, the claims that are pursued in the case "must simply be those fairly represented by the named plaintiffs." *Cox*, 784 F.2d at 1557. The Eleventh Circuit has described meeting the commonality requirement as a "relatively light burden." *Vega*, 564 F.3d at 1268.

Plaintiffs have met the burden necessary to satisfy the commonality requirement. It is alleged that (1) all members of the proposed class signed the same form Subscription Agreement that is at issue in the SAC [ECF No. 77 ¶25]; (2) Plaintiffs and the Putative Class members all invested $500,000 towards the purchase of membership units in the Funding Partnership [ECF No. 77 ¶2]; and (3) Defendants' actions violated the form Subscription Agreements that were executed by the Limited Partners [ECF No. 77 ¶¶6-7]. Based on these allegations, the SAC raises claims with respect to the interpretation of the Subscription Agreement and related documentation [ECF No. 77 ¶¶79-82], whether Defendants' violated these agreements by exercising the

8

conversion provision of the EB-5 Loan Contract without the Limited Partners' approval [ECF No. 77 ¶81], and whether the Limited Partners were unlawfully deprived of the loan principal they invested in the Harbourside Project [ECF No. 77 ¶117]. Furthermore, all class members are alleged to have suffered the same type of injury, i.e., the deprivation of the loan principal invested towards the Harbourside Project and deprivation of their membership rights in the Developer following Defendants' improper exercise of the EB-5 Loan Agreement Conversion Clause.

While it is true that some Limited Partners consented to the subsequent Ordinary Resolution and some did not [ECF No. 77 ¶44], the Court does not believe that fact undermines a finding of commonality. The Court has reviewed the nature of the subsequent Ordinary Resolution in light of the existing claims in the SAC and concludes that the resolution is not at the heart of the SAC's claims. That resolution sought Limited Partner approval to borrow an additional $60 million in the form of another senior mortgage loan to fund the Harbourside Project [ECF No. 77 ¶43], but the core allegations in the SAC concern violations of the initial loan/subscription agreement—not violations of the interim resolutions. Therefore, common issues of law and fact sufficiently exist between Plaintiffs and the Putative Class Members to satisfy the commonality requirement.

### 3. Typicality

With respect to the typicality requirement, Plaintiffs assert that they share the same common legal injury as the Putative Class Members and seek the same form of relief based on the unlawful commercial conduct alleged in the SAC [ECF No. 70 p. 12]. In Plaintiffs' view, by pursuing their own claims, they are simultaneously advancing the interests of the Putative Class Members as well [ECF No. 70 p. 12].

Defendants counter that Plaintiffs cannot establish the typicality requirement because the following issues are unique to Plaintiffs and supposedly will predominate over the case at the expense of the Putative Class: (1) one of the transactions challenged by Plaintiffs, the 2014 Ordinary Resolution pursuant to which the Partnership approved additional debt, was not agreed to by all Putative Class members; (2) Defendants allege that Plaintiffs made numerous misrepresentations in their Subscription agreement and will be pursuing Counterclaims against Plaintiffs based on these purported misrepresentations; and (3) Plaintiffs potentially will be subject to liability under the fee-shifting provision of the Florida civil theft statute [ECF No. 90 p. 16].

Pursuant to Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Vega*, 564 F.3d at 1275 (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (brackets in original)). Although typicality and commonality are related inquiries, they are distinct because commonality refers to a proposed class's characteristics as a whole, while typicality refers to the individual characteristics of the class representative plaintiffs. *See Vega*, 564 F.3d at 1275. "Like commonality, typicality is not a demanding test." *Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 668 (S.D. Fla. 2010) (citing *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996)).

Plaintiffs' claims are typical of the claims asserted on behalf of the Putative Class. There is no dispute that the Subscription Agreement executed by Plaintiffs is materially identical to the form agreements executed by the Proposed Class. Plaintiffs also seek monetary damages against

Defendants for the same claims and based on the same alleged injuries—the deprivation of the loan principal invested towards the Harbourside Project and deprivation of their membership rights—suffered by the Putative Class. Accordingly, Plaintiffs have shown that their claims are typical of the Putative Class members' claims.

### 4. Adequacy of Representation

Plaintiffs believe they are adequate class representatives because no conflict exists between them and the Putative Class Members, and because they are pursuing the same claims for relief that are being asserted on behalf of the proposed class [ECF No. 70 p. 13]. Plaintiffs also assert that they have retained attorneys who are adequately qualified to serve as class counsel due to their extensive experience and expertise [ECF No. 70 p. 13]. Defendants, on the other hand, believe that Plaintiffs have failed to establish their status as adequate class representatives because Plaintiffs lack basic knowledge about the case and purportedly submitted false sworn declarations in support of their Motion for Class Certification [ECF No. 90 p. 17].

Rule 23(a)'s final requirement is that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement encompasses two factors: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Class certification is inappropriate where substantial conflicts exist among a class. *Id*. Importantly, the existence of minor conflicts will not preclude class certification. *Id*. Only "fundamental" conflicts that relate to specific issues in the case will defeat class certification. *Id*. "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id*. As to the second factor in the adequacy

11

analysis, a class representative plaintiff must show that "that its counsel will vigorously protect the interests of the class." *Priceline.com, Inc.*, 265 F.R.D. at 668.

Defendants have not challenged class counsel's competence to prosecute this action on behalf of Plaintiffs and the Proposed Class. With respect to Defendants' challenge to Plaintiffs' knowledge of the case, courts have rejected similar challenges on grounds that the defendant could not show that a class representative's knowledge of the proceedings was so limited that it prevented him or her from protecting the interest of the class or otherwise rendered the representative at odds with the interests of the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987) ("[W]here the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case."); *Priceline.com, Inc.*, 265 F.R.D. at 669; *Dujanovic v. Mortgage America, Inc.*, 185 F.R.D. 660, 668 (N.D. Ala. 1999) ("[L]ack of specific knowledge about the claims is not grounds for denying certification where the representative's counsel is capable of handling the litigation"); *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 651-52 (S.D.N.Y. 1986).

In this case, Defendants have not shown that Plaintiffs' knowledge or interest in the litigation is so minimal so as to deny certification. As expected of non-attorneys, Plaintiffs' deposition testimony reveals that they do not understand every aspect of these proceedings, but the record evidence does not support a finding that Plaintiffs lack a sufficient understanding of the case. Plaintiff Lin Fu indicated, for example, that she read the motion to dismiss that had been filed by Defendants [ECF No. 91-1 (Lin Fu Dep. 73:4-73:13)], and Plaintiff Ting Peng testified that she was aware that other Limited Partners had initiated a state court case against Defendants

12

[ECF No. 91-2 (Ting Peng Dep. 69:23-70:3)]. With respect to Defendants' argument that inconsistencies in Plaintiffs' sworn declarations and deposition testimony render Plaintiffs unfit to serve as class representatives, the Court has surveyed the full record and concludes that the purported falsehoods in Plaintiffs' submissions to the Court are not sufficient to disqualify them as class representatives.[1]

### b. Rule 23(b)(3) Requirements

#### 1. Predomination of Issues

Plaintiffs also argue that common questions to all Class Members predominate over individual questions because their causes of action are based on the same documents that were circulated to and executed by Plaintiffs and all the Putative Class Members [ECF No. 70 p. 15]. Plaintiffs also add that the legal rights and duties at issue in the SAC are identical between Plaintiffs and the Putative Class [ECF No. 70 pp. 15-16]. As discussed above, Defendants argue that Plaintiffs' multiple individual issues will predominate over this case at the expense of the Putative Class members' interests [ECF No. 90 p. 19].[2]

To support class certification as to the predominance requirement, "there must be common questions of law or fact among the class relating to [] substantive claims, and, in addition, those common questions must predominate such that they 'ha[ve] a direct impact on every class member's effort to establish liability' that is more substantial than the impact of individualized

---

[1] Plaintiffs' counsel attributes the inconsistencies between Plaintiffs' sworn declarations and their deposition testimony to misunderstandings stemming from the language barrier between Counsel and Plaintiffs [ECF No. 94 p. 13]. Although the Court finds that these purported inconsistencies are insufficient to defeat class certification, counsel for Plaintiffs is cautioned to exercise complete diligence to ensure that any language barrier is accounted for and does not result in inaccurate submissions in the Court record.

[2] Defendants' arguments challenging the typicality requirement also relate to the predomination inquiry.

issues in resolving the claim or claims of each class member." *Vega*, 564 F.3d at 1270 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)). A case is not suitable for class certification where class representative plaintiffs must produce a significant amount of individualized proof or arguments to establish the elements of their claims. *See Klay*, 382 F.3d at 1255.

Common issues predominate in this action. As noted, the core focus of Plaintiffs' SAC is the interpretation of the Subscription Agreement and related documentation [ECF No. 77 ¶¶79-82]; whether Defendants' violated these agreements by exercising the conversion provision of the EB-5 Loan Contract without prior approval [ECF No. 77 ¶81]; and whether the Limited Partners unlawfully were deprived of their loan principal [ECF No. 77 ¶117]. These issues are of central importance to the claims brought on behalf of Plaintiffs and the Putative Class Members. Furthermore, Plaintiffs and every class member are alleged to have suffered the same type of injury, i.e., the deprivation of the loan principal invested towards the Harbourside Project and deprivation of their membership rights in the Developer following Defendants' improper exercise of the EB-5 Loan Agreement Conversion Clause.

Despite the identical nature of Plaintiffs' individual claims and the causes of action asserted on behalf of the Putative Class members, Defendants argue that Plaintiffs fail to establish the predominance requirement because of multiple purportedly unique issues. The Court has evaluated those concerns and disagrees.

First, although Defendants are correct that Plaintiffs face a potential award of attorneys' fees under Fla. Stat. 772.11(1) for filing a civil theft claim that possibly lacked a substantial basis in law or fact [*see* ECF No. 103], the record before the Court does not support a finding that such

a possibility will frustrate the predominance inquiry or will otherwise impede the progress of the case.

Second, Defendants challenge predominance on the ground that Plaintiffs made a number of alleged misrepresentations when they executed their subscription agreements, but that again is not a basis to defeat predominance on the claims presented in the SAC. Defendants theory, and the basis of their Counterclaim, is that Plaintiffs misrepresented themselves as knowledgeable investors when they executed their Subscription Agreement; essentially breached the Subscription Agreement as a threshold matter from the beginning; and hence should be dissociated from the Limited Partnership due to those purported misrepresentations [ECF No. 90 pp. 16-17; ECF No. 99 ¶¶35-37, 60-63]. Even assuming that Plaintiffs misrepresented the extent of their knowledge as investors, that alone would not defeat the existence of predominance. Plaintiffs do not advance any claim in the SAC relating to formation issues with the Subscription Agreement. Nor do Plaintiffs allege that the Subscription Agreement was procured through fraud or improper means, or that they were unable to understand or perceive the risks associated with the relevant provisions to which they agreed in the Subscription Agreement. Instead, the SAC is based on Defendants' alleged violation of the terms of the Subscription Agreement by exercising the conversion provision of the EB-5 Loan Contract without the Limited Partners' approval [ECF No. 77 ¶81], and by failing to repay the Limited Partners the loan principal that was invested in the Harbourside Project [ECF No. 77 ¶117].

For these reasons, the Court finds that questions of law or fact common to all Class Members predominate over any questions affecting only individual members.

### 2. Superiority

Finally, Plaintiffs argue that the superiority requirement has been satisfied because, among other things, class certification would promote the preservation of judicial resources, the core liability inquiries arise from the same uniform documents that were entered into by all Putative Class Members, and granting class certification would not hinder the Court's management of this case [ECF No. 70 pp. 17-18]. Defendants disagree, claiming that class certification is an inferior mechanism for adjudicating the claims because the Proposed Class Members are sophisticated and wealthy investors who can protect their own investments through whichever forum suits them best, either by pursuing claims against Defendants in state court or through private negotiations [EFC No. 90 p. 20]. In support, Defendants point to the pending State Court Action and the various settlement agreements entered into by other Limited Partners—the theory being that a majority of the 199 investors already are either pursuing or have pursued their claims in a separate forum and thus class certification is not the superior means of adjudicating the claims in the SAC [ECF No. 92 ¶14 (Sworn Declaration of Nicholas Mastroianni)].[3]

When evaluating the superiority inquiry, courts focus on "'whether there is a better method of handling the controversy than through the class action mechanism.'" *Klay*, 382 F.3d at 1269 (quoting *In re Managed Care Litig.*, 209 F.R.D. 678, 692 (S.D. Fla. 2002)). As such, the most relevant consideration in the superiority analysis is whether class certification would result in case management issues that render the proceedings less fair and efficient than other available forums for adjudicating the class members' claims. *See In re Managed Care Litig.*, 209 F.R.D. at 692. Moreover, whether common issues predominate over all class members' claims "has a tremendous

---

[3] The parties in the State Court Action are presently awaiting a ruling on Defendants' fully briefed Motion to Dismiss Plaintiffs' Two Separate Third Amended Complaints. *See Chiqian Fu, et al., v. Mastroianni, et al.*, Case No. 50-2018-CA-012883, (ECF No. 193).

impact on the superiority analysis of [Rule 23(b)(3)] for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay*, 382 F.3d at 1269.

Plaintiffs have made a sufficient showing that the class mechanism is a superior method of adjudicating the claims in the SAC. The alternatives to class certification—piecemeal state court proceedings or individual negotiations with Defendants—are less efficient than resolving all claims collectively in one action. This case is presently scheduled for trial on February 15, 2022, which, if this case proceeds to that phase, would provide a sufficiently expeditious resolution for Plaintiffs' and the Putative Class Members' claims concerning whether Defendants violated the form Subscription Agreements. In addition, Plaintiffs already have identified the potential class members in this action, who can be easily notified of this case due to their common investment in the Harbourside Project. Although some potential members of the class are presently pursuing their interests in the State Court Action against Defendants, they can adequately protect their interest in those state court proceedings by simply opting out of the federal class, and in any event, Defendants have not supplied any authority for the proposition that the presence of a parallel action is fatal to class certification. *See MacNamara v. City of New York*, 275 F.R.D. 125, 142 (S.D.N.Y. 2011) ("The Court is unpersuaded that the existence of parallel actions by prospective class members defeats a finding of numerosity . . . ."); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 305 (S.D.N.Y. 2003) ("[A]lthough scores of Individual Actions have been filed, the presence of those actions does not militate against class certification."); *Levinson v. Westport Nat'l Bank*, No. 3:09-CV-00269 (PCD), 2011 WL 13235160, at *15 (D. Conn. Dec. 14, 2011) ("Here, the minority of account holders who have brought separate actions that remain pending certainly have an interest in retaining control of their already-commenced cases. But 'they can easily and

adequately protect that interest simply by opting out of the class.'") (quoting *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 672 (S.D. Fla. 2010)).

### 3. Plaintiffs' Class Definition

Although Plaintiffs have met the requirements for class certification in this action, the Court concludes that the Putative Class must be more narrowly defined than the definition proposed by Plaintiffs. Plaintiffs' Class Definition currently states as follows:

> All persons who invested in the Funding Partnership (i.e., all Limited Partners). Excluded from this Class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees; the Court and its staff; and any Limited Partner who has entered into an enforceable agreement to settle, waive, or otherwise resolve their claims against Defendants.

[ECF No. 77 ¶70]. The Court hereby modifies that language as follows:

> All persons who invested in the Funding Partnership (i.e., all Limited Partners). Excluded from this Class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees; the Court and its staff; any Limited Partner who has entered into an agreement to settle, waive, or otherwise resolve their claims against Defendants, whether in the State Court Action or through private resolution, arising from the same underlying subject matter in the instant case.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Class Certification [ECF No. 70] is **GRANTED**.

2. Plaintiffs shall proceed in this case with the modified class definition set forth in this Order.

3. Should circumstances change or new record evidence come to light with respect to the propriety of class certification or the adequacy of the class definition, the parties may move at a later date to decertify or modify the class as defined in this Order. *See generally Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a

certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 25th day of June 2021.

_____
**AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE**