**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 20-80102-CIV-CANNON/Reinhart**

**TING PENG** and **LIN FU**, on behalf of
themselves and all others similarly situated,
and derivatively on behalf of **HARBOURSIDE**
**FUNDING, LP**, a Florida limited partnership,

       Plaintiffs,

v.

**NICHOLAS A. MASTROIANNI II**, **et al.**,

       Defendants,

_____/

**NICHOLAS A. MASTROIANNI II**, **et al.**,

       Counter Plaintiffs,

v.

**TING PENG** and **LIN FU**,

       Counter Defendants,

_____/

## ORDER GRANTING MOTION FOR APPROVAL OF FINAL SETTLEMENT AND ENTERING FINAL JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiffs/Counter Defendants' (hereinafter

"Plaintiffs") Motion for Final Approval of Settlement (the "Motion), filed on May 26, 2023

[ECF No. 275]. The Court granted preliminary approval of class settlement on February 21, 2023,

and set a Fairness Hearing for June 30, 2023 [ECF No. 260]. Fourteen Settlement Class Members

timely filed objections, as did twenty-nine Limited Partners who are not Settlement Class Members

(hereinafter the "Cozen Objectors") [ECF Nos. 272, 277-1–277-15]. Plaintiffs and

Defendants/Counter Plaintiffs (hereinafter "Defendants") filed Responses to the Objections

[ECF Nos. 275-1, 279]. At the Fairness Hearing, counsel for the Cozen Objectors appeared and

presented their argument against approval of the Settlement Agreement [ECF No. 293].   No Settlement Class Members appeared [ECF No. 293].   The Court has considered the Motion [ECF No. 275], the Objections [ECF Nos. 272, 277-1–277-15], the Responses to the Objections [ECF Nos. 275-1, 279], and the oral argument made at the Fairness Hearing [ECF No. 293].   The Court also solicited and received supplemental briefing and evidence on the issue of subject matter jurisdiction [ECF Nos. 303, 305–307].   For the following reasons, the Court **OVERRULES** the objections and **GRANTS** the Motion for Approval of Settlement [ECF No. 275].

## BACKGROUND[1]

This Order assumes a general understanding of the background of this case as described in the Court's prior substantive orders in this heavily litigated and long-running action [ECF Nos. 96, 113, 163].   An abbreviated version of the facts, as relevant to this Order, is included below.

Plaintiffs initiated this derivative and putative class action in January 2020, on behalf of themselves, Harbourside Funding, LP (the "Funding Partnership"), and a class composed of investors (the "Limited Partners") in the Funding Partnership [ECF No. 1].   In January 2021, Plaintiffs filed the current operative complaint, the Second Amended Complaint ("SAC"), bringing the following claims:

- Count I – Declaratory Relief (brought on behalf of Plaintiffs and the Class against Mastroianni, Harbourside Funding GP, LLC (the "General Partner"), and Harbourside Place, LLC (the "Developer");

- Count II – Breach of Fiduciary Duties Owed to the Funding Partnership (brought on behalf of Plaintiffs and the Class against Mastroianni and the General Partner);

- Count III – Breach of Fiduciary Duty Owed to Plaintiffs and the Proposed Class (brought on behalf of Plaintiffs and the Class against Mastroianni and the General Partner);

- Count IV – Aiding and Abetting Breach of Fiduciary Duty to the Funding Partnership (brought derivatively on behalf of the Funding Partnership against Florida Regional Center,

---

[1] The facts in this section are drawn from undisputed facts in the summary judgment record [ECF Nos. 138-1, 138-6, 139–140].

LLC ("Regional Center") and the Developer);

- <u>Count V</u> – Aiding and Abetting Breach of Fiduciary Duty to Plaintiffs and the Class (brought by Plaintiffs and the Class against Regional Center and the Developer);

- <u>Count VI</u> – Breach of Contract (brought derivatively on behalf of the Funding Partnership against the Developer);

- <u>Count VII</u> – Conversion (brought on behalf of Plaintiffs and the Class against Mastroianni and the Developer);

- <u>Count VIII</u> – Civil Theft (brought on behalf of Plaintiffs and the Class against Mastroianni and the Developer); and

- <u>Count IX</u> – Accounting (brought derivatively on behalf of the Funding Partnership against Mastroianni, the General Partner, and the Developer).

[ECF No. 77 ¶¶ 79–142].

The claims in the SAC arise out of Plaintiffs' and the Limited Partners' investment in the development of Harbourside Place—a mixed-use commercial development located in Jupiter, Florida—through the federal EB-5 Immigrant Investor Visa Program (the "EB-5 Program") [ECF No. 77 ¶¶ 18–32]. Congress created the EB-5 Program in 1990. Under its terms, foreign investors are given the opportunity to obtain lawful permanent residence in the United States if they make an "at-risk" investment of a minimum of $500,000 into a new commercial enterprise in the United States and if that investment results in the creation or maintenance of at least ten-full time jobs in the United States for American citizens. *See, e.g.*, 8 U.S.C. § 1153(b)(5).

In or about 2010, Mastroianni created the Funding Partnership, the General Partner, the Developer, and the Regional Center as the appropriate business entities required to properly conduct EB-5 Program Business [ECF No. 140 ¶ 10]. Mastroianni established the Funding Partnership as an investment and funding vehicle for the Developer of Harbourside Place [ECF No. 140 ¶ 11]. Each investor was required to pay $500,000 to purchase a member unit into the Funding Partnership, thereby becoming a Limited Partner, and an additional $40,000 for

administration costs [ECF No. 138-1 ¶ 5].   These funds were then loaned by the Funding

Partnership to the Developer [ECF No. 140 ¶ 12; ECF No. 138-1 ¶ 7].   In total, 199 foreign

investors became Limited Partners in the Funding Partnership, yielding a $99,500,000 loan to the

Developer for the purpose of building Harbourside Place [ECF No. 138-1 ¶ 16].   Plaintiffs initiated

this lawsuit after Defendants purportedly refused to repay the loan principal at maturity in

accordance with the terms of the various agreements that Plaintiffs and every Limited Partner

signed with Defendants [ECF No. 77 ¶¶ 85(a-h), 92(a-f), 93 (i-l)].

In June 2021, the Court granted class certification, and on October 18, 2021, the Court

approved Plaintiffs' Amended Class Notice [ECF Nos. 113, 124-2, 126].   The Amended Class

Notice included instructions for Limited Partners who wished to opt out of the Class but warned

that any Limited Partner who decided to opt out "[would] not receive any money or benefits from

this Lawsuit if Plaintiffs prevail at trial or negotiate a settlement agreement (which may or may

not be reached) with Defendants" [ECF No. 124-2 pp. 8–9].   On December 23, 2021, Plaintiffs

filed a Notice on the docket indicating which Limited Partners had decided to opt out of the Class

[ECF No. 142].   The Cozen Objectors were among those individuals who decided to opt out

[ECF No. 142].   The Cozen Objectors made the decision to opt out because they had already

commenced another lawsuit against Defendants and others in Florida State Court in October 2018

based on the same underlying allegations (the "State Court Action") [ECF No. 278 p. 7;

ECF No. 273-1].   *See generally Fu et al v. Mastroianni et al*, Case No. 50-2018-CA-012883 (Fla.

Palm Beach County Ct.).   As relevant here, the operative pleading in the still-pending State Court

Action (the Fourth Amended Complaint) alleges derivative claims—Counts XV and XVI—that

are materially identical to Counts II and VI of the instant litigation.   *See* State Court Action, Docket

Entry 414 ¶¶ 352–384; *see also* [ECF No. 273-9 ¶¶ 352–384].

By the time trial in this action was set to commence on July 12, 2022, only Counts II, III,

and VI of Plaintiffs' SAC remained.[2]  There also remained five counterclaims asserted by Defendants against Plaintiffs for trial [ECF No. 99, 163].  As relevant to the Cozen Objectors' objections, and discussed in more detail below, the only claim in the SAC against the Developer that was left for trial was Count VI, a derivative breach of contract claim brought on behalf of the Funding Partnership.  Thus, at the time trial was set to commence, Plaintiffs did not have any direct claims against the Developer that had not been previously dismissed by Court order.

On the first day of trial, the parties informed the Court that they had reached a settlement agreement resolving all claims and counterclaims (the "First Settlement Agreement") [ECF Nos. 208, 209].  The First Settlement Agreement ultimately failed to come to fruition, leading the Court to reset the case for a bench trial commencing on January 10, 2023 [ECF Nos. 222, 225].  At a status conference hearing on January 4, 2023, the parties advised the Court that they had executed a settlement agreement (the "Second Settlement Agreement") [ECF Nos. 237–238, 240].  The Court thus instructed the parties to file a Motion for Preliminary Approval of Class Settlement by January 9, 2023 [ECF No. 240].  The parties complied [ECF No. 246].  After a hearing, the Court denied the Motion for Preliminary Approval without prejudice for the purpose of amending certain non-substantive, administrative concerns with the notice and objection process [ECF No. 257].  Plaintiffs and Defendants then filed a renewed Motion for Preliminary Approval addressing those administrative concerns [ECF No. 258], after which the Court entered an order preliminarily approving the Second Settlement Agreement [ECF No. 260].[3]

---

[2] The Court dismissed Counts I, IV, V, VII, VIII, and IX at the Motion to Dismiss and/or Summary Judgment stages [ECF Nos. 96, 163].

[3] The Court initially permitted the parties to redact the economic terms of the Second Settlement Agreement so as to not disadvantage Defendants in the State Court Action [ECF Nos. 239, 242]. At the Hearing on the Cozen Objectors' Motion to Intervene, both Defendants and Plaintiffs agreed to lift the seal on those economic portions of the Second Settlement Agreement [ECF No. 291 p. 23].  Defendants subsequently filed a fully unredacted version of the Second Settlement Agreement on the public docket [ECF Nos. 289, 289-1].

In its Order granting preliminary approval, the Court set a Fairness Hearing for June 30, 2023 [ECF No. 260 p. 8].  Fourteen Settlement Class Members and the Cozen Objectors timely filed objections with the Notice Administrator by April 24, 2023 [ECF No. 277-1–277-15].  After filing their objections, less than one month before the Fairness Hearing, and over seventeen months after the Cozen Objectors knew of their interest in this case, the Cozen Objectors moved to intervene for the purpose of objecting to the Settlement Agreement and taking over the derivative claims [ECF No. 278].  The Court held a hearing on the Motion to Intervene and denied it as untimely under Rule 24 of the Federal Rules of Civil Procedure [ECF Nos. 291–92].[4]  Counsel for the Cozen Objectors ultimately appeared at the Fairness Hearing and presented their clients' objections [ECF No. 293].  None of the Settlement Class Members appeared at the Fairness Hearing.  The Motion for Final Approval of Class Settlement is ripe for adjudication.

## LEGAL STANDARDS

Under Rule 23(e), "[t]he claims, issues, or defense of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e). Under Rule 23(e)(2), "[i]f the proposal would bind the class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In determining whether a settlement agreement is fair, reasonable, and adequate, the court must consider whether:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)  the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class,

---

[4] The Cozen Objectors since have appealed the Court's order denying their Motion to Intervene [ECF No. 304].

including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).  A settlement should be approved so long as it is fair, reasonable, adequate, and not the product of collusion.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Under Rule 23.1(c), "[a] derivative action may be settled, voluntary dismissed, or compromised only with the court's approval."  Fed R. Civ. P. 23.1(c).  And under Rule 23.1(a), "[a] derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."  Fed. R. Civ. P. 23.1(a).

## DISCUSSION

The broad issue before the Court is whether the Second Settlement Agreement [ECF No. 289-1 pp. 2–42] is fair, reasonable, and adequate under Rule 23(e)(2).  Key to this inquiry are the objections raised by fourteen Settlement Class Members and by the twenty-nine Cozen Objectors.  Before considering the merits of the objections, however, and in light of the Cozen Objectors' challenge to this Court's jurisdiction, the Court first addresses its subject matter jurisdiction over this action [ECF No. 277-15 pp. 14–15].  After determining that the Court has original jurisdiction under the Class Action Fairness Act ("CAFA") over the class claims in this action and supplemental jurisdiction over the derivative claims, the Court turns to the merits of the objections.  Having done so, and upon full review of the Objections [ECF Nos. 277-1–277-15], the Parties' Responses to the Objections [ECF Nos. 275-1, 279], the arguments made at the Fairness Hearing from all parties and the Cozen Objectors [ECF No. 293], the Motion for Final

Approval of Class Settlement [ECF No. 275], and the terms of the Second Settlement Agreement [ECF No. 289-1 pp. 2–42], the Court determines that the Second Settlement Agreement is fair, reasonable and adequate.

## I.      Subject Matter Jurisdiction

The Cozen Objectors argue that the SAC incorrectly asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the Funding Partnership is a citizen of every state in which any of its partners is a citizen—thus precluding complete diversity in this case regardless of whether the Funding Partnership is considered a defendant or a plaintiff [ECF No. 277-15 p. 14]. The Cozen Objectors also acknowledge, however, that "the Court might have subject matter jurisdiction over the individual class claims . . . pursuant to the Class Action Fairness Act" [ECF No. 277-15 p. 15]. They also admit that if the Court has subject matter jurisdiction over the class claims under CAFA, "the Court might have supplemental jurisdiction over the derivative claims, pursuant to 28 U.S.C. § 1367(a)" [ECF No. 277-15]. Based on these arguments, the Court ordered supplemental briefing on the issue of subject matter jurisdiction [ECF No. 303]. The parties timely filed supplemental briefs and supporting evidence [ECF Nos. 305–307]. Upon review, the Court determines that it has subject matter jurisdiction over the class claims in the SAC under CAFA and supplemental jurisdiction over the derivative claims under 28 U.S.C. § 1367(a).

Under CAFA, district courts have original jurisdiction over any civil action in which the amount in controversy exceeds $5,000,000; any member of a class of plaintiffs is a citizen of a different State or foreign State than any Defendant; and the number of the proposed class is at least 100.  28 U.S.C. § 1332(d)(2), (5).  All three requirements are present in this case.  As the supplemental briefings and supporting affidavits make clear, at the time this case was initiated, the proposed class was composed of 199 Limited Partners [ECF No. 307 p. 5].  Additionally, as the

Sandy Albanese Affidavit provided by Defendants establishes, there were 143 Limited Partners who had not yet entered into a Settlement Agreement at the time the action was filed [ECF No. 306 ¶ 3]. Thus, the numerosity requirement of CAFA is satisfied. The affidavits provided by Plaintiffs also establish that Plaintiff Peng is a citizen of Washington, and that Plaintiff Fu is a citizen of New Jersey [ECF No. 307-2 ¶ 3; ECF No. 307-5 ¶ 3]. The Sandy Albanese Affidavit also establishes that Defendant Mastroianni is a citizen of Florida [ECF No. 306 ¶ 5]. Accordingly, the minimal diversity requirement of CAFA is met because there is at least one member of the class who is a citizen of a different state than one defendant. Furthermore, the amount in controversy easily exceeds $5,000,000, because this lawsuit sought damages greater than $99,500,000 (199 Limited Partners x $500,000 initial investment = $99,500,000). In sum, all requirements for the Court to exercise original jurisdiction under CAFA are present. And, because the derivative claims arise out of the same operative facts as the class claims, the Court has supplemental jurisdiction over those claims. 28 U.S.C. § 1367(a). The Court has subject matter jurisdiction over all claims in the SAC.

## II.     Relevant Terms of Second Settlement Agreement[5]

The monetary terms of the Settlement Agreement call for Settlement Class Members to receive the total principal sum of $335,000 minus each Settlement Class Members' share of attorneys' fees and costs [ECF No. 289-1 p. 10]. Settlement Class Members will receive an initial payment of $170,000 and three successive annual installment payments of $55,000, minus Attorneys' Fees and Costs [ECF No. 289-1 pp. 10–11]. Plaintiffs' Motion for Attorneys' Fees requests the Court to grant Plaintiffs' counsel 25% of all distributed funds to Settlement Class Members [ECF Nos. 264, 269]. Under the terms of the Settlement Agreement, Plaintiffs' counsel

---

[5] This section of the Order addresses the terms that are the subject of the Settlement Class Members' and the Cozen Objectors' objections.

would be paid within fifteen days of each payment made to Settlement Class Members [ECF No. 289-1 p. 26]. The net result of a 25% Attorneys' Fees award would result in Settlement Class Members receiving $127,500 as an initial payment and $41,250 in successive annual installments for three years thereafter.

At bottom, each Settlement Class Member would directly receive $251,250 because of the Second Settlement Agreement. Plaintiffs' counsel would receive $42,500 per Settlement Class Member as an initial payment and an additional $13,750 in successive annual installments for three years thereafter per Settlement Class Member. As confirmed at the Fairness Hearing [ECF No. 293], with there being sixty Settlement Class Members, the terms of the Second Settlement Agreement will result in Settlement Class Members getting $15,075,000 directly in their pockets and Plaintiffs' counsel receiving $5,025,000. This represents a total value of $20,100,000 to Settlement Class Members. The Developer, the General Partner, and Mastroianni or their respective designees, are responsible for making payments to the Settlement Class Members [ECF No. 289-1 pp. 6, 8–9]. Additionally, a third-party Guarantor, HSP-NM-Credit Entity, LLC (hereinafter "HSP-NM"), has guaranteed timely payment of the initial payment and the installment payments [ECF No. 289-1 p. 11]. Upon payment of the initial $170,000, Settlement Class Members will transfer their membership in the Funding Partnership to HSP-NM [ECF No. 289-1 p. 12]

The Second Settlement Agreement does not provide any direct payment to the Funding Partnership or any Limited Partner who opted out of the Class [*see* ECF No. 289-1]. The Second Settlement Agreement does, however, explicitly make clear that it does not affect the rights of any party who is not a Settlement Class Member, adding that other Limited Partners, including the Cozen Objectors, may pursue any direct claims on their own behalf or derivative claims on behalf of the Funding Partnership against Defendants [ECF No. 289-1 p. 4 ("Whereas, it is agreed and

acknowledged that this Settlement Agreement shall not be deemed or construed to affect any arguments, claims or rights of non-Class Members, whether direct or derivative.")].  The Release and Waiver Section of the Second Settlement Agreement further establishes that Limited Partners who are not Settlement Class Members may continue to pursue any direct or derivative claims [ECF No. 289-1 p. 23 ("Notwithstanding the foregoing, neither the Release, the dismissal of claims asserted on behalf of the Funding Partnership, nor any other provision of the Settlement Agreement is intended to preclude valid claims or causes of action asserted by members of the Funding Partnership who are not Settlement Class Members.")].  As explained by the Parties, the inclusion of this language—hereinafter the "Carve Out Provisions"—is intended to allow the Settlement Class Members to resolve all claims in the SAC, including derivative claims, with respect to Settlement Class Members only while protecting the rights of Limited Partners who are not Settlement Class Members [ECF Nos. 275-1 p. 18; ECF No. 279 p. 12].  These Carve Out Provisions allow Limited Partners who are not Settlement Class Members to continue pursuing any direct and derivative claims they may have, including Counts XV and XVI of the Cozen Objectors' Fourth Amended Complaint in the State Court Action [ECF No. 293].  In effect, the Carve Out Provisions allow the Parties to dismiss all claims in the SAC with prejudice, including derivative claims brought on behalf of the Funding Partnership, with respect to the Settlement Class Members only.  This prevents Settlement Class Members from filing a new derivative lawsuit after the Settlement Agreement is executed while allowing derivative claims of non-Settlement Class Members to proceed.

### III.    Settlement Class Members' Objections

Fourteen Settlement Class Members raise the same three objections to the Second

Settlement Agreement [ECF No. 277-1–277-14].[6]  First, they take issue with the fact that they invested $500,000 into the Funding Partnership but "can only receive $251,250 (after legal fees are deducted) spanning over four years" pursuant to the terms of the Second Settlement Agreement [ECF No. 277-1 p. 2; ECF No. 298-1 p. 2].  However, "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D., 534, 542 (S.D. Fla. 1988), *aff'd sub nom.*, 899 F.2d 21 (11th Cir. 1990).  Courts in this district have approved settlement agreements where the recovery "represents approximately ten (10%) of the most probable aggregate damages that Class Counsel believes could have been recovered on behalf of the Settlement Class if the Action were successful in all respects."  *Gevaerts v. TD Bank*, No. 14-CV-20744, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015).  Here, Settlement Class Members will receive 67% of their investment back in monetary benefits, with 50.25% of their initial investment going directly to Settlement Class Members after they pay their share of the proposed attorneys' fees.  Also worth noting, six Class Members who individually resolved their claims against Defendants prior to the Parties agreeing to the Second Settlement Agreement received less than the $335,000 in monetary benefits that Settlement Class Members are set to receive [ECF No. 264 p. 5 (noting that four Class Members settled for a lump sum payment of $200,000 each, and two others settled for $325,000 in four installments over the course of three years)].  Given the risk of Plaintiffs' not succeeding at trial in this hotly contested case, the recovery achieved by Class members' who settled prior to class settlement, and the costs inherent with any appeals or delays, the Court determines that the monetary terms are fair, reasonable, and adequate and overrules the fourteen Settlement Class Members' first objection.

---

[6] Thirteen of the Settlement Class Members utilized the same template in raising their objections [ECF No. 277-1–277-13; ECF No. 298-1–298-13] while the fourteenth raised the same concerns as the other thirteen [ECF No. 277-14; ECF No. 298-14].

The second objection lodged by the fourteen Settlement Class Members is that they do not want to pay any attorneys' fees out of their recovery [ECF No. 277-1 p. 3]. The Supreme Court "has recognized consistently [, however,] that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) (collecting cases). This "doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Id.* (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1975). Accordingly, requiring Settlement Class Members to pay a reasonable attorneys' fee of 25% out of their recovery is not, at least on this record, a valid basis for denying approval of the Second Settlement Agreement. The Court overrules this objection.

Finally, the fourteen Settlement Class Members assert that "the plaintiff's attorneys had never informed [objectors] of [the Second Settlement Agreement's] contents or sought their opinions" prior to the Notice Administrator distributing notice of class settlement [ECF No. 277-1 p. 2]. They assert that "[t]his deprived the plaintiff of their right to be informed and share their views before the settlement agreement was reached" [ECF No. 277-1 p. 2]. As Plaintiffs point out, this argument is baseless, because Rule 23(e)(1) requires the parties to submit a proposed settlement to the Court for preliminary approval prior to distributing notice of the settlement agreement to all class members [ECF No. 275-1]. *See* Fed. R. Civ. P. 23(e)(1). The Court is aware of no authority that requires Class Counsel to confer with every class member prior to submitting a settlement agreement for preliminary approval. The objection process allows class members to voice their concerns prior to final approval, and the fourteen Settlement Class Members who objected have exercised that right [ECF No. 277-1–277-13; ECF No. 298-1–298-13]. The Court overrules the Settlement Class Members' third objection.

**III.    Cozen Objectors' Objections**

A.    *Standing*

The Court now turns to assess the Cozen Objections.  As an initial matter, the Court must first determine whether the Cozen Objectors have standing to raise objections to the Settlement Agreement.  As discussed at the Fairness Hearing, all parties agree that as Limited Partners in the Funding Partnership, the Cozen Objectors have standing to raise objections on behalf of the Funding Partnership under Rule 23.1 of the Federal Rules of Civil Procedure [ECF No. 293]. Because the Cozen Objectors opted out of the Class [ECF No. 142], however, they lack standing to raise objections on their own behalf.  *See Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 473 (S.D. Fla. 2002) ("Under Fed. R. Civ. P. 23(e), non-class members are not permitted to assert objection to a class action settlement." (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals.")).

A review of the Cozen Objections reveals that, while they purport to raise objections on behalf of the Funding Partnership, at bottom they really attack the fact that none of them will receive any payment from the Second Settlement Agreement.  For example, although the Cozen Objectors assert that any payment must be made to the Funding Partnership and not individual Settlement Class Members, they admitted at the Fairness Hearing that the goal of this lawsuit and the State Court Action is for the Limited Partners to recover their investment into the Funding Partnership [ECF No. 293].  This motivation is borne out by the Cozen Objectors' correspondence with Plaintiffs' counsel prior to the parties agreeing on the Second Settlement Agreement.  In July 2022, counsel for the Cozen Objectors sent a letter to Plaintiffs' counsel demanding that any settlement agreement that provided payment directly to Class Members also include payment to the Funding Partnership equal to 199 times the individual payments [ECF No. 275-2 pp. 270–72].

14

The letter advised that the Cozen Objectors would not object to any settlement agreement as long as this payment was made [ECF No. 275-2 pp. 271–72].  As discussed at the Fairness Hearing, the Cozen Objectors agreed that any payment to the Funding Partnership would subsequently be distributed pro rata to every Limited Partner [ECF No. 293].  Thus, the demand for a payment equal to 199 times any individual payment, as opposed to demanding any settlement payment be made to the Funding Partnership, highlights the fact that the Cozen Objectors are attempting to maximize their own individual recovery—not the Funding Partnership's recovery.

Based on the foregoing, it is hard for the Court to come to any conclusion other than the Cozen Objectors are objecting on their own personal behalf as opposed to raising objections on behalf of the Funding Partnership.  Because the Cozen Objectors opted out of the class, they lack standing to bring objections in such an individual capacity.  Nevertheless, for the sake of thoroughness, and assuming that at least one of their objections is validly brought on behalf of the Funding Partnership, the Court will address each of the Cozen Objectors' objections.  All fail on their merits.

B.    *First Objection*

The Cozen Objectors first object to the Second Settlement Agreement on the grounds that the Developer should not be liable for any payments to the Settlement Class Members [ECF No. 277-15 pp. 8–11].  They make this argument for two reasons.  First, they assert that, "[a]s of the date of the [Second] Settlement Agreement, the class members were <u>not</u> asserting any direct claims against [the Developer]" and instead were only "asserting a derivative breach of contract claim (Count VI) on behalf of the Funding Partnership against [the Developer]" [ECF No. 277-15 pp. 8–9].  Thus, they cite to Section 620.2005 of the Florida Statutes and *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125 (11th Cir. 2020), for the proposition that any payment by the Developer must be made to the Funding Partnership and not the Settlement Class Members

[ECF No. 277-15 p. 9].  Section 620.2005 states that "any proceeds or other benefits of a derivative action, whether by judgment, compromise, or settlement, belong to the limited partnership and not to the derivative plaintiff."  Fla. Stat. § 620.2005(1)(a).  And in *Freedman*, the Eleventh Circuit held that "any recovery . . . would necessarily be for the benefit of magicJack [the company] and its shareholders," because "each form of requested relief sought by Freedman is derivative in nature, and Freedman's claim is a derivative claim."  *Freedman*, 963 F.3d at 1138.

As both Plaintiffs and Defendants point out, however, the problem with the Cozen Objectors' reliance on Section 620.2005 and *Freedman* is the fact that Plaintiffs did not just assert derivative claims against the Developer [ECF Nos. 275-1 pp. 20–21, 279 p. 12].  Indeed, Plaintiffs asserted direct claims against the Developer in the SAC (Counts I, V, VII, and VIII) [ECF No. 77 ¶¶ 79–82, 102–107, 118–138]; and although the Court dismissed these claims at the Motion to Dismiss and Summary Judgment stages, Plaintiffs could appeal those orders whether or not they prevailed at trial [ECF Nos. 275-1 p. 21 n.8; ECF No. 279 p. 12].  Thus, there was still a risk that the Developer could be directly liable to the Settlement Class Members and not just the Funding Partnership at the time the Second Settlement Agreement was executed.  Because the Second Settlement Agreement resolves all claims that the Settlement Class Members had against Defendants, including the previously dismissed direct claims against the Developer, it is appropriate for the Developer to make payments directly to the Settlement Class Members.

The Cozen Objectors also assert that any payment made by the Developer is improper and will hurt the Funding Partnership because "the Funding Partnership's primary asset is its preferred equity interest in [the Developer]," and therefore, "[any] payment will decrease the value of the Funding Partnership's assets by that same amount" [ECF No. 277-15 p. 10].  As an initial matter, it is entirely speculative whether the Developer will make any settlement payments.  Indeed, the terms of the Second Settlement Agreement calls for all Defendants or their designees to be

responsible for the payments and does not place the burden on the Developer alone [ECF No. 289-1 p. 10]. Further, a third party, HSP-NM, is the ultimate party responsible for the payments as it has agreed to be a guarantor of the payments [ECF No. 289-1 p. 11]. The Cozen Objectors have not offered any evidence to show that the Developer will be the party making payments to Settlement Class Members. Furthermore, and more fundamentally, it is undisputed that Defendant Mastroianni owns and controls both the Developer and the General Partner [ECF No. 138-1 ¶ 1]. The Cozen Objectors have not offered any argument or legal authority that would lead this Court to conclude that Mastroianni would be barred from making settlement payments utilizing his assets. Because it is entirely speculative as to whether the Developer will in fact make any payments, and because the Cozen Objectors have failed to raise an argument in their briefing or at the Fairness Hearing as to why Defendant Mastroianni cannot utilize his assets to make settlement payments, the Cozen Objectors' speculative argument that they may be harmed by a payment made by the Developer lacks merit.

Based on the foregoing, the Court overrules the Cozen Objectors' first objection.

C.    *Second Objection*

The Cozen Objectors' second objection to final approval of the Second Settlement Agreement is based on Rule 23.1(a)'s requirement that a plaintiff may not maintain a derivative action "if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). The Cozen Objectors argue that because the Funding Partnership is not receiving any payment from the Second Settlement Agreement (which would then be distributed pro rata to all Limited Partners), Plaintiffs and Plaintiffs' counsel have failed to adequately represent the interests of the Limited Partners and the Funding Partnership [ECF No. 277-15 pp. 11–13]. To cure this perceived conflict, the Cozen Objectors recommend that "[t]he

Court [] either dismiss the derivative claims without prejudice to refile those within thirty days in a Florida state court or the Court [] allow a different limited partner, including any of the Objectors, to prosecute the derivative claims on behalf of the Funding Partnership" [ECF No. 277-15 p. 13]. Plaintiffs respond that they have adequately protected the interests of the Funding Partnership in the Second Settlement Agreement because that agreement grants significant benefits to the Funding Partnership, including by getting sixty Limited Members' the majority of their investment back [ECF No. 275-1 pp. 21–23]. Defendants also note that the cessation of this litigation will relieve the Funding Partnership of their "legal fee indemnity obligation" [ECF No. 279 p. 13]. At the Fairness Hearing, the Parties also emphasized that the Carveout Provisions of the Second Settlement Agreement explicitly allow all other Limited Partners who are not Settlement Class Members to bring and maintain any direct or derivative claim [ECF No. 293].

After considering these arguments and the full record, the Court concludes that Plaintiffs and Plaintiffs' counsel adequately represented the interests of the Funding Partnership and the Limited Partners. The Carveout Provisions to the Second Settlement Agreement essentially give the Cozen Objectors the relief they seek by allowing them to maintain Counts XV and XVI of the Fourth Amended Complaint in the State Court Action—claims that for all intents and purposes are identical to Counts II and VI in this action [*Compare* ECF No. 273-9 ¶¶ 352-384 *with* ECF No. 77 ¶¶ 83–89, ¶¶ 108–117]. When pressed at the Fairness Hearing to explain how the Carveout Provisions do not adequately protect their interests, the Cozen Objectors failed to articulate any meaningful response. Although the derivative claims in this action are dismissed with prejudice as to the Settlement Class Members only, nothing in the Second Settlement Agreement precludes the Cozen Objectors from continuing to pursue the derivative claims in the State Court Action. To be sure, the competing obligations under Rules 23 and 23.1 might create conflict between the members of a class and the members of a limited partnership in a combined class and derivative

action.  But here, Plaintiffs adequately avoided this conflict by creating the Carveout Provisions, and the Cozen Objectors have not pointed to any authority undermining the propriety of the Carveout Provisions or explained why the Carveout Provisions do not sufficiently protect their interests.  Accordingly, under the particular circumstances of this case, the Court determines that Plaintiffs adequately represented the interests of the Funding Partnership and overrules the Cozen Objectors' second objection.

D.    *Third Objection*

The Cozen Objectors' third objection is essentially a rehashing of its second objection. They argue that because the Second Settlement Agreement does not provide any benefit to the Funding Partnership, the derivative claims should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c) to allow the Cozen Objectors to assert the same claims in Florida state court.  For the same reasons discussed above, the Court overrules this objection [ECF No. 277-15 pp. 14–16]. Within their third objection, the Cozen Objectors also call into question this Court's subject matter jurisdiction over this action [ECF No. 277 p. 15].  As discussed in Section I above, the Court has original jurisdiction over the class claims under CAFA and supplemental jurisdiction over the derivative claims under 28 U.S.C. § 1367(a).

E.    *Fourth Objection*

The Cozen Objectors' fourth objection relates to the Release and Waiver provisions in the Second Settlement Agreement [ECF No. 289-1 pp. 20–26].  The Cozen Objectors "object to the Settlement Agreement to the extent that Defendants may not be releasing claims against the Funding Partnership and to the extent that the Parties and their Counsel are seeking to have the Funding Partnership release them from breach of fiduciary duty and legal malpractice claims" [ECF No. 277-15 p. 16].  In other words, the Cozen Objectors want the Funding Partnership to be released from any claims that Defendants may have against the Funding Partnership, but they also

want the Funding Partnership to still be able to bring claims against Plaintiffs, Defendants, Plaintiffs' counsel, and Defendants' counsel.

Setting aside the fact that the Cozen Objectors want to have it both ways with respect to what claims are and are not released, the Settlement Agreement does not release any claims involving the Funding Partnership or Limited Partners who are not Settlement Class Members. This makes sense as Defendants did not assert any claims against the Funding Partnership in this action [*see* ECF No. 99].  And the Parties' inclusion of the Carveout Provisions allows the Limited Partners who are not Settlement Class Members to pursue derivative claims on behalf of the Funding Partnership.  Thus, the Funding Partnership is not precluded from bringing any claims against any of the Parties.  With respect to the Cozen Objectors' worry that Defendants might turn around and sue the Funding Partnership for indemnification, their own argument on this point establishes that such a fear is unfounded.  Defendants are settling breach of fiduciary duty claims, and pursuant to Section 12.2.1 of the Limited Partnership Agreement, payments settling such claims are excluded from the Funding Partnership's indemnification obligations [ECF No. 31-9 p. 20 ¶ 12.2.1].  Furthermore, in their response to the Cozen Objections, Defendants emphasize that "the [Funding] Partnership is not paying any part of the Settlement," and that the Settlement brings "an end to the Funding Partnership's legal fee indemnity obligations" [ECF No. 279 pp. 13, 15].  The Cozen Objectors have not provided any evidence to make the Court doubt those representations.  Thus, the Cozen Objectors' fear of being sued by Defendants for indemnification is unfounded.  The Court overrules the Cozen Objectors' fourth objection.

F.    *Fifth Objection*

The Cozen Objectors next object on the grounds that Settlement Class Members should not be allowed to transfer their member units to HSP-NM, the third-party guarantor [ECF No. 277-15 pp. 18–20].  They assert that, pursuant to Section 620.1702 of the Florida Statutes, Limited

Partners can only transfer their rights to distributions of payments, not their whole membership unit [ECF No. 277-15 p. 19].  They also assert that the Limited Partnership Agreement, which was entered into between the General Partner and each Limited Partner in their individual capacity, forbids the transfer or conveyance of membership units [ECF No. 277-15 p. 19].  Neither of these arguments warrants denying approval of the Second Settlement Agreement.  As Plaintiffs accurately point out, Section 620.1702 explicitly states that "[a] transfer, in whole or in part, of a partner's transferable interest is permissible."  Fla. Stat. § 620.1702.  Thus, the Cozen Objectors are incorrect in their assertion that Section 620.1702 only allows a Limited Partner to transfer their rights to distributions.  And, while the Limited Partnership Agreement does contain language forbidding Limited Partners from transferring their membership "in whole or in part to any *person*" [ECF No. 31-9 p. 18 ¶ 10.1 (italics added)], here the Settlement Class Members are transferring their membership interest to a non-person, HSP-NM [ECF No. 289-1 p. 12].  More fundamentally, the Limited Partnership Agreement was entered into between the General Partner and the Limited Partners in their individual capacities [ECF No. 31-9 p. 4]; and as a party to the Second Settlement Agreement, the General Partner is free to waive a provision of the Limited Partnership Agreement that was intended for the General Partner's benefit.  *Shutte v. Thompson*, 82 U.S. 151, 159 (1872) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit.").  Accordingly, the Court overrules the Cozen Objectors' fifth objection.[7]

G.      *Sixth Objection*

        The Cozen Objectors' final objection is based on the fact that the Court allowed the Parties

---

[7] Defendants point out that many of the former plaintiffs in the State Court Action have transferred their membership units pursuant to their individual settlement agreements—with no issue raised by Cozen Objectors to those transfers [ECF No. 279 p. 14 n.2].  Furthermore, the Cozen Objectors have asserted in their Fourth Amended Complaint in the State Court Action that they hold a transferrable interest in the Funding Partnership, thus contradicting their argument that the Settlement Class Members' interest is not transferrable [ECF No. 273-9 ¶ 242].

to redact certain economic terms of the settlement agreement [ECF No. 277-15 pp. 20–21].  As the Court explained in a prior order, the Court allowed the parties to redact certain economic terms so that Defendants would not be prejudiced in the State Court Action [ECF No. 292 p. 6 n.1]. According to the Cozen Objectors, the parties' request was pretextual and was an attempt to "conceal the fact that the Parties' settlement is in direct breach of the fiduciary obligations that [the Parties] owe to the Funding Partnership" [ECF No. 277-15 p. 21].  The Court finds this argument meritless.  As discussed throughout this Order, the Parties went out of their way to ensure that the rights of the Funding Partnership and of the Limited Partners who are not Settlement Class Members were preserved, specifically by creating Carveout Provisions  One week prior to the Fairness Hearing, moreover, the Parties agreed that redaction of the economic terms was no longer necessary because the Cozen Objectors had made an accurate and educated guess as to the value of the Second Settlement Agreement [ECF No. 289].  Accordingly, Defendants publicly filed a completely unredacted version of the Settlement Agreement [ECF No. 289-1].  The Court gave the Cozen Objectors ample opportunity at the Fairness Hearing to address any issues they had with the previously redacted terms of the Second Settlement Agreement.  They failed to identify any language that was previously redacted that harmed them.  The Court therefore overrules the Cozen Objectors' sixth objection.

**CONCLUSION**

For the foregoing reasons, after consideration of the applicable factors, and based on the additional findings below, the Court deems the Second Settlement Agreement to be fair, reasonable, and adequate and the result of extensive arm's length negotiations following multiple mediation sessions before neutral arbitrators, including a retired federal magistrate judge.  Fed. R. Civ. P. 23(e)(2)(B).  The Court hereby approves the Second Settlement Agreement and **ORDERS AND ADJUDGES** as follows:

1. Plaintiffs' Motion for Approval of Final Settlement [ECF No. 275] is **GRANTED**.

2. Plaintiffs' Motion for Attorneys' Fees [ECF No. 264, 269] is **GRANTED**.

3. <u>Incorporation of Defined Terms</u>.  Except where otherwise noted, all capitalized terms used in this Final Judgment and Order shall have the meanings as set forth in the Definitions set forth in Section I of the Settlement Agreement, docketed at [ECF No. 289-1 pp. 2–42].

4. <u>Jurisdiction</u>.  The Court has personal jurisdiction over all Settlement Class Members and has subject matter jurisdiction over this action, including, without limitation, jurisdiction to approve the proposed Settlement Agreement, to grant final certification of the Settlement Class, to settle and release all claims arising out of the events and transactions alleged in the pleadings, and to dismiss the claims and counterclaims alleged in this action on the merits and with prejudice.

5. <u>Final Class Certification</u>.  The Class previously certified by this Court in its order dated June 25, 2021 [ECF No. 113] is hereby finally certified for litigation and settlement purposes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Court adopts and incorporates its findings regarding class certification in that Order [ECF No. 113].  Hence, the certified Class is composed as follows:

> All persons who invested in the Funding Partnership (*i.e.*, "Limited Partners").  Excluded from this Class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees; the Court and its staff; any Limited Partner who has entered into an agreement to settle, waive, or otherwise resolve their claims against Defendants, whether in the State Court Action or through private resolution, arising from the same underlying subject matter in the instant case, and any Limited Partner who opted out of the Class on or before December 16, 2021.

6. <u>Adequacy of Representation</u>.  The Court finds that Class Counsel and the Class Representatives have fully and adequately represented the Settlement Class for

CASE NO. 20-80102-CIV-CANNON/Reinhart

purposes of negotiating, entering into, and implementing the Settlement Agreement, and have satisfied the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

7. <u>Notice of Proposed Settlement</u>.  The Court finds that the content and distribution of the Notice of Proposed Settlement ("Notice") [ECF No. 258-3 pp. 62–70; ECF No. 289-1 pp. 62–70], in accordance with the terms of the Settlement Agreement and this Court's Preliminary Approval Order [ECF No. 260] and as explained in the declarations filed before the Fairness Hearing:

   a. Constituted the best practicable notice to Settlement Class Members and members of Harbourside Funding, LP (the "Funding Partnership") under the circumstances of this action;

   b. Was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of this action; (ii) the right to object to any aspect of the proposed Settlement Agreement (including, without limitation, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Settlement Class's representation by Plaintiffs' Counsel, and the award of attorneys' fees and litigation expenses to Plaintiffs' Counsel); (iii) the right to appear at the Fairness Hearing (on their own or through counsel hired at their own expense); and (iv) the binding effect of the orders and Final Approval Order in this Action, whether favorable or unfavorable, on all Settlement Class Members;

   c. Was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with the Notice of Proposed Settlement; and

   d. Fully satisfied the requirements of the United States Constitution, the Florida

CASE NO. 20-80102-CIV-CANNON/Reinhart

Constitution, and the Federal Rules of Civil Procedure and any other applicable rules or law.

The Court hereby adopts and incorporates herein the Declaration of Aisha Lange [ECF No. 275-4] with the list of Settlement Class Members and members of the Funding Partnership who were provided Notice of Settlement, and Settlement Class Members are therefore bound by this Final Judgment and Order. The lists of Settlement Class Members and members of the Funding Partnership who were provided with the Notice of Proposed Settlement is docketed at [ECF Nos. 297, 297-1, 297-2, 297-3], which are incorporated herein and made a part hereof for all purposes.

8. <u>Final Settlement Approval</u>. The terms and provisions of the proposed Settlement Agreement, including all amendments and exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of Plaintiffs and Settlement Class Members and the Funding Partnership, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable rules or law. The Court finds that the proposed Settlement Agreement provides relief that is fair, reasonable and adequate, and was negotiated and consummated at arm's length after mediation sessions conduct by Bruce A. Edwards, a mediator with Judicial Arbitration and Mediation Services ("JAMS"), who is highly experienced in complex and class action and derivative litigation, after additional mediation sessions conducted by retired federal Magistrate Judge Elizabeth LaPorte, also of JAMS and also highly experienced in class action and derivative litigation, and after extensive subsequent negotiations between the Parties by and through their respective counsel, each of whom had

thoroughly investigated and had engaged in extensive litigation of their respective positions in this action.

9. <u>Objections</u>.  The objections to the Settlement Agreement by the fourteen Settlement Class Members and the Cozen Objectors are hereby overruled.  The Parties and Settlement Class Members are hereby directed to implement and discharge the terms and conditions of the Settlement Agreement.

10. <u>Binding Effect</u>.  The terms of the Settlement Agreement and of this Final Judgment and Order shall be forever binding on the Parties and all Settlement Class Members, as well as their heirs, representatives, executors and administrators, successors and assigns, and those terms shall have res judicata and full preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons or entities, to the extent those claims, lawsuits, or other proceedings involve matters that were or could have been raised in this Action or are otherwise encompassed by the Release described in the next paragraph of this Final Approval Order. **Notwithstanding the foregoing, neither the Release, the dismissal of claims asserted on behalf of the Funding Partnership, nor any other provision of the Settlement Agreement is intended to preclude valid claims or causes of action asserted by members of the Funding Partnership who are not Settlement Class Members.**

11. <u>Releases</u>.  Upon the Effective Date, the Releases included in the Settlement Agreement shall be valid and binding.

12. <u>Bar to Asserting Released Claims</u>.  The Parties and Settlement Class Members have released any and all Released Claims against the Released Parties.  Upon the Effective Date, the Parties and Settlement Class Members are hereby permanently barred from

asserting any Released Claim against the Released Parties. **The Settlement Agreement shall not, however, bar valid claims by members of the Funding Partnership who are not Settlement Class Members**.

13. <u>No Admissions</u>.  Neither this Final Approval Order nor the Settlement Agreement (nor any other document referred to herein, nor any action taken to negotiate, effectuate and implement the Settlement Agreement) is, may be construed as, or may be used as an admission or concession by or against any Party hereto as to the validity or invalidity of any claim or defense, or of any actual or potential fault or liability, or of any lack of fault or liability.  Additionally, neither the Settlement Agreement nor any negotiations, actions, or proceedings related to it, shall be offered or received in evidence in any action or proceeding against any Party in any court, administrative agency or other tribunal for any purpose, except to enforce the provisions of this Final Judgment and Order, the Settlement Agreement, and/or to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

14. <u>No Representations Regarding Taxes</u>.  The Court finds that the Parties and their counsel have expressed no opinions concerning the tax consequences of the Settlement Agreement to Settlement Class Members and have made no representations, warranties, or other assurances regarding any such tax consequences.  No opinions, representations, warranties, or other assurances shall be deemed to have been made by the Parties or their counsel with respect to any such tax consequences by virtue of the Settlement Agreement or by effectuating the provisions of the Settlement Agreement, and neither the Parties nor their counsel shall be responsible or liable for any such tax

consequences that may occur.

15. <u>Discovery</u>.  The confidentiality of the provisions of the Preliminary Approval Order shall remain in force.  No discovery with regard to the Settlement Agreement or the proposed Settlement and its administration, including the manner in which the Notice was provided to Settlement Class Members, shall be permitted by any Settlement Class Members or other Persons, other than as may be directed by this Court after the party seeking such discovery properly files a motion with this Court and served pursuant to applicable law.

16. <u>Dismissal of Claims</u>.  The claims and counterclaims asserted in the Lawsuit, including all claims alleged therein and those identified as Released Claims, are hereby dismissed on the merits and with prejudice, without fees or costs to any person except as specifically provided in this Final Approval Order.

17. <u>Enforcement of Settlement</u>.  Nothing in this Final Judgment and Order or any order entered in connection herewith shall preclude any action to enforce the terms of this Final Judgment and Order or the terms of the Settlement Agreement.

18. <u>Attorneys' Fees and Litigation Expenses</u>.  Plaintiffs' Counsel are hereby awarded attorneys' fees and costs as set forth below.  DeHeng Law Offices, P.C., is hereby awarded attorneys' fees amounting to 25% of the total amount paid to Settlement Class Members within seven (7) calendar days of the date on which the first Initial Payment and the first of each subsequent Installment Payment is made to Settlement Class Members, all of which shall be paid from the Settlement Payments.

19. <u>Retention of Jurisdiction</u>.  Without affecting the finality of this Final Judgment and Order, the Court shall have exclusive and continuing jurisdiction over the implementation, interpretation, execution, and enforcement of the Settlement

CASE NO. 20-80102-CIV-CANNON/Reinhart

Agreement; of any orders, including this Final Judgment and Order, entered by the Court; of any questions regarding membership in the Settlement Class and/or of the conduct or policies and procedures described herein, with respect to all Parties hereto and all beneficiaries hereof, including all Settlement Class Members.

20. The Clerk **SHALL UNSEAL** all sealed filings on the docket [ECF Nos. 247, 259, 264]

21. The Clerk **SHALL CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 2nd day of August 2023.

_____

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record